# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

|  |  |
|---|---|
| FREDERICK SAUNDERS, individually, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CASE NO.: ) ) |
| SIGNATURE FLIGHT SUPPORT LLC, a Delaware limited company. | ) ) ) |
| Defendant. | ) ) ) |

## DEFENDANT'S NOTICE OF AND PETITION FOR REMOVAL

Defendant, SIGNATURE FLIGHT SUPPORT LLC ("Defendant"), by and through its undersigned counsel and in accordance with the Federal Rules of Civil Procedure and Title 28, United States Code, §§1331, 1441, and 1446, hereby files this Notice of and Petition for Removal of this action from the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, to the United States District Court for the Middle District of Florida, Orlando Division. The removal of this action is based upon the following:

## BACKGROUND

1.      On January 10, 2023, Plaintiff, Fredrick Saunders ("Plaintiff") filed his original Complaint in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida ("Circuit Court"). On January 13, 2023, counsel for Plaintiff provided to counsel for Defendant a draft Notice of Lawsuit and Request of Waiver of Service (the "Waiver"). Prior to signing the Waiver, Defendant's counsel advised Plaintiff's counsel that the entity named as the Defendant in the Complaint was incorrect, and Plaintiff's counsel agreed to amend the Complaint to reflect the proper entity name.

2.      On January 17, 2023, Plaintiff filed an Amended Complaint in the Circuit Court which was captioned "*Frederick Saunders v. Signature Flight Support LLC,*" case no. 2023-CA-000364-O (the "Circuit Court Case"). Defendant's counsel signed the Waiver on January 17, 2023. The Waiver provides that Defendant will respond to the Amended Complaint within sixty (60) days of January 13, 2023.

3.      A true and correct copy of the Complaint, Amended Complaint and Waiver filed in the Circuit Court Case, along with copies of all other process, pleadings, and orders on file in the Circuit Court Case are attached to this Notice of and Petition for Removal as *Exhibit A* as required by 28 U.S.C. § 1446(a).

4.     Plaintiff's eight-count Amended Complaint seeks relief for alleged: (1) discrimination based on race/color in violation of the Florida Civil Rights Act ("FCRA"); (2) discrimination on race/color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) retaliation in violation of the FCRA; (4) retaliation in violation of Title VII; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) violations of the Fair Labor Standards Act of 1938 ("FLSA"); and (8) retaliation in violation of the Florida Private Whistleblower Act ("FPWA").

5.     Plaintiff's Title VII and FLSA claims are within the original federal question jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367 because they arise out of the *exact same* set of facts and circumstances (*i.e.,* Plaintiff's employment with and separation from Defendant) as the federal claims. For example, the alleged factual basis for Plaintiff's Florida common law and FPWA claims are the same as Plaintiff's federal claims *and* Plaintiff's FCRA claims are identical to Plaintiff's Title VII claims.

6.     This Notice of and Petition for Removal has been filed within 30 days of January 13, 2023, the date that Plaintiff's counsel provided a copy of the original Complaint and Waiver to Defendant's counsel in the Circuit Court Case.

Thus, this Notice of and Petition for Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

7.    The United States District Court for the Middle District of Florida, Orlando Division, encompasses the judicial district in which Plaintiff filed his lawsuit. Therefore, removal is proper pursuant to 28 U.S.C. § 1446(a).

8.    Pursuant to 28 U.S.C. § 1446 (d), Defendant will promptly provide written notice of the removal to all parties in this action and will file a copy of this Notice of and Petition for Removal in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.

WHEREFORE, Defendant, SIGNATURE FLIGHT SUPPORT LLC, respectfully removes this action from the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida to the United States District Court for the Middle District of Florida, Orlando Division.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DATED this 9th day of February, 2023.

Respectfully submitted,

**JACKSON LEWIS P.C.**
390 N. Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone: (407) 246-8440
Facsimile: (407) 246-8441

*/s/ Lin J. Wagner*
Amanda A. Simpson
Florida Bar No. 0072817
amanda.simpson@jacksonlewis.com

Lin J. Wagner
Florida Bar No. 0093138
lin.wagner@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Michael G. Mann, Esq., The Cochran Firm Orlando, LLC, 605 E. Robinson Street, Suite 140, Orlando, FL 32801.

*/s/ Lin J. Wagner*
Lin J. Wagner

4873-5517-9083, v. 1

# *EXHIBIT A*

## IN THE NINTH JUDICIAL CIRCUIT OF FLORIDA
## IN AND FOR ORANGE COUNTY, FLORIDA
## CIVIL DIVISION

**FREDERICK SAUNDERS, individually,**

    *Plaintiff*,

**v.**                                   **CIVIL CASE NO.:** _____

**SIGNATURE FLIGHT SUPPORT, LLC,**          **COMPLAINT & JURY DEMAND**
**(d/b/a "SIGNATURE AVIATION"), a**
**Delaware limited company,**

    *Defendant.*

_____/

## **COMPLAINT**

    **COMES NOW,** PLAINTIFF, FREDERICK SAUNDERS ("**PLAINTIFF**"), by and

through ~~his~~ undersigned counsel, against Defendants **SIGNATURE FLIGHT SUPPORT, LLC**

(D/B/A "SIGNATURE AVIATION") (F/K/A "BBA AVIATION") ("**DEFENDANT**"), for

violating the Civil Rights Act of 1964, 42 U.S.C. 2000e *et. seq.* (TITLE VII), Florida's Civil Rights

Act of 1992, § 760.01 *et. seq.* (FCRA), Florida's Private Sector Whistleblowers Act ("FPWA"),

Fla. Stat. § 448.101 *et seq.*, and Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. 29 U.S.C.

201 *et seq.*, as well common law intentional torts and negligence causes of action; and so further

states:

## **PARTIES**

    1.    **PLAINTIFF** is an individual above the age of eighteen (18), a resident of Orange

County, State of Florida, and is otherwise *sui juris*.

    2.    **DEFENDANT** is a foreign limited liability company, with its corporate

headquarters located in the County of Orange, in the State of Florida, at 13485 Veterans Way,

<u>Suite 600, Orlando, Florida 32827</u>, and its Registered Agent with Florida's Secretary of State is Corporation Service Company, located at <u>1201 Hays Street, Tallahassee, Florida 32301</u>.

3.    **DEFENDANT** was founded in 1992 and since then "has become the world's largest network of Fixed Base Operations (FBOs)."

4.    **DEFENDANT** was acquired by a private consortium of companies, in or around February 2021 through May 2021, for approximately $4.73 billion.

5.    **DEFENDANT** has an estimated annual revenue between "$1 to $5 billion (USD)."

6.    **DEFENDANT** currently maintains its corporate headquarters in the County of Orange, in the State of Florida.

7.    **DEFENDANT** employs between 5,001 to 10,000 employees.

<u>**JURISDICTION & VENUE**</u>

8.    **PLAINTIFF** restates Paragraphs 1-7 as though fully restated herein.

9.    **PLAINTIFF** is an individual above the age of eighteen (18), a resident of Orange County, Florida, and is otherwise *sui juris*.

10.    **DEFENDANT** maintains its corporate headquarters in Orlando, Florida, thereby establishing minimum contacts and making it a Florida "citizen" for jurisdictional purposes. *See also* <u>42 U.S.C. §§ 2000e-5(f)(3)</u>.

<u>**ADMINSTRATIVE REMIDIES EXHAUSTED**</u>

11.    **PLAINTFF** restates Paragraphs 1-10 as though fully restated herein.

12.    **PLAINTIFF** filed a Charge of Discrimination ("Charge") jointly with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR)

2

13.     **PLAINTIFF** filed the Charge within three hundred sixty-five (365) days of the violations alleged herein. Fla. Stat. 760.11(1).

14.     **PLAINTIFF** filed the Charge within one hundred eighty (180) days of the last alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1).

15.     **PLAINTIFF** files this Complaint within ninety (90) days of the EEOC determination. § 2000e-5(f)(1).

16.     **PLAINTIFF** has filed this Complaint within two (2) years after discovering that the alleged retaliatory personnel action was taken, and within four (4) years after the personnel action was taken. Fla. Stat. § 448.103(1)(a).

17.     **PLAINTIFF** has filed this Complaint within the four-year statute of limitations applicable to general statutory violations. *See Hines v. Whataburger Restaurants, LLC*, 301 So. 3d 473 (Fla. 1st DCA 2020) (holding four-year limitations period applied).

18.     **PLAINTIFF** has filed this Complaint in a judicial district in the State where the unlawful employment practice was committed and where **DEFENDANT** has its principal place of business. 42 U.S.C. § 2000e-5(f)(3).

19.     **PLAINTIFF** has exhausted his admirative remedies and all conditions precedent to bringing this action have occurred. *See* 28 U.S.C. §§ 2000e *et seq.*, and Fla. Stat. §§ 760.01 *et seq*.

## **FACTUAL ALLEGATIONS**

20.     **PLAINTIFF** restates Paragraphs 1-19 as though fully restated herein.

21.     **DEFENDANT** has been engaged in an industry affecting commerce and as an "employer" as defined by TITLE VII, the FCRA, the FLSA, and the FPWA.

22.     **DEFENDANT** has had at least more than five hundred (500) employees for each working day in at least twenty (20) calendar weeks at all times material hereto.

23.     **DEFENDANT** was at all times material an "employer" as defined by TITLE VII, the FCRA, the FLSA, and the FPWA.

24.     **PLAINTIFF** was at all times material an "employee" as that term is used in Title VII, the FCRA, the FLSA, and the FPWA.

(**FACTS RELEVANT TO PLAINTIFF'S BACKGROUND & EMPLOYMENT**)

25.     **PLAINTIFF** was a black, African American male manager for DEFENANT over the age of forty-nine (49) years, on his final day at *Signature Aviation*.

26.     **PLAINTIFF** served in the United States Army for approximately six (6) years following graduation from high school.

27.     After serving six (6) years in the Army, **PLAINTIFF** earned his Bachelor's degree from The Florida State University.

28.     After obtaining his Bachelors, **PLAINTIFF** earned a Master's degree from University of South Florida.

29.     After earning his Master's, **PLAINTIFF** was a corporate intern at a global, public accounting firm named Ernst & Young.

30.     **PLAINTIFF** quickly earned and accepted an official job offer from Ernst & Young during his internship.

31.     **PLAINTIFF** remained employed at Ernst & Young for approximately three (3) years.

32.     **PLAINTIFF** was hired by **DEFENDANT** on or about September 17, 2007, as an Internal Auditor, in the Associated Department.

33.    **PLAINTIFF** was abundantly capable of performing his required job duties and did so outstandingly during his entire employment period for **DEFENDANT**.

34.    **PLAINTIFF** was promoted to Regional Accounting Manager in **DEFENDANT'S** *Signature Flight Support* division, on or about <u>October 23, 2017</u>.

35.    **PLAINTIFF** was promoted at that time because of his extensive experience, expertise, excellent performance, and his profound knowledge of the business.

36.    **PLAINTIFF** was trusted, respected, and frequently requested for advice and opinion.

