# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **FREDERICK SAUNDERS,** individually, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CASE NO.: 6:23-cv-0230-RBD-LHP<br>) |
| **SIGNATURE FLIGHT SUPPORT LLC, a Delaware limited company** | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## DEFENDANT'S MOTION TO COMPEL INDEPENDENT MENTAL EXAMINATION OF PLAINTIFF AND INCORPORATED MEMORANDUM OF LAW

Defendant, SIGNATURE FLIGHT SUPPORT LLC ("Defendant"), by and through its undersigned counsel, hereby moves this Court to require that Plaintiff FREDERICK SAUNDERS ("Plaintiff") submit to a Rule 35 independent mental examination ("IME"). In support, Defendant states as follows:

## PRELIMINARY STATEMENT

On February 9, 2023, Plaintiff filed this lawsuit against his former employer, Defendant, for: (1) race/color discrimination under the Florida Civil Rights Act ("FCRA"); (2) race/color discrimination under Title VII of the Civil Rights Act ("Title VII"); (3) retaliation under the FCRA; (4) retaliation under Title VII; (5)

intentional infliction of emotional distress ("IIED"); (6) negligent infliction of emotional distress ("NIED"); (7) retaliation under the Fair Labor Standards Act ("FLSA"); and (8) retaliation under the Florida Private Whistleblower Act ("FPWA"). Plaintiff sought various forms of damages from Defendant including emotional distress damages.

On June 22, 2023, the Court dismissed Plaintiff's IIED and NIED claims, but the fact that Plaintiff initially pled these claims shows that he seeks more than mere garden variety emotional distress damages. In fact, Plaintiff has confirmed that he still seeks damages for *continuing* emotional distress stemming from the termination of his employment in October 2021, and for which he claims he has Post Traumatic Stress Disorder ("PTSD"). While Defendant has obtained documents in discovery showing that Plaintiff's alleged emotional distress is, *at best*, "garden variety"—for which he sought sporadic treatment seven months after his termination, around the time he filed his Charge of Discrimination and this lawsuit—Plaintiff seeks *over $2,000,000.00* for "front pay/ compensatory damages" alone. Worse, he refuses to quantify the amount that he seeks for emotional distress. Plaintiff has also refused to stipulate that his alleged emotional distress is "garden variety."

As such, Defendant has retained an expert to opine on the emotional distress damages that Plaintiff seeks from Defendant to challenge Plaintiff's testimony and

representations. Defendant's expert needs Plaintiff to submit to an IME to elaborate on his opinion. Plaintiff has placed his mental health in controversy, and there is good cause for an IME. Accordingly, Defendant seeks an order from the Court directing Plaintiff to submit to a Rule 35 IME.

## FACTUAL AND PROCEDURAL HISTORY

1. On February 9, 2023, Plaintiff filed this lawsuit against his former employer, Defendant, for (1) race/color discrimination under the FCRA; (2) race/color discrimination under Title VII; (3) retaliation under the FCRA; (4) retaliation under Title VII; (5) IIED; (6) IIED; (7) retaliation under the FLSA; and (8) retaliation under the FPWA. [D.E. 1].

2. On June 22, 2023, the Court dismissed Plaintiff's IIED and NIED claims. [D.E. 33].

3. With respect to the remaining claims, Plaintiff seeks damages from Defendant as a result of its "deliberate," "unlawful" and/or "oppressive" conduct and claims to have suffered injuries and incurred damages for loss of quality of life, inconvenience, reputation, emotional distress and mental anguish and/or pain and suffering. [D.E. 1, Comp. at ¶¶ 113, 203]. He further alleges that as a proximate result of Defendant's alleged "wrongful acts," he has "suffered damages and will continue suffering damages" from "loss of self-esteem, emotional harm, psychological distress, humiliation, loss of enjoyment of life, embarrassment, and

inconvenience." [D.E. 1, Comp. at ¶¶ 134, 142, 151, 160].

4. In response to an interrogatory seeking a breakdown of his damages, Plaintiff indicated that Defendant owes him *over $2,000,000.00* for "front pay/compensatory damages." *See* Plaintiff's Verified Response to Interrogatory No. 13, attached as Exhibit A.