37.    **PLAINTIFF** spent approximately four (4) years excelling in his position as Regional Accounting Manager and was at all times performed at or above expectations.

38.    **PLAINTIFF** never received any performance-based discipline, performance plans, or written warnings that identified performance or behavior issues while working for **DEFENDANT**.

39.    **PLAINTIFF** regularly scored approximately 8-point, 9-point, and 10-point performance ratings (on a scale of 1 to 10) during performance evaluations and reviews for **DEFENDANTS**.

40.    **PLAINTIFF** always received maximum bonuses from **DEFENDANT** due to his stellar and exemplary evaluations and reviews, and because of his outstanding leadership skills.

41.    **PLAINTIFF** was a highly revered and beloved senior leader within the chain of command at *Signature Aviation*.

42.    **DEFENDANT** expressed their appreciation for **PLAINTIFF'S** excellent work product and leadership by designating him as a mentor for several managers and employees during

his seventeen (17) years working for **DEFENDANT**, where **PLAINTIFF** would prepare prospects for the next level in their careers in *Signature Aviation*.

43.     **PLAINTIFF** had approximately five (5) junior managers working immediately under him that he managed and/or mentored.

### (FACTS RELEVANT TO PLAINTIFF'S TERMINATION OF EMPLOYMENT)

44.     **PLAINTIFF** (mentor) learned that his junior managers (mentees) were not receiving equal pay based on their color, age, race, and/or sex.

45.     **PLAINTIFF** first began noticing discrepancies in pay (unequal pay) in or around April 2021, when a member of his team, JAN CHALK, was overlooked for a raise while being assigned approximately 50% more work duties.

46.     **PLAINTIFF** later discovered that CHALK'S pay ratio was set to approximately 68%, which was significantly smaller than the approximately 78% to 83% ratios that male manager employees received.

47.     CHALK was an Area Accounting Manager at that time, and none of the male Area Accounting Managers had ratios as low as CHALK.

48.     At that time, CHALK had already been overlooked for at least two (2) promotions and/or wage increases even though she had been assigned additional job duties on multiple occasions.

49.     CHALK's base salary was actually even far lower than **DEFENDANT'S** starting ratio (80%) for beginner.

50.     **PLAINTIFF** also discovered that CHALK had not received any pay increases relating to her additional duties in or around February 2016 and May 2021.

51.     CHALK had approximately thirty-four (34) years of experience in accounting, nine (9) of which had been earned while working for **DEFENDANT**.

52.     **PLAINTIFF**, in light of his communications with CHALK and based on his above findings, reported his findings to his manager and **DEFENDANT'S** Human Resources as a violation of the FLSA and disparate treatment.

53.     **PLAINTIFF** believed that CHALK was being paid unfairly due to her sex and/or gender (female) and shared this belief with his manager and DEFENDANT's human resources.

54.     **PLAINTIFF** (as the *team leader* and/or mentor) sought to make sure his team was heard and treated fairly.

55.     Between April 2021 and October 2021, **PLAINTIFF** made several formal and informal reports to **DEFENDANT** regarding what appeared to clearly be violations of TITLE VII, the FCRA, and the FLSA.

56.     **DEFENDANT** at all times materially failed to investigate and/or remedy the clearly oppressive and/or unlawful conduct identified by **PLAINTIFF**.

57.     **PLAINTIFF** submitted said reports to **DEFENDANT** by following the company's reporting policies and structure in place at that time.

58.     Each time **PLAINTIFF** reported these adverse effects to **DEFENDANT**, he was shut down and nothing was done.

59.     **PLAINTIFF** refused to remain complicit in **DEFENDANT'S** unlawful and oppressive practices, so he insisted on approaching his manager and human resources department.

60.     **PLAINTIFF** even submitted an anonymous ethics claim to **DEFENDANT's** ethics hotline on or about September 30, 2021.

61.     **DEFENDANT** disapproved of **PLAINTIFF's** speaking up about the injustices.

62.     **PLAINTIFF'S** complaints were not investigated and/or inadequately addressed by Defendant.

63.     **PLAINTIFF'S** complaints actually just annoyed **DEFENDANT** and/or its employees because he was telling them it had workplace culture issues that were producing a disparate effect on protected classes of employees while favoring another class.

64.     **PLAINTIFF** later followed up with CHRISTY PAVEL, Vice President at the time for **DEFENDANT'S** Human Resources Department, on or about October 5, 2021.

65.     PAVEL told **PLAINTIFF** that **DEFENDANT** would "continue" to investigate his claims, but this was the same statement that had been made for several month by that time.

66.     **PLAINTIFF** reiterated his concerns about the situation potentially violating TITLE VII, the FCRA, and/or the FLSA, due to the disparate treatment in wages between male and female managers on his team.

67.     On or about October 12, 2021, **PLAINTIFF** reported the violations and cautioned PAVEL that, if the matter was not properly investigated and remedied, then it would most likely constitute actionable conduct that leads to more severe consequences and/or punishments by the EEOC.

68.     Almost immediately after his October 12, 2021, complaint where he identified the matter as being a civil rights and statutory violations, **PLAINTIFF** was terminated by his manager, SHERRI MILLER, and human resources representative, DAN CUNICO, on or about October 21, 2021.

69.     At that time, MILLER informed **PLAINTIFF** that he was being terminated because of a "remarkable lack of engagement" and claimed that **PLAINTIFF** failed to discuss his

complaints with his managers and/or supervisors *before* submitting an anonymous ethics claim to **DEFENDANT'S** ethics hotline.

70.     MILLER'S statement was plainly false and disingenuous and was merely used as a way to hide the true nature of **PLAINTIFF'S** termination.

71.     **PLAINTIFF** followed the company policies and procedures for reporting the matters; specifically, **PLAINTIFF** discussed his complaints with his manager and human resources multiple times prior to anonymous ethics claim through the ethics hotline.

72.     Despite an excellent employment history, military background, his graduates' degrees, clean employee profile, and being a top performer at *Signature Aviation*, as a Regional Accounting Manager, **PLAINTIFF** was nonetheless abruptly terminated on or about October 21, 2021, based on his participation in a protected activity.

73.     This was the first time **PLAINTIFF** had been disciplined—it just so happened to be "capital" punishment, *per se* (*i.e.*, the worst possible thing an employer can do to employees).

74.     The only other action worse than termination for **PLAINTIFF** was that his termination was discriminatory and in violations of his civil right to equal employment opportunities in this country.

75.     The stated reasons for **PLAINTIFF'S** termination were frivolous and phony allegations without any merit or basis in reality.

76.     If the stated reasons were true, then **DEFENDANT** terminated **PLAINTIFF** without warning, and without good cause, abruptly, while treating others (*e.g.*, CHALK) more favorably, offering a severance package to them, giving warnings before discipline, and even offering their job back after being put on administrative leave.

77.    However, the true reason **DEFENDANT** terminated **PLAINTIFF** is because he was advocating for equal rights for his colleagues and subordinates.

78.    Just days before terminating Plaintiff, he had informed his supervisors and/or **DEFENDANT's** human resources directly and/or indirectly that **DEFENDANT** were at risk of being sued for the discriminatory and unfair workplace environments and policies, especially those relating to rates of pay for black employees.

79.    As a Black, African American male, **PLAINTIFF** did not receive the same type of benefits that other employees received outside his protected classes.

80.    **PLAINTIFF** witnessed his coworkers within his protected classes suffer from discriminatory treatment and adverse employment actions, such as disparate pay that disproportionately favored non-black, non-African American, and non-male employees.

81.    **PLAINTIFF** raised these concerns with his supervisors on several occasions.

82.    **PLAINTIFF** informed **DEFENDANT** and/or its employees, representatives, agents, or assigns that the disparate treatment was a clear "EEOC risk," meaning that if the adverse actions and disparate treatment were to continue, that **DEFENDANT** would be exposed to discrimination and unequal pay complaints (or charges of discrimination).

83.    **PLAINTIFF** was not threatening to file his own charge, but rather was sticking up for his team which he was the in charge of and attempted to advocate on their behalf to achieve equal employment opportunities that were based on merits rather than memberships in a protected class under TITLE VII and the FCRA.

84.    Instead of addressing **PLAINTIFF'S** concerns, **DEFENDANT** swiftly terminated him for his whistleblowing.

85.    On or about <u>October 21, 2021</u>, **DEFENDANT** involuntarily terminated **PLAINTIFF'S** employment at *Signature Aviation*.

86.    **DEFENDANT** notified **PLAINTIFF** that he was terminated for "remarkable lack of engagement" (meaning unknown), and other vague and ambiguous reasons that had never been identified before.

87.    **DEFENDANT'S** stated reasons for their actions against **PLAINTIFF** are pretext and merely intended to hide its true animus towards **PLAINTIFF**.

88.    The true reason **DEFENDANT** terminated **PLAINTIFF** was to seek revenge and to fabricate a narrative to discredit him and intimidate him.

89.    **DEFENDANT** disliked **PLAINTIFF'S** advocacy for equal rights for black/African employees.

90.    **DEFENDANT'S** termination of **PLAINTIFF** has caused him to suffer unnecessary pain, damages, and other irreparable harms and inconveniences.

91.    Ironically, **DEFENDANT** erroneously provided as **PLAINTIFF** was literally being a leader for the oppressed rather than keeping his head down and minding his own business.

92.    **PLAINTIFF** was a lighthouse to his team, and he advocated for them to be treated equally at the workplace at the cost of **PLAINTIFF'S** own job.

93.    **DEFENDANT** never put **PLAINTIFF** on a performance improvement plan, and he was never written-up or disciplined during his "remarkable" tenure for *Signature Aviation*.

94.    Not once prior to his abrupt and unlawful termination did **DEFENDANT** ever even call, write, or signal that **PLAINTIFF** had anything lacking in his work performance.

95.    **PLAINTIFF** time, and time again, received exceptional or above-average performance evaluations.

96.    **PLAINTIFF** received the highest merits (3%) of any Regional Accounting Manager at *Signature Aviation* in <u>2021</u>.

97.    **PLAINTIFF** has documented accomplishments and work that was completed leading up to his termination.

98.    To say **PLAINTIFF** "lacked" anything, at any time, while working for *Signature Aviation*, is plainly, utterly, and egregiously false; it is merely a guise to hide the retaliatory animus embedded in the core of **DEFENDANT'S** decision to terminate him.

99.    It is shocking and pervasive that a team manager (**PLAINTIFF**) that was fired for sticking his neck out for his team to be accused of lacking *any* leadership.

100.    In fact, upon information and belief, **PLAINTIFF** former team now receives equal pay and benefits—the exact thing he advocated for when he was terminated.

101.    Upon information and belief, **PLAINTIFF** was retaliated against in the form of termination of his employment, solely because he identified a liability risk that was brewing at the workplace under TITLE VII and the FCRA.

102.    Upon information and belief, **PLAINTIFF'S** termination was a retaliatory and preemptive strike against him for even mentioning a possible EEOC risk.

103.    **DEFENDANT** did not provide a non-discrimination and legitimate basis for **PLAINTIFF'S** termination.