5. Defendant conferred with Plaintiff to provide further clarification as to what damages he seeks specific to alleged emotional distress. Plaintiff amended his Interrogatory answer but did not provide a breakdown. *See* Plaintiff's Unverified Amended Response to Interrogatory No. 13, attached as Exhibit B.

6. On November 30, 2023, Defendant deposed and questioned Plaintiff about his claim for damages. Plaintiff testified that his alleged emotional distress has been continuous since his termination in 2021 *and* that he has PTSD. Plaintiff also testified that he thought Defendant was going to hire someone to kill him instead of trying to resolve his claims, and that he wanted to harm four (4) of Defendant's employees. The specific relevant testimony is below:

> Q. Do you understand that you're seeking emotional distress damages in this case?
> A. I do understand that, yes.
> Q. Okay. Can you explain what emotional distress you claim to have suffered?
> A. Anxiety, depression, sleepless nights, emotional breakdowns consists *[sic]* of crying, physical pits in my stomach. Insomnia, that's part of sleepless nights, right? Fear, I guess at one point when this first happened I thought Signature would have someone kill me instead of paying the settlement out because it was cheaper to hire someone to pay [sic] me than to pay the settlement.

4

| Q. | Why would you ever think that? |
|---|---|
| A. | Because people do evil things. |
| Q. | Okay. |
| A. | And I don't put anything past anyone. If they can lie on a term letter, if they can via a statement position, I don't see anyone above hiring someone to do that to me. |
| Q. | Sir, do you understand what you're saying right now? You disagree with the basis for your termination, but you're taking a leap to say that you think a former employer would pay someone to kill you? […] |
| A. | That was my fear. That's how I felt. That's why I had sleepless nights. |
| Q. | No one ever threatened you at Signature, right? |
| A. | No. |
| Q. | Has anybody ever threatened to kill you before? |
| A. | No. |
| Q. | So when did your alleged emotional distress begin? |
| A. | Immediately upon termination. |
| Q. | Did it change at some point? |
| A. | Explain when you say, did it change. |
| Q. | Did any of the symptoms you just described change at some point? |
| A. | Well, obviously not the emotional distress two years later. |
| Q. | You've had the same emotional distress this whole time since you've been terminated? |
| A. | This entire time. |

*See* Pl. Depo. Transcript at 220:18-222:14, attached hereto as Exhibit C.

| Q. | Okay. Let's flip back to 382. And right above screening is administered there's a paragraph, do you see that it says, "Veteran reported on October 2021 who was terminated his job. He has felt frustrated because the company lied on the documentation in regard to the reason for termination. He had to hire a lawyer to fight the legal case. As a result of the situation, he has felt anxious and angry" |
|---|---|
| A. | I do see that paragraph. |
| Q. | And is that accurate what you explained to the psychologist? |
| A. | Partly, yes. |
| Q. | What do you mean partly? |
| A. | The frustration, the thoughts of wanting to harm others. |
| Q. | Which was noted before the period? |
| A. | But I know I said that every visit that I had at the VA. |
| Q. | And when you say "harm others," who were you referring to? |
| A. | Those that lied on me. |
| Q. | Who do you believe lied on you? |
| A. | Christy Pavel, Chris de Jhong *[sic],* Shaorn Miller *[sic],* Dan Cunico |

*See* Exhibit C at 234:1-24.

| | | |
|---|---|---|
| Q. | What do you mean PTSD? | |
| A. | Trauma. | |
| Q. | Are you saying you have PTSD? | |
| Q. | From what? | |
| A. | From being fired from Signature Aviation wrongfully. | |

*See* Exhibit C at 236:2-8.

7. Plaintiff sought treatment for his alleged emotional distress with the Department of Veteran Affairs (the "VA"). He first visited the VA for treatment a month after he filed his Charge of Discrimination, which was approximately 7 months after his termination. *See* Exhibit C at 225:14-227:21.

8. That said, when Defendant explored other issues that may have contributed to his alleged PTSD or claim of damages, Plaintiff recalled a night out when he felt violated after being groped at a bar:

| | |
|---|---|
| Q. | Have you ever been sexually abused yourself? |
| A. | When you – I was – I'm unsure if this counts […] One night at –some friends and I were – I want to say we were in Atlanta and we were barhopping and we ended up at a gay bar. And I'm unsure if any of my friends were gay at the time, not that it matters by any means. And walking through the club, someone grabbed my butt. So again, I'm unsure if that constitutes sexual abuse, but I recall that. |
| Q. | How did that make you feel? |
| A. | Violated. |
| Q. | When did this occur? |
| A. | I was in the military, so between, I'll say, January of '91 to March '97. |

*See* Exhibit C at 239:14-240:10.