104.    Reporting discrimination and harassment, as well as reporting unequal wages, is a protected activity under TITLE VII, the FCRA, the FLSA and the FPWA.

105.    Involuntary termination of employment is an "adverse employment action" as that term is defined by TITLE VII and the FCRA.

106.    Termination of employment constituted "retaliatory personnel action," as defined by the FPWA.

107.    Termination of **PLAINTIFF** constituted "discharge" as defined by the FLSA.

108.    **PLAINTIFF** reported wage disparities that favored non-black accommodations she sought and formally requested were given to non-black, non-African American, and/or non-disable employees.

109.    As a result of **DEFENDANT'S** conduct, **PLAINTIFF** did not receive the same benefits of employment or earn as much as non-Black, non-African American, and non-disabled employees, due only to **PLAINTIFF** race, color, and/or disability.

110.    **PLAINTIFF** complained to **DEFENDANT** about the above-stated conduct and pleaded with **DEFENDANT** to correct the unfair and oppressive treatment he was being subjected to.

111.    In response, **DEFENDANT** failed to change course or otherwise take any meaningful action to accommodate **PLAINTIFF'S** requests and complaints, without providing any legitimate explanation for its adverse employment actions, unfair treatment, and overtly oppressive reprisal.

112.    Nonetheless, **PLAINTIFF'S** authentic leadership is evidence by the fact that he accomplished equal pay for his colleagues, who are now paid more fairly by **DEFENDANT**, and his former teammates now applaud him for his sacrifice.

113.    As a result of the **DEFENDANT'S** unlawful and oppressive conduct, **PLAINTIFF** has been suffered injuries and incurred damages including loss of quality of life, inconvenience, reputation, and emotional distress and mental anguish, as well as attorneys' fees and costs of litigation.

**(FACTS RELEVANT TO DISPARATE TREATMENT; COMPARATOR)**

114.    Similarly situated employees outside of **PLAINTIFF'S** protected class were treated more favorably than **PLAINTIFF**.

115.    JAN CHALK worked at *Signature Aviation* during , a *Caucasian female* employee for **DEFENDANT**, working as an Accounting Manager for **DEFENDANT** during the same time period that **PLAINTIFF** was Accounting Manager.

116.    CHALK advocated for equal pay.

117.    **PLAINTIFF** advocated for equal pay for CHALK and others.

118.    CHALK filed an ethics claim against **DEFENDANT** regarding her unequal pay.

119.    **PLAINTIFF** filed an ethics claim against **DEFENDANT** regarding CHALK and his team.

120.    CHALK was placed on *paid* administrative.

121.    **PLAINTIFF** was fired without pay.

122.    CHALK was later given her job back and offered five-month's severance.

123.    **PLAINTIFF** was blackballed and received no severance.

124.    CHALK is white; **PLAINTIFF** is black.

125.    CHALK is Caucasian; **PLAINTNIFF** is African American.

126.    CHALK is female; **PLAINTIFF** is male.

127.    CHALK remains employed by **DEFENDANT** as of the time of this filing.

## COUNT I

### DISCRIMINATION BASED ON RACE / COLOR
### IN VIOLATION OF F.C.R.A.
### (FLA. STAT. §§ 760.01 *ET SEQ.*)

128.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

129.     The FCRA prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, and privileges of one's employment, based upon racial/color classifications, consideration, or race/color-based factors.

130.     **DEFENDANT'S** involuntarily, abrupt, and oppressive termination of **PLAINTIFF** constitutes text-book adverse employment action under the FCRA, in that it altered **PLAINTIFF'S** compensation, terms, conditions, and/or privileges of her employment and/or otherwise deprived him of employment opportunities and *directly* adversely affected her status as an employee.

131.     Other similarly situated employees who were not in **PLAINTIFF'S** protected class were treated more favorably, kept their jobs, and were offered benefits that were not offered to him.

132.     **DEFENDANT** treated individuals outside of his protected class accounting managers and other employees more favorable than **PLAINTIFF**, in that those employees received better opportunities and benefits for the same workplace qualifications and performance that **PLAINTIFF** held and despite their actions being identical in every way other than the race and gender of the favored versus disfavored employees.

133.     The adverse employment actions against **PLAINTIFF** were motivated on the basis of race, color, sex, and/or gender, in that those similarly situated employees outside her protected class were not subject to the same unlawful actions, conditions, and/or benefits.

134.     As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of

enjoyment of life, embarrassment, and inconvenience, and other damages, as the direct and proximate result of the **DEFENDANT'S** unlawful actions.

**WHEREFORE, PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest—including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT II

### RACE / COLOR DISCRIMINATION
### IN VIOLATION OF THE TITLE VII
### (42 U.S.C. §§ 2000E *ET SEQ.*)

135. **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

136. TITLE VII prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, and privileges of one's employment, based upon racial/color classifications, consideration, or race/color-based factors.

137. **DEFENDANT** involuntarily, abruptly, and oppressively terminated **PLAINTIFF**, constituting text-book adverse employment action under the TITLE VII, because it altered **PLAINTIFF'S** compensation, terms, conditions, and/or privileges of her employment and/or otherwise deprived him of employment opportunities and *directly* adversely affected her status as an employee.

138. Other similarly situated employees who were not in **PLAINTIFF'S** protected class were treated more favorably, kept their jobs, and were offered benefits that were not offered to **PLAINTIFF**.

16

139.    **DEFENDANT** treated individuals outside of his protected class accounting managers and other employees more favorable than **PLAINTIFF**, in that those employees received better opportunities and benefits for the same workplace qualifications and performance that **PLAINTIFF** held and despite their actions being identical in every way other than the race and gender of the favored versus disfavored employees.

140.    The adverse employment actions against **PLAINTIFF** were motivated on the basis of race, color, sex, and/or gender, in that those similarly situated employees outside her protected class were not subject to the same unlawful actions, conditions, and/or benefits.

141.    **DEFENDANT** deliberately and intentionally discriminated against **PLAINTIFF** as to the terms or conditions of her employment because of her race/color, in violation of TITLE VII.

142.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, and other damages, as the direct and proximate result of the **DEFENDANT'S** unlawful actions.

**WHEREFORE, PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest—including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT III

17

## RETALIATION / REPRISAL
## IN VIOLATION OF THE F.C.R.A.
### (FLA. STAT. 760.01 *ET SEQ.*)

143.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

144.    The FCRA prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, or privileges of one's employment, based upon one's membership in a protected class or participation in a protected activity.

145.    An employee's opposition to an employer's practices, even those oppressions of a coworker, based on the employee's reasonable belief that the employer has engaged in an unlawful employment practice, suffices to show that the employee engaged in a protected activity for the purpose of an FCRA retaliation claim.

146.    An employee's opposition to an employer's discriminatory practices will support a claim for retaliation under the FCRA.

147.    **PLAINTIFF** complained to **DEFENDANT** about its unlawful, oppressive, and discriminatory treatment towards black, African American and/or male employees within the team that he managed.

148.    In response to **PLAINTIFF** participation in a protected activity (identifying inequity and oppression in wage disparities), under the FCRA, **PLAINTIFF** was retaliated against and unlawfully terminated, and denied the same opportunities and benefits that were provided to similarly situated employees outside **PLAINTIFF'S** protected class, by **DEFENDANT**.

149.    **DEFENDANT** treated other employees who did not complain about Defendant's discriminatory activities more favorably than the Plaintiff by providing them the wages Plaintiff advocated for—right after terminating **PLAINTIFF**—and treated CHALK more favorably

18

because she agreed not to report the potential liability risks to regulators in exchange for keeping her employment.

150.    **DEFENDANT** deliberately and intentionally retaliated against the **PLAINTIFF** as to the terms or conditions of his employment due to **PLAINTIFF'S** engaging in protected activities under the FCRA.

151.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, interest—including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

**COUNT IV**

**RETALIATION / REPRISAL**
**IN VIOLATION OF TITLE VII**
**(42 U.S.C. §§ 2000E *ET SEQ.*)**

152.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

153.    TITLE VII prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, or privileges of one's employment, based upon one's membership in a protected class or participation in a protected activity.

154.    An employee's opposition to an employer's practices, even those oppressions of a coworker, based on the employee's reasonable belief that the employer has engaged in an unlawful employment practice, suffices to show that the employee engaged in a protected activity for the purpose of a TITLE VII retaliation claim.

155.    An employee's opposition to an employer's discriminatory practices will support a claim for retaliation under TITLE VII.

156.    **PLAINTIFF** complained to **DEFENDANT** about its unlawful, oppressive, and discriminatory treatment towards black, African American and/or male employees within the team that he managed.

157.    In response to **PLAINTIFF** participation in a protected activity (identifying inequity and oppression in wage disparities), under the TITLE VII, **PLAINTIFF** was retaliated against and unlawfully terminated, and denied the same opportunities and benefits that were provided to similarly situated employees outside **PLAINTIFF'S** protected class, by **DEFENDANT**.

158.    **DEFENDANT** treated other employees who did not complain about **DEFENDANT'S** discriminatory activities more favorably than the **PLAINTIFF** by providing them the wages **PLAINTIFF** advocated for—right after terminating **PLAINTIFF** —and treated CHALK more favorably because she agreed not to report the potential liability risks to regulators in exchange for keeping her employment.

159.    **DEFENDANT** deliberately and intentionally retaliated against the **PLAINTIFF** as to the terms or conditions of his employment due to **PLAINTIFF** engaging in protected activities under TITLE VII.

160.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, interest—including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (FLORIDA COMMON LAW)

161.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

162.    The foregoing actions by **DEFENDANT** was intentional, abusive, willful, reckless, and done in bad faith, and/or done with gross negligence or recklessness disregard for the health and wellbeing of **PLAINTIFF**.

163.    The aforesaid actions were of the type that **DEFENDANT** did foresee or should have reasonably foreseen would cause great emotional distress, anxiety, inconvenience, and expense, including attorneys' fees and costs of litigation, on the part of the **PLAINTIFF**.

164.    **DEFENDANT'S** conduct was intentional in that it was done with a oppressive deliberateness.

165.    **DEFENDANT'S** attempt to fish from both sides of the boat—saying **PLAINTIFF** lacked engagement while he over-engaged—saying **PLAINTIFF** lacked leadership while he was

being a leader for his team—is severe and pervasive and if this Court allow such blatant pretext to suffice as a "non-discriminatory, justified and legitimate basis" for the adverse employment action, then leaders and advocates everywhere would start being overcome with injustices—being terminated from their positions for being protagonist and advocates for the oppressed and suppressed.

166. **DEFENDANT's** conduct is thus severe and pervasive and constitutes a wanton and reckless disregard for Plaintiff well-being.

167. **DEFENDANT** is thus liable to **PLAINTIFF** for intentional infliction of emotional distress.

168. As a direct and proximate result of the **DEFENDANT'S** intentional infliction of emotional distress, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for emotional distress, humiliation, loss of capacity to enjoy life, mental anguish, physical discomfort, compensatory damages, interest on litigation costs, and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT VI

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (FLORIDA COMMON LAW)

169. **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

170. In the alternative, the actions of **DEFENDANT** were done in a negligent manner and **DEFENDANT** did foresee or reasonably should have foreseen that such actions would cause

great emotional distress, anxiety, inconvenience, mental and emotional distress, and other damages or expenses, on the part of **PLAINTIFF**.