9. Defendant should be able to defend against Plaintiff's claims that his alleged emotional distress and PTSD, which he refuses to stipulate is "garden variety" despite medical records, is worth upwards of $2,000,000.00 and can be

6

solely attributed to Defendant. Plaintiff has clearly put his mental health in controversy and should be required to submit to an IME.

10. Pursuant to Fed. R. Civ. P. 35, Defendant specifies the following:

**DATE, TIME AND LOCATION OF EXAMINATION**

| | |
|---|---|
| **DATE AND TIME** | February 20, 2024 at 1:00p.m. |
| **EXAMINATION TO BE MADE BY** | Jeffrey A. Danzinger, M.D.[1] |
| **PLACE** | 2300 Maitland Center Parkway, Suite 211, Maitland, FL 32751 |

Dr. Danzinger will conduct the examination requested in a professional manner in conformity with the issues in this case, based upon his professional training and experience, without unnecessary intrusion, but without limitation either, to evaluate Plaintiff's psychiatric condition/mental anguish, which he has placed in controversy. The examination will be limited to the psychiatric condition/mental anguish Plaintiff alleged in this lawsuit. The examination will include a review of medical records and a discussion of Plaintiff's medical history. If the expert feels it necessary to reach a diagnosis, diagnostic testing may be taken of Plaintiff.[2]

11. Defendant has conferred with counsel for Plaintiff in relation to the

---

[1] Dr. Danzinger's curriculum vitae is attached hereto as Exhibit B.
[2] For example, to the extent deemed necessary by Dr. Danzinger, he will submit Plaintiff to written tests consisting of: (i) The Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-2); (ii) The Millon Clinical Multiaxial Inventory-III (MCMI-III); (iii) The Trauma Symptom Inventory and/or the Davidson Trauma Scales; (iv) The Millon Behavioral Medical Diagnositc (MBMD); (v) The Malingering Probability Scales (MPS); (vi) The Validity Indicator Profile (VIP); and/or (vii) Any other psychometric instruments that Dr. Danzinger, consistent with the relevant Florida Administrative Code rules, deems appropriate to the referral question.

IME. On January 22, 2024, the parties discussed the IME and whether Plaintiff would stipulate that he is seeking "garden variety" emotional distress damages. Counsel for Plaintiff indicated that he would discuss with his client. The next day, counsel for Defendant followed up with counsel for Plaintiff and provided three dates for the IME. Counsel for Plaintiff responded that he was waiting to hear back from Plaintiff on dates. Counsel for Defendant followed up on January 24, 2024 and January 25, 2024. On January 30, 2024, counsel for Plaintiff responded that "we will object, unless you can explain to me how my client's mental health is a critical issue in this case. It is not enough to warrant an IME where a plaintiff merely alleges emotional distress damages." The undersigned has followed up with opposing counsel to confer further, by email and phone, but counsel for Plaintiff has not responded. Defendant's deadline to submit expert witnesses and reports is February 15, 2024, which has already been moved due to Plaintiff's delays in discovery. As a result, Defendant must file this Motion.

## **MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 35(a), "[t]he court where the action is pending may order a party whose mental or physical condition […] is in controversy to submit to a physical or mental examination[.]" Rule 35(a)(2) provides that the order may be made upon a showing of good cause. Accordingly, Rule 35 requires that the movant seeking the examination demonstrate that (1) the

medical condition is in controversy and (2) that there is good cause for the examination. *Schlunt v. Verizon Directories Sales-West*, 2006 U.S. Dist. LEXIS 38819, *4 (M.D. Fla. June 12, 2006); *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). As explained more fully below, this Court should Order Plaintiff to submit to a Rule 35 IME by the medical provider listed above, because his mental condition is clearly in controversy and because good cause exists.