171.    **DEFENDANT** knew and/or should have known about the adverse employment actions and differential effect of its conduct, and further failed to correct or remedy it in any way.

172.    **DEFENDANT** did foresee or reasonably should have foreseen that such actions, if unmitigated, would cause great emotional distress, anxiety, inconvenience, and other damages to **PLAINTIFF**; and that such negligent actions or inactions on the part of **DEFNDANT** would, and did, proximately cause **PLAINTIFF** to suffer such emotional distress, anxiety, inconvenience, and damages.

173.    **DEFENDANT** (master) is vicariously liable for the negligence of its employees (servants).

174.    **DEFENDANT** is liable to **PLAINTIFF** for negligent inflictions of emotional distress, and the damages suffered by **PLAINTIFF** as a result thereof.

175.    As a direct and proximate result of the **DEFENDANT's** negligent infliction of emotional distress, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for emotional distress, humiliation, loss of capacity to enjoy life, mental anguish, physical discomfort, compensatory damages, interest on litigation costs, and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT VII

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. §§ 201 *et seq.*)

176.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

177.    Federal law prohibits sex discrimination relative to wages, under the Fair Labor Standards Act as follows:

> (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment under similar working conditions, except where such payment is made pursuant to (i) seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

178.    It is further prohibited for an employer to retaliate against an employee under the Fair Labor Standards Act, as follows:

> [I]t shall be unlawful for any person [to] discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3).

179.    CHALK was an employee at *Signature Aviation* under similar working conditions of the above referenced male employees because they were both accounting managers.

180.    CHALK received lower wages despite additional responsibilities.

181.    CHALK's lower rate of wages was not pursuant to a "seniority system" or other exception for differential wages, because CHALK had been at least thirty (30) years of accounting experience and over nine (9) years with *Signature Aviation*.

182.    **DEFENDANT** discriminated against CHALK on the basis of her sex by paying wages to her at a rate that was approximately 20% less than the rate which it paid wages to to employees of the opposite sex.

183.    **PLAINTIFF** was discharged because he filed a complaint, or instituted or caused to be instituted, a proceeding under or related to the Fair Labor Standards Act, section 201 *et seq.*; and/or because PLAINTIFF testified or was about to testify about same.

184.    **DEFENDANT** violated the Fair Labor Standards Act by discharging **PLAINTIFF**, in violation of section 215(a)(3).

185.    As a direct and proximate result of **DEFENDANT** unlawful conduct, **PLAINTIFF** was injured and incurred damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award damages to **PLAINTIFF** for payment of wages lost and an additional equal amount as liquidated damages, other compensatory damages, costs of litigation, reasonable attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT VIII

### VIOLAITON OF FLORIDA'S PRIVATE WHISTLEBLOWERS ACT
### (Fla. Stat. § 448.101 *et seq.*)

186.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

187.    Florida law protects employees under section 448.102, Fla. Stat., as follows:

An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to an appropriate governmental agency, […] an activity, policy, or practice of the employer that is in violation of the law, rule or regulation. […]

(2) Provided information to […] any appropriate governmental agency, person, or entity conducting an investigation, hearing, or

inquiry into an alleged violation of a law, rule or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of law, rule, or regulation.

Fla. Stat. § 448.102 (Prohibitions).

188.   An employee need not establish a specific retaliatory intent; it is sufficient to show that they objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of the law, rule, or regulation. *See Hornsfischer v. Manatee County Sheriff's Office*, 136 So.2d 703 (2nd DCA 2014).

189.   An employee's burden to show "cause" is light; the employer's knowledge of the employee's objection or refusal of the violation or potential violation at the time of the adverse action against them will suffice. *See Andrews v. Direct Mail Express, Inc.*, 1 So. 3d 1192, 1193 (5th DCA 2013).

190.   Claims under section 448.102 do not require an actual violation of law, rule, or regulation; an employee's good-faith belief that a violation occurred or may be occurring when claiming protection under the law will suffice. *See Avery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 915 (Fla. 4th DCA 2013).

191.   Employees are given wide latitude regarding evidence establishing violations of section 448.102, and such evidence can include temporal proximity between the underlying exercise of statutorily protected rights and the adverse action and the conduct of the subsequent employer.

192.   Florida courts recognize that adverse employment actions taken within ninety (90) days of a complaint, disclosure, objection, or rejection will establish a causal connection between the protected activity and the adverse employment action suffered by the employee.

193.    The EEOC is an "appropriate governmental agency" as defined by <u>section 448.101(1)</u>.

194.    **PLAINTIFF** is an "employee" as defined <u>section 448.101(2)</u>.

195.    **DEFENDANT** is an "employer" as defined by <u>section 448.101(3)</u>.

196.    The EPA, FCRA, and TITLE VII are each a "law, rule, or regulation," as defined by <u>section 448.101(4)</u>.

197.    The termination of **PLAINTIFF'S** employment on <u>October 21, 2021</u>, is a "retaliatory personnel action" as defined by <u>section 448.101(5)</u>.

198.    PAVEL, MILLER, and CUNICO are "supervisors" as defined by <u>section 448.101(6)</u>.

199.    **PLAINTIFF** engaged in a statutorily protected activity when he "disclosed or threatened to disclose" the potential violations of other employees' civil rights under federal and state statutes.

200.    **PLAINTIFF** received adverse employment action against him when he was terminated by **DEFENDANT** on or about <u>October 21, 2021</u>.

201.    **PLAINTIFF's** termination was causally related to his protected activities.

202.    A causal nexus is established by the timing of **PLAINTIFF'S** reports between <u>April 2021</u> and <u>October 2021</u>, as to his report of potential statutory violations on or about <u>October 5, 2021</u>, his notices of potential charges of discrimination being filed, and his termination on <u>October 21, 2021</u>.

203.    As a direct and proximate result of **DEFENDANT'S** deliberate and oppressive violations of the FPWA, **PLAINTIFF** was injured and incurred damages, including but not limited to back pay, lost future wages, and damages for mental anguish, and pain and suffering.

204.    As a further result of **DEFENDANT'S** unlawful conduct, **PLAINTIFF** incurred attorneys' fees and costs.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, enter an injunction restraining continued violation of the Fair Labor Standards Act, and award **PLAINTIFF** damages for emotional distress, humiliation, loss of capacity to enjoy life, mental anguish, physical discomfort, reinstatement of **PLAINTIFF** to the same position held before the retaliatory personnel action, or to an equivalent position, reinstatement of full fringe benefits and seniority rights or their monetary equivalent, compensatory damages such as compensation for lost wages, benefits, and other remuneration, interest on litigation costs, and attorneys' fees, and any other compensatory damages allowable at law and such other relief as this Court deems appropriate.

## JURY DEMAND

**WHEREFORE, PLAINTIFF,** by and through their undersigned counsel, hereby respectfully requests a trial by jury on all issues so triable.

DATED: 01/10/2023.                         Respectfully submitted,

*/s/ Michael G. Mann*
**MICHAEL G. MANN, ESQ.**
Fla. Bar No. 1020248
**The Cochran Firm Orlando, LLC**
605 East Robinson Street, Suite 140
Orlando, Florida 32801
Tel: (407) 271-8590
Fax: (407) 271-8059
MMann@cochranfirmorlando.com
Service@cochranfirmorlando.com
*Attorney for Plaintiff.*

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>NINTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>ORANGE</u>   COUNTY, FLORIDA

<u>FREDERICK SAUNDERS</u>
Plaintiff

Case # _____

Judge  _____

vs.

<u>SIGNATURE FLIGHT SUPPORT LLC</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

Case 6:23-cv-00230-RBD-LHP    Document 1    Filed 02/09/23    Page 36 of 72 PageID 36

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☒ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**      **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**      **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   8

**VI.**      **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**      **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**      **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**      **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Michael G. Mann Esq.        Fla. Bar # 1020249
       Attorney or party                 (Bar # if attorney)

Michael G. Mann Esq.               01/13/2023
 (type or print name)             Date

- 3 -

IN THE COUNTY/CIRCUIT COURT OF
THE NINTH JUDICIAL CIRCUIT, IN
AND FOR ORANGE AND OSCEOLA
COUNTY, FLORIDA

IN RE: CIVIL CASE MANAGEMENT
     PLAN AND ORDER

_____/

**STANDING CASE MANAGEMENT PLAN/ORDER**
**(General Track)**

     **PURSUANT TO** *In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts***, Fla. Admin. Order No.** AOSC20-23 (Amendment 12) **(April 13, 2021)**, and Ninth Judicial Circuit Court Administrative Order No. 2021-04 (collectively the "Case Management Administrative Orders"), this case is before the Court for case management.  Based on the case type of the initial filing in this case, the Case Management Administrative Orders, and pursuant to Rule 2.545, Fla. R. Gen. Prac. & Jud. Admin., the Court hereby establishes a case management plan.  It is hereby

     **ORDERED** that:

     1.     **COMPLIANCE WITH THIS CASE MANAGEMENT PLAN/ORDER:**  The parties shall strictly comply with the terms of this Case Management Plan/Order, unless otherwise ordered by the Court.  FAILURE TO COMPLY WITH ALL REQUIREMENTS OF THIS ORDER WILL RESULT IN THE IMPOSITION OF SANCTIONS.  If the parties believe that an alternate plan is required or more appropriate, then the parties shall meet, confer and agree on a plan that complies with the time standards set forth in Rule 2.250, Fla. R. Gen. Prac. & Jud. Admin.  The parties may submit an agreed upon plan to the division judge for consideration, or set the matter for a case management conference.

     2.     **ADDITIONAL NINTH CIRCUIT AND DIVISION SPECIFIC GUIDELINES:** All counsel and unrepresented parties shall familiarize themselves and comply with the requirements of the following:  (i) **Amended Administrative Order Establishing the Ninth Judicial Circuit Court Circuit Civil Court Guidelines** (AO 2012-03-01); (ii) **Amended Administrative Order Establishing the Ninth Judicial Circuit Courtroom Decorum Policy** (AO 2003-07-02) (iii) **Amended Administrative Order Establishing the Ninth Judicial Circuit Court County Civil Court Guidelines, Orange County (AO2017-04-01)** and (iv) any division-specific guidelines that may be applicable.

3.     **MODIFICATION OF THIS ORDER:**  The parties may not, individually or by agreement, alter or extend the deadlines in this Order, or waive any of the provisions of this Order. The provisions of this Order may be modified only upon motion/stipulation <u>and</u> Court order in accordance with applicable law.

4.     **SERVICE OF THIS ORDER WITH INITIAL PROCESS:** Pursuant to the Case Management Orders, the Plaintiff shall file a copy of this Order in the case.  Any party serving an initial pleading (complaint, third-party complaint, etc.) in this case shall serve a copy of this Order together with initial service of process.