I. **Plaintiff's Mental Condition is in Controversy**

When addressing the "in controversy" requirement in Rule 35, district courts typically rely on the following factors: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) the plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) the plaintiff's concession that his mental distress is in controversy within the meaning of Rule 35. *Id.* at *4-5 (citing *Bethel v. Dixie Homecrafters, Inc.,* 192 F.R.D. 320, 322 (N.D. Ga. 2000); *U.S. v. Bergin,* 732 F. Supp. 1235, 1236 (M.D. Fla. 2010)[3]. Absent one or more of these conditions, the plaintiff's mental state is not "in controversy" within the meaning of Rule 35. *Payne v. Seminole Elec. Coop., Inc.,* 2020 U.S. Dist. LEXIS 229009, *8 (M.D. Fla. Dec. 7, 2020) (citing

---

[3] Courts also consider these factors when determining whether there is "good cause," although courts have found good cause when questions arise regarding the substantial cause and extent of emotional problems and when there are allegations of ongoing emotional distress. *Id.* at *5; *Rosa v. City of Fort Myers*, 2006 U.S. Dist. LEXIS 118260, *4 (M.D. Fla. Dec. 28, 2006).

9

*Winstead v. Lafayette County Bd. of Cnty. Comm'rs*, 315 F.R.D. 612, 614-15 (N.D. Fla. 2016). That said, even where these five factors are not used, most cases allowing for a mental examination involve an allegation of an ongoing mental injury. *Id.,* at *8 (citing *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 554 (N.D. Ga. 2001). As explained below, factors two (2) and three (3) are clearly present here—*and* Plaintiff has testified that his mental distress is ongoing in nature. Plaintiff has put his mental health in controversy, so Defendant should be given the opportunity to challenged Plaintiff's claims and testimony with an IME.

First, Plaintiff <u>is not</u> claiming "garden variety"[4] emotional distress. Plaintiff seeks damages for alleged severe and *continuing* emotional distress stemming back to his termination in October 2021, as well as PTSD. *See* Exhibit C at 220:18-222:14, 236:2-8. This alone satisfies the "in controversy" part of the Rule 35 analysis. *See e.g., Laney v. Hosp. Bd. of Dirs. of Lee Cnty.*, 2010 U.S. Dist. LEXIS 68849, at *3 (M.D. Fla. June 22, 2010) (finding that Plaintiff placed her mental condition in controversy when she "herself testified at her deposition over one year after she was terminated that she continues to suffer mental anguish, depression, humiliation, and anxiety as a result of her termination and is seeking damages for

---

[4] "Garden variety" emotional distress is "ordinary or commonplace emotional distress" that is "simple or unusual." *Payne v. Seminole Elec. Coop., Inc*., 2020 U.S. Dist LEXIS 229009 (M.D. Fla. Dec. 7, 2020). "Garden variety" emotional distress rarely involves more than a temporary disruption of the plaintiff's personal life. I. "In contrast, emotional distress that is not garden variety may be complex, such as that resulting in a specific psychiatric disorder." Id. (quoting Chase v. Nova se. Univ., Inc., 2012 U.S. Dist. LEXIS 73887 (S.D. Fla. May 29, 2012) (internal quotation marks omitted).

these alleged emotional injuries."); *Gray v. State of Fla.*, 2007 U.S. Dist. LEXIS 55236, at *2 (M.D. Fla. July 31, 2007) (finding that the plaintiff's mental condition was in controversy when she alleged that her mental condition was ongoing and had been exacerbated by the defendant's conduct); *Henry v. City of Tallahassee*, 2000 U.S. Dist. LEXIS 20469, *2 (N.D. Fla. Dec. 6, 2000) ("A Rule 35(a) examination may be warranted if a claim of continuing emotional distress is made.")

Plaintiff has further testified that he has thought about hurting others and believes that Signature would hire someone to kill him. *See* Exhibit C at 220:18-221:20. This disconnected, unfounded, and frankly shocking, admission arguably alone shows the alleged wild nature of his alleged emotional distress. Plaintiff also seems to understand that he is not seeking "garden variety" emotional distress damages, as Defendant has unsuccessfully sought to stipulate with Plaintiff that he seeks just "garden variety" emotional distress damages. Plaintiff further refuses to quantify how much of the over $2,000,000.00 he seeks for "front pay/compensatory damages" is for emotional distress. *See* Exhibits A and B.