**CASE MANAGEMENT PLAN – GENERAL TRACK**

*Note:  All dates are to be calculated from the date of filing of the initial complaint unless otherwise noted.*

| | |
|---|---|
| Deadline for Service of Process: | 120 days |
| Deadline for Service of Process extended if not accomplished within 120 days: | 150 days, failing same, all unserved defendants are dismissed without prejudice |
| Deadline for Leave to Add Parties and Amend Pleadings: | Motions must be set for hearing and heard within 90 days from service on the last defendant, or deemed abandoned and denied |
| Motions to Dismiss, Motions for More Definite Statement, Motions to Strike and any objections to the pleadings: | Must be set for hearing and heard within 60 days from filing of the motion/objection, or deemed abandoned and denied. Non-movant shall timely submit a proposed order in the event the motion/objection is deemed abandoned and denied |
| Deadline for Completion of Fact and Expert Discovery: | 450 days (additional disclosure and discovery deadlines will be established by the Uniform Order Setting Pre-Trial and Trial in the case) |
| Pre-trial Motions, including Dispositive and *Daubert* Motions | Must be filed no later than 15 days after completion of discovery and heard no later than 7 days prior to the pre-trial conference, or deemed abandoned and denied |
| Mediation/Alternative Dispute Resolution | Within 30 days after completion of the depositions of all parties, counsel shall meet and confer regarding whether an early mediation would be productive to resolution of certain issues or the entire case.  A final mediation shall occur no later than 30 days after completion of all discovery |

| Approximate Pre-Trial Conference: | 17 months |
|---|---|
| | *Actual Date to be set by Trial Order* |
| Approximate Trial Date: | 18 months |
| | *Actual date to be set by Trial Order* |

5. **NOTICES FOR TRIAL:** Within ten (10) days of the case being at issue as defined by Rule 1.440, Fla. R. Civ. P., the Plaintiff shall confer with opposing counsel/party regarding the anticipated length of trial and file a Notice for Trial. The Plaintiff shall forward a copy of the Notice for Trial to the Judicial Assistant at the Division email address noted on the Ninth Circuit website.

6. **DISCOVERY:** All counsel and unrepresented parties shall familiarize themselves with the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible.

7. **SETTLEMENT:** *The case will not be removed from the docket until all documents necessary for closure of the case are filed with the Clerk and notification has been provided to the judicial assistant. A notice of settlement is not sufficient to remove the case from the trial docket.*

   **DONE AND ORDERED** in Orange/Osceola County, Florida.

_____
Chief Judge

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator in your county at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you are hearing or voice impaired, call 711.**

**ORANGE COUNTY:  Human Resources, Orange County Courthouse, 425 N. Orange Avenue, Suite 510, Orlando, Florida, (407) 836-2303**

**OSCEOLA COUNTY:  Court Administration, Osceola County Courthouse, 2 Courthouse Square, Suite 6300, Kissimmee, Florida, (407) 742-2417**

REV 04/29/2021

Filing # 164490035 E-Filed 01/10/2023 07:35:54 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

Case No.: 2023-CA-000364-O

Division: _____

FREDERICK SAUNDERS,

Petitioner,

and

SIGNATURE FLIGHT SUPPORT, LLC,

Respondent.

## SUMMONS:
## ORDEN DE COMPARECENCIA:
## CITATION:

TO/PARA/A: (name of party to be served), Signature Flight Support, LLC (d/b/a "Signature Aviation") ,
{address (including city and state)/location for service} c/o CSC, 1201 Hays Street, Tallahassee, FL 32301 ,

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

MICHAEL G. MANN, ESQ.
The Cochran Firm Orlando, LLC
605 East Robinson Street, Suite 140
Orlando, FL 32801

If the party serving summons has designated email address(es) for service or is represented by an attorney, you may designate email address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516. Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Cour's office. You may review these documents, upon request. You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and Email Address).

# IMPORTANTE

Usted ha sido demandado legalmente, Tiene veinte (20) dias, contados a Partir del recibo de esta notificacion, para contestar la demanda adjunto, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo rotegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales, Si lo desea, puede usted consultar a un abogado immediatament. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desa responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante al tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/ Plaintiff's Attorney."

MICHAEL G. MANN, ESQ.
The Cochran Firm Orlando, LLC
605 East Robinson Street, Suite 140
Orlando, FL 32801

# IMPORTANT

Des poursuites judiciaries ont ete enterprises contre ous. Vous avez 20 jours consecutifts a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mentin du numero de dossier ci-dessus et du nom des paties nommees isi, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur de Tribunal. Il y a d'autres obligations juridiques et vous pouvez reqerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

MICHAEL G. MANN, ESQ.
The Cochran Firm Orlando, LLC
605 East Robinson Street, Suite 140
Orlando, FL 32801

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

**Civil Division**
**425 N. Orange Avenue**
**Room 350**
**Orlando, Florida 32801**



TIFFANY M. RUSSELL
CLERK OF THE CIRCUIT COURT

January 13th, 2023

By: _/s/ Lauren Scheidt_____

Deputy Clerk

IN THE NINTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION

**FREDERICK SAUNDERS, individually,**

    *Plaintiff*,

**v.**                             **CIVIL CASE NO.: 2023-CA-000364-O**

**SIGNATURE FLIGHT SUPPORT LLC,**     **FIRST AMENDED COMPLAINT &**
**a Delaware limited company,**           **DEMAND FOR JURY TRIAL**

    *Defendant.*

_____/

## FIRST AMENDED COMPLAINT

    **COMES NOW,** PLAINTIFF, FREDERICK SAUNDERS ("**PLAINTIFF**"), by and through undersigned counsel, against Defendants **SIGNATURE FLIGHT SUPPORT LLC** ("**DEFENDANT**"), for violating the Civil Rights Act of 1964, 42 U.S.C. 2000e *et. seq.* (TITLE VII), Florida's Civil Rights Act of 1992, § 760.01 *et. seq.* (FCRA), Florida's Private Sector Whistleblowers Act ("FPWA"), Fla. Stat. § 448.101 *et seq.*, and Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. 29 U.S.C. 201 *et seq.*, as well as common law intentional torts and negligence causes of action; and so further states:

## PARTIES

    1.    **PLAINTIFF** is an individual above the age of eighteen (18), a resident of Orange County, State of Florida, and is otherwise *sui juris*.

    2.    **DEFENDANT** is a foreign limited liability company, with its corporate headquarters located in the County of Orange, in the State of Florida, at 13485 Veterans Way, Suite 600, Orlando, Florida 32827, and its Registered Agent with Florida's Secretary of State is Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

3.    **DEFENDANT** was founded in <u>1992</u> and since then "has become the world's largest network of Fixed Base Operations (FBOs)."

4.    **DEFENDANT** was acquired by a private consortium of companies, in or around <u>February 2021 through May 2021</u>, for approximately $4.73 billion.

5.    **DEFENDANT** has an estimated annual revenue between "$1 to $5 billion (USD)."

6.    **DEFENDANT** currently maintains its corporate headquarters in the County of Orange, in the State of Florida.

7.    **DEFENDANT** employs between 5,001 to 10,000 employees.

## JURISDICTION & VENUE

8.    **PLAINTIFF** restates Paragraphs 1-7 as though fully restated herein.

9.    **PLAINTIFF** is an individual above the age of eighteen (18), a resident of Orange County, Florida, and is otherwise *sui juris*.

10.    **DEFENDANT** maintains its corporate headquarters in Orlando, Florida, thereby establishing minimum contacts and making it a Florida "citizen" for jurisdictional purposes. *See also* <u>42 U.S.C. §§ 2000e-5(f)(3)</u>.

## ADMINSTRATIVE REMIDIES EXHAUSTED

11.    **PLAINTFF** restates Paragraphs 1-10 as though fully restated herein.

12.    **PLAINTIFF** filed a Charge of Discrimination ("Charge") jointly with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR)

13.    **PLAINTIFF** filed the Charge within three hundred sixty-five (365) days of the violations alleged herein. <u>Fla. Stat. 760.11(1)</u>.

14.     **PLAINTIFF** filed the Charge within one hundred eighty (180) days of the last alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1).

15.     **PLAINTIFF** files this Complaint within ninety (90) days of the EEOC determination. § 2000e-5(f)(1).

16.     **PLAINTIFF** has filed this Complaint within two (2) years after discovering that the alleged retaliatory personnel action was taken, and within four (4) years after the personnel action was taken. Fla. Stat. § 448.103(1)(a).

17.     **PLAINTIFF** has filed this Complaint within the four-year statute of limitations applicable to general statutory violations. *See Hines v. Whataburger Restaurants, LLC*, 301 So. 3d 473 (Fla. 1st DCA 2020) (holding four-year limitations period applied).

18.     **PLAINTIFF** has filed this Complaint in a judicial district in the State where the unlawful employment practice was committed and where **DEFENDANT** has its principal place of business. 42 U.S.C. § 2000e-5(f)(3).

19.     **PLAINTIFF** has exhausted his admirative remedies and all conditions precedent to bringing this action have occurred. *See* 28 U.S.C. §§ 2000e *et seq*., and Fla. Stat. §§ 760.01 *et seq*.

## FACTUAL ALLEGATIONS

20.     **PLAINTIFF** restates Paragraphs 1-19 as though fully restated herein.

21.     **DEFENDANT** has been engaged in an industry affecting commerce and as an "employer" as defined by TITLE VII, the FCRA, the FLSA, and the FPWA.

22.     **DEFENDANT** has had at least more than five hundred (500) employees for each working day in at least twenty (20) calendar weeks at all times material hereto.

3

23.     **DEFENDANT** was at all times material an "employer" as defined by TITLE VII, the FCRA, the FLSA, and the FPWA.

24.     **PLAINTIFF** was at all times material an "employee" as that term is used in Title VII, the FCRA, the FLSA, and the FPWA.

### (FACTS RELEVANT TO PLAINTIFF'S BACKGROUND & EMPLOYMENT)

25.     **PLAINTIFF** was a black, African American male manager for DEFENANT over the age of forty-nine (49) years, on his final day at *Signature*.

26.     **PLAINTIFF** served in the United States Army for approximately six (6) years following graduation from high school.

27.     After serving six (6) years in the Army, **PLAINTIFF** earned his Bachelor's degree from The Florida State University.

28.     After obtaining his Bachelors, **PLAINTIFF** earned a Master's degree from University of South Florida.

29.     After earning his Master's, **PLAINTIFF** was a corporate intern at a global, public accounting firm named Ernst & Young.

30.     **PLAINTIFF** quickly earned and accepted an official job offer from Ernst & Young during his internship.

31.     **PLAINTIFF** remained employed at Ernst & Young for approximately three (3) years.

32.     **PLAINTIFF** was hired by **DEFENDANT** on or about <u>September 17, 2007,</u> as an Internal Auditor, in the Associated Department.

33.     **PLAINTIFF** was abundantly capable of performing his required job duties and did so outstandingly during his entire employment period for **DEFENDANT**.

34.     **PLAINTIFF** was promoted to Regional Accounting Manager in **DEFENDANT'S** *Signature Flight Support* division, on or about <u>October 23, 2017</u>.