Finally, there are also questions of causation. Plaintiff is a veteran. *See* Exhibit C at 240:12-13. He testified that he experienced another source of trauma—a groping that, in his own words, "victimized" him—that could have attributed to his alleged emotional distress, and which warrants good cause for an

IME. *See* Exhibit C at 239:14-240:10. *See Schlunt*, 2006 U.S. Dist. LEXIS 38819 at *6-8 (granting the defendant's motion for IME, finding the plaintiff's divorce, health problems which caused her to miss work, and prior burglary and assault she endured from a private investigator posed "questions concerning the extent and causation of Plaintiff's emotion distress).

Plaintiff's mental health is undoubtedly in controversy, and he should be required to submit to an IME.

**II.   Good Cause Has Been Shown for the IME**

When the "in controversy" requirement is satisfied, the Court must determine whether there is "good cause" shown for the IME. *Payne*, 2020 U.S. Dist. LEXIS 299009, *9 (M.D. Fla. Dec. 7, 2020). Defendant has likewise shown good cause.

As stated above, despite significant follow-up, Plaintiff will not quantify the amount he seeks for emotional damages. *See* Exhibit A and B. He refuses to stipulate that he seeks just "garden variety" emotional distress. Plaintiff testified that (1) he has *ongoing* emotional distress and PTSD (*see* Exhibit C at 220:18-222:14, 236:2-8); (2) he has thought about hurting Defendant's employees, and has thought that Defendant would try to kill him (*see* Exhibit C at 220:18-221:20), and that (3) this is a contributing factor to his PTSD (*see* Exhibit C at 239:14-240:10). Defendant has tried to obtain information regarding the extent of Plaintiff's claim

for emotional distress damages by other means but has been stonewalled.

As such, Defendant should have a reasonable opportunity to challenge Plaintiff's testimony. "The testimony of an expert is a well-recognized way of [challenging Plaintiff's claims and testimony], and an examination of plaintiff by the expert is necessary for the expert to form a meaningful opinion." *Barnello v. Bayview Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 142446, *9 (M.D. Fla. Oct. 20, 2015) (quoting *Schlunt*, 2006 U.S. Dist. LEXIS 38819, at *3). This is the case even if the Plaintiff does not intend to offer expert testimony himself. *Laney*, 2010 U.S. Dist. LEXIS 68849, at *3; *Schlunt*, 2006 U.S. Dist. LEXIS 38819, at *8.

Good cause has been shown, and Plaintiff should be required to submit to an IME.

### III. Conclusion

Because Plaintiff has placed his mental health in controversy, an independent mental examination is relevant to the claims and defenses in this matter and is necessary for Defendant to properly prepare its defense. Plaintiff seeks money damages for his alleged emotional injuries. It is essential for Defendant to have a reasonable and meaningful opportunity to challenge the Plaintiff's claims. Defendant has shown good cause for an examination to determine the existence, extent, and causation of Plaintiff's asserted mental injuries. Thus, this Court should require Plaintiff to submit to an independent

mental examination.

WHEREFORE, Defendant respectfully requests this Honorable Court to enter an order requiring Plaintiff to (1) submit to an independent mental examination with Dr. Danzinger on February 20, 2024 at 1:00 p.m. at 2300 Maitland Center Parkway, Suite 211, Maitland, FL 32751; and (2) award any other relief this Court finds just and proper.

## **LOCAL RULE 3.01 CERTIFICATION**

As outlined above, Defendant has conferred with counsel for Plaintiff in relation to the IME.

DATED this 6th day of February, 2024.

    Respectfully submitted,

    **JACKSON LEWIS P.C.**
    390 North Orange Avenue,
    Suite 1285
    Orlando, Florida 32801
    Telephone: (407) 246-8440
    Facsimile: (407) 246-8441

By: */s/ Lin J. Wagner*
    Amanda A. Simpson
    Florida Bar No. 0072817
    amanda.simpson@jacksonlewis.com

    Lin J. Wagner
    Florida Bar No. 0093138
    lin.wagner@jacksonlewis.com

    *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 6th day of February, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Michael G. Mann, Esq., The Cochran Firm Orlando, LLC, 605 E. Robinson Street, Suite 140, Orlando, FL 32801.

      */s/ Lin J. Wagner*
      Lin J. Wagner

4854-6632-4899, v. 1