35.     **PLAINTIFF** was promoted at that time because of his extensive experience, expertise, excellent performance, and his profound knowledge of the business.

36.     **PLAINTIFF** was trusted, respected, and frequently requested for advice and opinion.

37.     **PLAINTIFF** spent approximately four (4) years excelling in his position as Regional Accounting Manager and was at all times performed at or above expectations.

38.     **PLAINTIFF** never received any performance-based discipline, performance plans, or written warnings that identified performance or behavior issues while working for **DEFENDANT**.

39.     **PLAINTIFF** regularly scored approximately 8-point, 9-point, and 10-point performance ratings (on a scale of 1 to 10) during performance evaluations and reviews for **DEFENDANTS**.

40.     **PLAINTIFF** always received maximum bonuses from **DEFENDANT** due to his stellar and exemplary evaluations and reviews, and because of his outstanding leadership skills.

41.     **PLAINTIFF** was a highly revered and beloved senior leader within the chain of command at *Signature*.

42.     **DEFENDANT** expressed their appreciation for **PLAINTIFF'S** excellent work product and leadership by designating him as a mentor for several managers and employees during his seventeen (17) years working for **DEFENDANT**, where **PLAINTIFF** would prepare prospects for the next level in their careers in *Signature*.

43.    **PLAINTIFF** had approximately five (5) junior managers working immediately under him that he managed and/or mentored.

**(FACTS RELEVANT TO PLAINTIFF'S TERMINATION OF EMPLOYMENT)**

44.    **PLAINTIFF** (mentor) learned that his junior managers (mentees) were not receiving equal pay based on their color, age, race, and/or sex.

45.    **PLAINTIFF** first began noticing discrepancies in pay (unequal pay) in or around April 2021, when a member of his team, JAN CHALK, was overlooked for a raise while being assigned approximately 50% more work duties.

46.    **PLAINTIFF** later discovered that CHALK'S pay ratio was set to approximately 68%, which was significantly smaller than the approximately 78% to 83% ratios that male manager employees received.

47.    CHALK was an Area Accounting Manager at that time, and none of the male Area Accounting Managers had ratios as low as CHALK.

48.    At that time, CHALK had already been overlooked for at least two (2) promotions and/or wage increases even though she had been assigned additional job duties on multiple occasions.

49.    CHALK's base salary was actually even far lower than **DEFENDANT'S** starting ratio (80%) for beginner.

50.    **PLAINTIFF** also discovered that CHALK had not received any pay increases relating to her additional duties in or around February 2016 and May 2021.

51.    CHALK had approximately thirty-four (34) years of experience in accounting, nine (9) of which had been earned while working for **DEFENDANT**.

52.    **PLAINTIFF**, in light of his communications with CHALK and based on his above findings, reported his findings to his manager and **DEFENDANT'S** Human Resources as a violation of the FLSA and disparate treatment.

53.    **PLAINTIFF** believed that CHALK was being paid unfairly due to her sex and/or gender (female) and shared this belief with his manager and DEFENDANT's human resources.

54.    **PLAINTIFF** (as the *team leader* and/or mentor) sought to make sure his team was heard and treated fairly.

55.    Between <u>April 2021 and October 2021</u>, **PLAINTIFF** made several formal and informal reports to **DEFENDANT** regarding what appeared to clearly be violations of TITLE VII, the FCRA, and the FLSA.

56.    **DEFENDANT** at all times materially failed to investigate and/or remedy the clearly oppressive and/or unlawful conduct identified by **PLAINTIFF**.

57.    **PLAINTIFF** submitted said reports to **DEFENDANT** by following the company's reporting policies and structure in place at that time.

58.    Each time **PLAINTIFF** reported these adverse effects to **DEFENDANT**, he was shut down and nothing was done.

59.    **PLAINTIFF** refused to remain complicit in **DEFENDANT'S** unlawful and oppressive practices, so he insisted on approaching his manager and human resources department.

60.    **PLAINTIFF** even submitted an anonymous ethics claim to **DEFENDANT's** ethics hotline on or about <u>September 30, 2021</u>.

61.    **DEFENDANT** disapproved of **PLAINTIFF's** speaking up about the injustices.

62.    **PLAINTIFF'S** complaints were not investigated and/or inadequately addressed by Defendant.

63.     **PLAINTIFF'S** complaints actually just annoyed **DEFENDANT** and/or its employees because he was telling them it had workplace culture issues that were producing a disparate effect on protected classes of employees while favoring another class.

64.     **PLAINTIFF** later followed up with CHRISTY PAVEL, Vice President at the time for **DEFENDANT'S** Human Resources Department, on or about October 5, 2021.

65.     PAVEL told **PLAINTIFF** that **DEFENDANT** would "continue" to investigate his claims, but this was the same statement that had been made for several month by that time.

66.     **PLAINTIFF** reiterated his concerns about the situation potentially violating TITLE VII, the FCRA, and/or the FLSA, due to the disparate treatment in wages between male and female managers on his team.

67.     On or about October 12, 2021, **PLAINTIFF** reported the violations and cautioned PAVEL that, if the matter was not properly investigated and remedied, then it would most likely constitute actionable conduct that leads to more severe consequences and/or punishments by the EEOC.

68.     Almost immediately after his October 12, 2021, complaint where he identified the matter as being a civil rights and statutory violations, **PLAINTIFF** was terminated by his manager, SHERRI MILLER, and human resources representative, DAN CUNICO, on or about October 21, 2021.

69.     At that time, MILLER informed **PLAINTIFF** that he was being terminated because of a "remarkable lack of engagement" and claimed that **PLAINTIFF** failed to discuss his complaints with his managers and/or supervisors *before* submitting an anonymous ethics claim to **DEFENDANT'S** ethics hotline.

70.     MILLER'S statement was plainly false and disingenuous and was merely used as a way to hide the true nature of **PLAINTIFF'S** termination.

71.     **PLAINTIFF** followed the company policies and procedures for reporting the matters; specifically, **PLAINTIFF** discussed his complaints with his manager and human resources multiple times prior to anonymous ethics claim through the ethics hotline.

72.     Despite an excellent employment history, military background, his graduates' degrees, clean employee profile, and being a top performer at *Signature*, as a Regional Accounting Manager, **PLAINTIFF** was nonetheless abruptly terminated on or about October 21, 2021, based on his participation in a protected activity.

73.     This was the first time **PLAINTIFF** had been disciplined—it just so happened to be "capital" punishment, *per se* (*i.e.*, the worst possible thing an employer can do to employees).

74.     The only other action worse than termination for **PLAINTIFF** was that his termination was discriminatory and in violations of his civil right to equal employment opportunities in this country.

75.     The stated reasons for **PLAINTIFF'S** termination were frivolous and phony allegations without any merit or basis in reality.

76.     If the stated reasons were true, then **DEFENDANT** terminated **PLAINTIFF** without warning, and without good cause, abruptly, while treating others (*e.g.*, CHALK) more favorably, offering a severance package to them, giving warnings before discipline, and even offering their job back after being put on administrative leave.

77.     However, the true reason **DEFENDANT** terminated **PLAINTIFF** is because he was advocating for equal rights for his colleagues and subordinates.

78.     Just days before terminating Plaintiff, he had informed his supervisors and/or **DEFENDANT's** human resources directly and/or indirectly that **DEFENDANT** were at risk of being sued for the discriminatory and unfair workplace environments and policies, especially those relating to rates of pay for black employees.

79.     As a Black, African American male, **PLAINTIFF** did not receive the same type of benefits that other employees received outside his protected classes.

80.     **PLAINTIFF** witnessed his coworkers within his protected classes suffer from discriminatory treatment and adverse employment actions, such as disparate pay that disproportionately favored non-black, non-African American, and non-male employees.

81.     **PLAINTIFF** raised these concerns with his supervisors on several occasions.

82.     **PLAINTIFF** informed **DEFENDANT** and/or its employees, representatives, agents, or assigns that the disparate treatment was a clear "EEOC risk," meaning that if the adverse actions and disparate treatment were to continue, that **DEFENDANT** would be exposed to discrimination and unequal pay complaints (or charges of discrimination).

83.     **PLAINTIFF** was not threatening to file his own charge, but rather was sticking up for his team which he was the in charge of and attempted to advocate on their behalf to achieve equal employment opportunities that were based on merits rather than memberships in a protected class under TITLE VII and the FCRA.

84.     Instead of addressing **PLAINTIFF'S** concerns, **DEFENDANT** swiftly terminated him for his whistleblowing.

85.     On or about <u>October 21, 2021</u>, **DEFENDANT** involuntarily terminated **PLAINTIFF'S** employment at *Signature*.

86.    **DEFENDANT** notified **PLAINTIFF** that he was terminated for "remarkable lack of engagement" (meaning unknown), and other vague and ambiguous reasons that had never been identified before.

87.    **DEFENDANT'S** stated reasons for their actions against **PLAINTIFF** are pretext and merely intended to hide its true animus towards **PLAINTIFF**.

88.    The true reason **DEFENDANT** terminated **PLAINTIFF** was to seek revenge and to fabricate a narrative to discredit him and intimidate him.

89.    **DEFENDANT** disliked **PLAINTIFF'S** advocacy for equal rights for black/African employees.

90.    **DEFENDANT'S** termination of **PLAINTIFF** has caused him to suffer unnecessary pain, damages, and other irreparable harms and inconveniences.

91.    Ironically, **DEFENDANT** erroneously provided as **PLAINTIFF** was literally being a leader for the oppressed rather than keeping his head down and minding his own business.

92.    **PLAINTIFF** was a lighthouse to his team, and he advocated for them to be treated equally at the workplace at the cost of **PLAINTIFF'S** own job.

93.    **DEFENDANT** never put **PLAINTIFF** on a performance improvement plan, and he was never written-up or disciplined during his "remarkable" tenure for *Signature*.

94.    Not once prior to his abrupt and unlawful termination did **DEFENDANT** ever even call, write, or signal that **PLAINTIFF** had anything lacking in his work performance.

95.    **PLAINTIFF** time, and time again, received exceptional or above-average performance evaluations.

96.    **PLAINTIFF** received the highest merits (3%) of any Regional Accounting Manager at *Signature* in <u>2021</u>.

97. **PLAINTIFF** has documented accomplishments and work that was completed leading up to his termination.

98. To say **PLAINTIFF** "lacked" anything, at any time, while working for *Signature*, is plainly, utterly, and egregiously false; it is merely a guise to hide the retaliatory animus embedded in the core of **DEFENDANT'S** decision to terminate him.

99. It is shocking and pervasive that a team manager (**PLAINTIFF**) that was fired for sticking his neck out for his team to be accused of lacking *any* leadership.

100. In fact, upon information and belief, **PLAINTIFF** former team now receives equal pay and benefits—the exact thing he advocated for when he was terminated.

101. Upon information and belief, **PLAINTIFF** was retaliated against in the form of termination of his employment, solely because he identified a liability risk that was brewing at the workplace under TITLE VII and the FCRA.

102. Upon information and belief, **PLAINTIFF'S** termination was a retaliatory and preemptive strike against him for even mentioning a possible EEOC risk.

103. **DEFENDANT** did not provide a non-discrimination and legitimate basis for **PLAINTIFF'S** termination.

104. Reporting discrimination and harassment, as well as reporting unequal wages, is a protected activity under TITLE VII, the FCRA, the FLSA and the FPWA.

105. Involuntary termination of employment is an "adverse employment action" as that term is defined by TITLE VII and the FCRA.

106. Termination of employment constituted "retaliatory personnel action," as defined by the FPWA.

107. Termination of **PLAINTIFF** constituted "discharge" as defined by the FLSA.

108.    **PLAINTIFF** reported wage disparities that favored non-black accommodations she sought and formally requested were given to non-black, non-African American, and/or non-disable employees.

109.    As a result of **DEFENDANT'S** conduct, **PLAINTIFF** did not receive the same benefits of employment or earn as much as non-Black, non-African American, and non-disabled employees, due only to **PLAINTIFF** race, color, and/or disability.

110.    **PLAINTIFF** complained to **DEFENDANT** about the above-stated conduct and pleaded with **DEFENDANT** to correct the unfair and oppressive treatment he was being subjected to.

111.    In response, **DEFENDANT** failed to change course or otherwise take any meaningful action to accommodate **PLAINTIFF'S** requests and complaints, without providing any legitimate explanation for its adverse employment actions, unfair treatment, and overtly oppressive reprisal.

112.    Nonetheless, **PLAINTIFF'S** authentic leadership is evidence by the fact that he accomplished equal pay for his colleagues, who are now paid more fairly by **DEFENDANT**, and his former teammates now applaud him for his sacrifice.

113.    As a result of the **DEFENDANT'S** unlawful and oppressive conduct, **PLAINTIFF** has been suffered injuries and incurred damages including loss of quality of life, inconvenience, reputation, and emotional distress and mental anguish, as well as attorneys' fees and costs of litigation.

### (FACTS RELEVANT TO DISPARATE TREATMENT; COMPARATOR)

114.    Similarly situated employees outside of **PLAINTIFF'S** protected class were treated more favorably than **PLAINTIFF**.

115.    JAN CHALK worked at *Signature* during , a *Caucasian female* employee for **DEFENDANT**, working as an Accounting Manager for **DEFENDANT** during the same time period that **PLAINTIFF** was Accounting Manager.

116.    CHALK advocated for equal pay.

117.    **PLAINTIFF** advocated for equal pay for CHALK and others.

118.    CHALK filed an ethics claim against **DEFENDANT** regarding her unequal pay.

119.    **PLAINTIFF** filed an ethics claim against **DEFENDANT** regarding CHALK and his team.

120.    CHALK was placed on *paid* administrative.

121.    **PLAINTIFF** was fired without pay.

122.    CHALK was later given her job back and offered five-month's severance.

123.    **PLAINTIFF** was blackballed and received no severance.

124.    CHALK is white; **PLAINTIFF** is black.

125.    CHALK is Caucasian; **PLAINTNIFF** is African American.

126.    CHALK is female; **PLAINTIFF** is male.

127.    CHALK remains employed by **DEFENDANT** as of the time of this filing.

<u>COUNT I</u>

**DISCRIMINATION BASED ON RACE / COLOR
IN VIOLATION OF F.C.R.A.
(<u>FLA. STAT. §§ 760.01 *ET SEQ.*</u>)**

128.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

129.    The FCRA prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, and privileges of one's employment, based upon racial/color classifications, consideration, or race/color-based factors.

130.    **DEFENDANT'S** involuntarily, abrupt, and oppressive termination of **PLAINTIFF** constitutes text-book adverse employment action under the FCRA, in that it altered **PLAINTIFF'S** compensation, terms, conditions, and/or privileges of her employment and/or otherwise deprived him of employment opportunities and *directly* adversely affected her status as an employee.

131.    Other similarly situated employees who were not in **PLAINTIFF'S** protected class were treated more favorably, kept their jobs, and were offered benefits that were not offered to him.

132.    **DEFENDANT** treated individuals outside of his protected class accounting managers and other employees more favorable than **PLAINTIFF**, in that those employees received better opportunities and benefits for the same workplace qualifications and performance that **PLAINTIFF** held and despite their actions being identical in every way other than the race and gender of the favored versus disfavored employees.

133.    The adverse employment actions against **PLAINTIFF** were motivated on the basis of race, color, sex, and/or gender, in that those similarly situated employees outside her protected class were not subject to the same unlawful actions, conditions, and/or benefits.

134.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, and other damages, as the direct and proximate result of the **DEFENDANT'S** unlawful actions.

**WHEREFORE, PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front

pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest—including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT II

### RACE / COLOR DISCRIMINATION
### IN VIOLATION OF THE TITLE VII
### (42 U.S.C. §§ 2000E *ET SEQ.*)

135.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

136.    TITLE VII prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, and privileges of one's employment, based upon racial/color classifications, consideration, or race/color-based factors.

137.    **DEFENDANT** involuntarily, abruptly, and oppressively terminated **PLAINTIFF**, constituting text-book adverse employment action under the TITLE VII, because it altered **PLAINTIFF'S** compensation, terms, conditions, and/or privileges of her employment and/or otherwise deprived him of employment opportunities and *directly* adversely affected her status as an employee.

138.    Other similarly situated employees who were not in **PLAINTIFF'S** protected class were treated more favorably, kept their jobs, and were offered benefits that were not offered to **PLAINTIFF**.

139.    **DEFENDANT** treated individuals outside of his protected class accounting managers and other employees more favorable than **PLAINTIFF**, in that those employees received better opportunities and benefits for the same workplace qualifications and performance

that **PLAINTIFF** held and despite their actions being identical in every way other than the race and gender of the favored versus disfavored employees.

140.    The adverse employment actions against **PLAINTIFF** were motivated on the basis of race, color, sex, and/or gender, in that those similarly situated employees outside her protected class were not subject to the same unlawful actions, conditions, and/or benefits.

141.    **DEFENDANT** deliberately and intentionally discriminated against **PLAINTIFF** as to the terms or conditions of her employment because of her race/color, in violation of TITLE VII.

142.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, and other damages, as the direct and proximate result of the **DEFENDANT'S** unlawful actions.

**WHEREFORE, PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest—including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT III

### RETALIATION / REPRISAL
### IN VIOLATION OF THE F.C.R.A.
### (FLA. STAT. 760.01 *ET SEQ.*)

143.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

144.    The FCRA prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, or privileges of one's employment, based upon one's membership in a protected class or participation in a protected activity.

145.    An employee's opposition to an employer's practices, even those oppressions of a coworker, based on the employee's reasonable belief that the employer has engaged in an unlawful employment practice, suffices to show that the employee engaged in a protected activity for the purpose of an FCRA retaliation claim.

146.    An employee's opposition to an employer's discriminatory practices will support a claim for retaliation under the FCRA.

147.    **PLAINTIFF** complained to **DEFENDANT** about its unlawful, oppressive, and discriminatory treatment towards black, African American and/or male employees within the team that he managed.

148.    In response to **PLAINTIFF** participation in a protected activity (identifying inequity and oppression in wage disparities), under the FCRA, **PLAINTIFF** was retaliated against and unlawfully terminated, and denied the same opportunities and benefits that were provided to similarly situated employees outside **PLAINTIFF'S** protected class, by **DEFENDANT**.

149.    **DEFENDANT** treated other employees who did not complain about Defendant's discriminatory activities more favorably than the Plaintiff by providing them the wages Plaintiff advocated for—right after terminating **PLAINTIFF**—and treated CHALK more favorably because she agreed not to report the potential liability risks to regulators in exchange for keeping her employment.

150.    **DEFENDANT** deliberately and intentionally retaliated against the **PLAINTIFF** as to the terms or conditions of his employment due to **PLAINTIFF'S** engaging in protected activities under the FCRA.

151.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, interest— including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

<u>COUNT IV</u>

**RETALIATION / REPRISAL**
**IN VIOLATION OF TITLE VII**
**(42 U.S.C. §§ 2000E *ET SEQ.*)**

152.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

153.    TITLE VII prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, or privileges of one's employment, based upon one's membership in a protected class or participation in a protected activity.

154.    An employee's opposition to an employer's practices, even those oppressions of a coworker, based on the employee's reasonable belief that the employer has engaged in an unlawful

employment practice, suffices to show that the employee engaged in a protected activity for the purpose of a TITLE VII retaliation claim.

155.    An employee's opposition to an employer's discriminatory practices will support a claim for retaliation under TITLE VII.

156.    **PLAINTIFF** complained to **DEFENDANT** about its unlawful, oppressive, and discriminatory treatment towards black, African American and/or male employees within the team that he managed.

157.    In response to **PLAINTIFF** participation in a protected activity (identifying inequity and oppression in wage disparities), under the TITLE VII, **PLAINTIFF** was retaliated against and unlawfully terminated, and denied the same opportunities and benefits that were provided to similarly situated employees outside **PLAINTIFF'S** protected class, by **DEFENDANT**.

158.    **DEFENDANT** treated other employees who did not complain about **DEFENDANT'S** discriminatory activities more favorably than the **PLAINTIFF** by providing them the wages **PLAINTIFF** advocated for—right after terminating **PLAINTIFF** —and treated CHALK more favorably because she agreed not to report the potential liability risks to regulators in exchange for keeping her employment.

159.    **DEFENDANT** deliberately and intentionally retaliated against the **PLAINTIFF** as to the terms or conditions of his employment due to **PLAINTIFF** engaging in protected activities under TITLE VII.

160.    As a direct and proximate result of the wrongful acts of the **DEFENDANT**, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of past and

present wages, loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for lost wages and benefits, back pay, front pay (or reasonable accommodations), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, interest— including pre-judgment interest on lost wages—costs and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (FLORIDA COMMON LAW)

161.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

162.    The foregoing actions by **DEFENDANT** was intentional, abusive, willful, reckless, and done in bad faith, and/or done with gross negligence or recklessness disregard for the health and wellbeing of **PLAINTIFF**.

163.    The aforesaid actions were of the type that **DEFENDANT** did foresee or should have reasonably foreseen would cause great emotional distress, anxiety, inconvenience, and expense, including attorneys' fees and costs of litigation, on the part of the **PLAINTIFF**.

164.    **DEFENDANT'S** conduct was intentional in that it was done with an oppressive deliberateness.

165.    **DEFENDANT'S** attempt to fish from both sides of the boat—saying **PLAINTIFF** lacked engagement while he over-engaged—saying **PLAINTIFF** lacked leadership while he was being a leader for his team—is severe and pervasive and if this Court allow such blatant pretext to suffice as a "non-discriminatory, justified and legitimate basis" for the adverse employment action,

then leaders and advocates everywhere would start being overcome with injustices—being terminated from their positions for being protagonist and advocates for the oppressed and suppressed.

166.    **DEFENDANT's** conduct is thus severe and pervasive and constitutes a wanton and reckless disregard for Plaintiff well-being.

167.    **DEFENDANT** is thus liable to **PLAINTIFF** for intentional infliction of emotional distress.

168.    As a direct and proximate result of the **DEFENDANT'S** intentional infliction of emotional distress, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for emotional distress, humiliation, loss of capacity to enjoy life, mental anguish, physical discomfort, compensatory damages, interest on litigation costs, and attorneys' fees, and such other relief as this Court deems appropriate.

**COUNT VI**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(FLORIDA COMMON LAW)**

169.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

170.    In the alternative, the actions of **DEFENDANT** were done in a negligent manner and **DEFENDANT** did foresee or reasonably should have foreseen that such actions would cause great emotional distress, anxiety, inconvenience, mental and emotional distress, and other damages or expenses, on the part of **PLAINTIFF**.

22

171.    **DEFENDANT** knew and/or should have known about the adverse employment actions and differential effect of its conduct, and further failed to correct or remedy it in any way.

172.    **DEFENDANT** did foresee or reasonably should have foreseen that such actions, if unmitigated, would cause great emotional distress, anxiety, inconvenience, and other damages to **PLAINTIFF**; and that such negligent actions or inactions on the part of **DEFNDANT** would, and did, proximately cause **PLAINTIFF** to suffer such emotional distress, anxiety, inconvenience, and damages.

173.    **DEFENDANT** (master) is vicariously liable for the negligence of its employees (servants).

174.    **DEFENDANT** is liable to **PLAINTIFF** for negligent inflictions of emotional distress, and the damages suffered by **PLAINTIFF** as a result thereof.

175.    As a direct and proximate result of the **DEFENDANT's** negligent infliction of emotional distress, **PLAINTIFF** has suffered damages and will continue suffering damages from the loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and inconvenience, as well as other damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award **PLAINTIFF** damages for emotional distress, humiliation, loss of capacity to enjoy life, mental anguish, physical discomfort, compensatory damages, interest on litigation costs, and attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT VII

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. §§ 201 *et seq.*)

176.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

177.    Federal law prohibits sex discrimination relative to wages, under the Fair Labor Standards Act as follows:

> (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment under similar working conditions, except where such payment is made pursuant to (i) seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

178.    It is further prohibited for an employer to retaliate against an employee under the Fair Labor Standards Act, as follows:

> [I]t shall be unlawful for any person [to] discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3).

179.    CHALK was an employee at *Signature* under similar working conditions of the above referenced male employees because they were both accounting managers.

180.    CHALK received lower wages despite additional responsibilities.

181.    CHALK's lower rate of wages was not pursuant to a "seniority system" or other exception for differential wages, because CHALK had been at least thirty (30) years of accounting experience and over nine (9) years with *Signature*.

182.    **DEFENDANT** discriminated against CHALK on the basis of her sex by paying wages to her at a rate that was approximately 20% less than the rate which it paid wages to  to employees of the opposite sex.

183.    **PLAINTIFF** was discharged because he filed a complaint, or instituted or caused to be instituted, a proceeding under or related to the Fair Labor Standards Act, section 201 *et seq.*; and/or because PLAINTIFF testified or was about to testify about same.

184.    **DEFENDANT** violated the Fair Labor Standards Act by discharging **PLAINTIFF**, in violation of section 215(a)(3).

185.    As a direct and proximate result of **DEFENDANT** unlawful conduct, **PLAINTIFF** was injured and incurred damages.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, and award damages to **PLAINTIFF** for payment of wages lost and an additional equal amount as liquidated damages, other compensatory damages, costs of litigation, reasonable attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT VIII

### VIOLAITON OF FLORIDA'S PRIVATE WHISTLEBLOWERS ACT
### (Fla. Stat. § 448.101 *et seq.*)

186.    **PLAINTIFF** re-alleges and incorporates by reference Paragraphs 1-127.

187.    Florida law protects employees under section 448.102, Fla. Stat., as follows:

An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to an appropriate governmental agency, […] an activity, policy, or practice of the employer that is in violation of the law, rule or regulation. […]

(2) Provided information to […] any appropriate governmental agency, person, or entity conducting an investigation, hearing, or

inquiry into an alleged violation of a law, rule or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of law, rule, or regulation.

Fla. Stat. § 448.102 (Prohibitions).

188. An employee need not establish a specific retaliatory intent; it is sufficient to show that they objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of the law, rule, or regulation. *See Hornsfischer v. Manatee County Sheriff's Office*, 136 So.2d 703 (2nd DCA 2014).

189. An employee's burden to show "cause" is light; the employer's knowledge of the employee's objection or refusal of the violation or potential violation at the time of the adverse action against them will suffice. *See Andrews v. Direct Mail Express, Inc.*, 1 So. 3d 1192, 1193 (5th DCA 2013).

190. Claims under section 448.102 do not require an actual violation of law, rule, or regulation; an employee's good-faith belief that a violation occurred or may be occurring when claiming protection under the law will suffice. *See Avery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 915 (Fla. 4th DCA 2013).

191. Employees are given wide latitude regarding evidence establishing violations of section 448.102, and such evidence can include temporal proximity between the underlying exercise of statutorily protected rights and the adverse action and the conduct of the subsequent employer.

192. Florida courts recognize that adverse employment actions taken within ninety (90) days of a complaint, disclosure, objection, or rejection will establish a causal connection between the protected activity and the adverse employment action suffered by the employee.

193.    The EEOC is an "appropriate governmental agency" as defined by <u>section 448.101(1)</u>.

194.    **PLAINTIFF** is an "employee" as defined <u>section 448.101(2)</u>.

195.    **DEFENDANT** is an "employer" as defined by <u>section 448.101(3)</u>.

196.    The EPA, FCRA, and TITLE VII are each a "law, rule, or regulation," as defined by <u>section 448.101(4)</u>.

197.    The termination of **PLAINTIFF'S** employment on <u>October 21, 2021</u>, is a "retaliatory personnel action" as defined by <u>section 448.101(5)</u>.

198.    PAVEL, MILLER, and CUNICO are "supervisors" as defined by <u>section 448.101(6)</u>.

199.    **PLAINTIFF** engaged in a statutorily protected activity when he "disclosed or threatened to disclose" the potential violations of other employees' civil rights under federal and state statutes.

200.    **PLAINTIFF** received adverse employment action against him when he was terminated by **DEFENDANT** on or about <u>October 21, 2021</u>.

201.    **PLAINTIFF's** termination was causally related to his protected activities.

202.    A causal nexus is established by the timing of **PLAINTIFF'S** reports between <u>April 2021</u> and <u>October 2021</u>, as to his report of potential statutory violations on or about <u>October 5, 2021</u>, his notices of potential charges of discrimination being filed, and his termination on <u>October 21, 2021</u>.

203.    As a direct and proximate result of **DEFENDANT'S** deliberate and oppressive violations of the FPWA, **PLAINTIFF** was injured and incurred damages, including but not limited to back pay, lost future wages, and damages for mental anguish, and pain and suffering.

204.     As a further result of **DEFENDANT'S** unlawful conduct, **PLAINTIFF** incurred attorneys' fees and costs.

**WHEREFORE,** the **PLAINTIFF** respectfully requests that this Court enter judgment against the **DEFENDANT**, enter an injunction restraining continued violation of the Fair Labor Standards Act, and award **PLAINTIFF** damages for emotional distress, humiliation, loss of capacity to enjoy life, mental anguish, physical discomfort, reinstatement of **PLAINTIFF** to the same position held before the retaliatory personnel action, or to an equivalent position, reinstatement of full fringe benefits and seniority rights or their monetary equivalent, compensatory damages such as compensation for lost wages, benefits, and other remuneration, interest on litigation costs, and attorneys' fees, and any other compensatory damages allowable at law and such other relief as this Court deems appropriate.

## JURY DEMAND

**WHEREFORE, PLAINTIFF**, by and through their undersigned counsel, hereby respectfully requests a trial by jury on all issues so triable.

DATED: 01/17/2023.                              Respectfully submitted,

_/s/ Michael G. Mann_
**MICHAEL G. MANN, ESQ.**
Fla. Bar No. 1020248
**The Cochran Firm Orlando, LLC**
605 East Robinson Street, Suite 140
Orlando, Florida 32801
Tel: (407) 271-8590
Fax: (407) 271-8059
MMann@cochranfirmorlando.com
Service@cochranfirmorlando.com
*Attorney for Plaintiff.*

28

IN THE NINTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION

FREDERICK SAUNDERS,
*Plaintiff(s),*

v.                                                          CIVIL CASE NO.: <u>2023-CA-000364-O</u>

SIGNATURE FLIGHT SUPPORT LLC,
*Defendant(s).*

_____/

## WAIVER OF THE SERVICE OF SUMMONS

**TO:**   **MICHAEL G. MANN, ESQ.**
**Counsel for Plaintiff(s)**

    **I HEREBY CERTY** that I have received your NOTICE OF LAWSUIT AND REQUEST TO WAIVE FORMAL SERVICE OF A SUMMONS in this action along with a copy of the FILED COMPLAINT, two (2) copies of this WAIVER FORM, and, if received by mail, a prepaid means of returning one signed copy of the form to you. I, or the entity I and authorized to represent, agree to save the expense of servicing a summons and complaint in this case. I understand that I, or the entity I am authorized to represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 1.140 of the Florida Rules of Civil Procedure **within sixty (60) days from <u>January 13, 2023</u>,** the date when this REQUEST TO WAIVE SERVICE was sent (or ninety (90) days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I am authorized to represent.

DATE:   <u>1/17/2023</u>

<u>Signature Flight Support LLC</u>

*(Printed name of party waiving service of summons)*

<u>(Signature of the attorney or unrepresented party)</u>
Amanda A. Simpson

<u>(Printed name of attorney or unrepresented party)</u>
<u>390 N. Orange Ave., #1285, Orlando, FL 32801</u>
*(Address of attorney or unrepresented party)*
<u>amanda.simpson@jacksonlewis.com</u>
*(E-Mail Address of attorney or unrepresented party)*
<u>407-246-8408</u>
*(Telephone Number of attorney or unrepresented party)*

---

**Duty to Avoid Unnecessary Expense of Serving a Summons**

Acceptance does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant. Fla. R. Civ. P. 1.070(i)(1). Acceptance allows the defendant 20 days from the date on which the request is received to return the waiver, or, if the address of the defendant is outside of the United States, 30 days from the date on which it is received to return the waiver. Fla. R. Civ. P. 1.070(i)(2)(F). If a defendant fails to comply with a request for waiver within the time provided herein, the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure is shown. Fla. R. Civ. P. 1.070(i)(3). A defendant who, before being served with process, timely returns a waiver so requested is not required to respond to the complaint until 60 days after the date the defendant received the request for waiver of service. Fla. R. Civ. P. 1.070(i)(4). For purposes of computing any time prescribed or allowed by these rules, service of process shall be deemed effected 20 days before the time required to respond to the complaint. *Id.* When the plaintiff files a waiver of service with the court, the action shall proceed, except as provided in subdivision (4) above, as if a summons and complaint had been served at the time of filing the waiver, and no further proof of service shall be required. Fla. R. Civ. P. 1.070(i)(5).

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Fla. R. Civ. P. 1.140 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.