Exhibit C to Defendant's Motion to Compel IME
Saunders v. Signature Flight Support LLC
Case No.: 6:23-cv-0230-RBD-LHP

# EXHIBIT C

```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          ORLANDO DIVISION

                         CASE NO.:  6:23-CV-0230-RBD-LHP


FREDERICK SAUNDERS, individually,

     Plaintiff,

v.

SIGNATURE FLIGHT SUPPORT, LLC,
a Delaware limited company,

     Defendant.
_____/


DEPOSITION OF:        FREDERICK SAUNDERS

DATE:                 NOVEMBER 30, 2023

TIME:                 9:37 A.M. - 6:36 P.M.

TAKEN BY:             DEFENDANT

PLACE:                JACKSON LEWIS, P.C.
                      390 NORTH ORANGE AVENUE, SUITE 1285
                      ORLANDO, FLORIDA  32801

REPORTED BY:          DAYNA JONES, FPR, NOTARY PUBLIC,
                      STATE OF FLORIDA
```



```
 1      A.   This is all front pay.  The $2.2 million is
 2  all just front pay, what I would have received if I
 3  stayed on with Signature.
 4      Q.   Okay.  So how much are you allocating for
 5  compensatory?
 6      A.   I'm unsure how -- what's the maximum to do
 7  that.
 8           MR. MANN:  Can we take a break?
 9           MS. SIMPSON:  Yeah.
10           MR. MANN:  Can I talk to you?
11           MS. SIMPSON:  Yes.
12           MR. MANN:  I can do it in front of him or I
13      can do it between you -- it would influence his
14      testimony though.
15           MS. SIMPSON:  Okay.  Let's talk.
16           (Brief recess.)
17  BY MS. SIMPSON:
18      Q.   Do you understand that you're seeking
19  emotional distress damages in this case?
20      A.   I do understand that, yes.
21      Q.   Okay.  Can you explain what emotional distress
22  you claim to have suffered?
23      A.   Anxiety, depression, sleepless nights,
24  emotional breakdowns consists of crying, physical pits
25  in my stomach.  Insomnia, that's part of sleepless
```



1  nights, right?  Fear, I guess at one point when this
2  first happened I thought that -- I thought that
3  Signature would have someone kill me instead of paying
4  the settlement out because it was cheaper to hire
5  someone to pay me than to pay the settlement.
6       Q.   Why would you ever think that?
7       A.   Because people do evil things.
8       Q.   Okay.
9       A.   And I don't put anything past anyone.  If they
10 can lie on a term letter, if they can via a statement
11 position, I don't see anyone above hiring someone to do
12 that to me.
13      Q.   Sir, do you understand what you're saying
14 right now?  You disagree with the basis for your
15 termination, but you're taking a leap to say that you
16 think a former employer would pay someone to kill you?
17           MR. MANN:  Objection.  He's talking about your
18      feelings.
19           THE WITNESS:  That was my fear.  That's how I
20      felt.  That's why I had sleepless nights.
21 BY MS. SIMPSON:
22      Q.   Nobody ever threatened you at Signature,
23 right?
24      A.   No.
25      Q.   Has anybody ever threatened to kill you



1  before?
2      A.   No.
3      Q.   So when did your alleged emotional distress
4  begin?
5      A.   Immediately upon termination.
6      Q.   Did it change at some point?
7      A.   Explain when you say, did it change.
8      Q.   Did any of the symptoms you just described
9  change at some point?
10     A.   Well, obviously not the emotional stress two
11 years later.
12     Q.   You've had the same emotional distress this
13 whole time since you've been terminated?
14     A.   This entire time.
15     Q.   Even after you got a higher-paying job?
16     A.   That has nothing to do with my emotional
17 state, how much I got paid.  If it was the same, I would
18 still feel the way I feel.
19     Q.   Do you have emotional distress because of this
20 lawsuit?
21     A.   Absolutely, solely because of the lawsuit.
22 And so with that, not much has changed.  Not much has
23 changed.  I still wake up 3:00, 4:00 in the morning.  I
24 still cry.  I still am angry.  I'm still -- I don't
25 understand how companies do this to people and how



```
 1        A.   I believe so, yes.  I think I said litigation
 2   or -- I believe so.
 3             (Defendant's Exhibit 31 was marked for
 4        identification.)
 5   BY MS. SIMPSON:
 6        Q.   So, Mr. Saunders, I'm showing you what's been
 7   marked --
 8        A.   I'm sorry, Amanda --
 9        Q.   It's going to help, if I direct you to certain
10   pages.
11             MR. MANN:  Yeah, we talked about it.  It's
12        fine.
13   BY MS. SIMPSON:
14        Q.   So I'm showing you what's been marked as
15   Exhibit 31.  These are records that were produced to us
16   pursuant to a subpoena to the Department of Veterans
17   Affairs with respect to you.  We're going to be jumping
18   around a little bit because they're not in chronological
19   order, but you have the Bates labels down, so I think
20   we'll be able to move efficiently through this.
21             So let's flip to 030195, which is this many
22   pages in (indicating) and it says 9 of 13 at the bottom.
23             MR. MANN:  So 195?
24             MS. SIMPSON:  Yes.
25
```



```
 1              MR. MANN:  What page does it go to?
 2              MS. SIMPSON:  197.
 3   BY MS. SIMPSON:
 4        Q.   So, Mr. Saunders, do you see on 195 that this
 5   is an entry date of May 13, 2022?
 6        A.   Yes.
 7        Q.   So this is about seven months after your
 8   separation, right?
 9        A.   Yes.
10        Q.   Okay.  And so it appears that this is the
11   first time that you're referred to primary care, mental
12   health screening, because you had indicated you wanted
13   to talk to someone.  Do you recall that?
14        A.   I do recall that.
15        Q.   Okay.  And so this is the month after you
16   filed the charge of discrimination, right?
17        A.   Seven or eight months roughly, yes.
18        Q.   The charge of discrimination with the EEOC?
19        A.   I'm sorry?
20        Q.   This is a month after you filed a charge of
21   discrimination with the EEOC, right?
22        A.   Oh, I'm unsure of the timeline.
23              (Defendant's Exhibit 32 was marked for
24        identification.)
25
```



```
 1  BY MS. SIMPSON:
 2       Q.   So I'm showing you what's been marked as
 3  Exhibit 32.  Do you recognize this?
 4       A.   I believe so.
 5       Q.   Is this your charge of discrimination?
 6       A.   I believe so.
 7       Q.   Do you see the bottom left-hand corner that
 8  you digitally signed it?
 9       A.   I do see that.
10       Q.   And do you see that that signature is dated
11  April 21, 2022?
12       A.   Yes.
13       Q.   Okay.  So let's flip back to the VA records
14  now and we're looking at the entry date of May 13, 2022.
15            So this is the next month after your charge of
16  discrimination, right?
17       A.   Based on the dates, yes.
18       Q.   Okay.  And so did you seek mental health
19  treatment prior to requesting to talk to someone on
20  May 13, 2022?
21       A.   I do not believe so.
22       Q.   I told you we're going to flip around.  Bear
23  with me.  We're going to go to 030424.
24       A.   030324?
25       Q.   030424.  And it also says, page 97 of 178 on
```



1     Q.   Okay.  Let's flip back to 382.  And right
2  above screening is administered there's a paragraph, do
3  you see that it says, "Veteran reported on October 2021
4  who was terminated from his job.  He has felt frustrated
5  because the company lied on the documentation in regard
6  to the reason for termination.  He had to hire a lawyer
7  to fight the legal case.  As a result of the situation,
8  he has felt anxious and angry."
9     A.   I do see that paragraph.
10    Q.   And is that accurate what you explained to the
11 psychologist?
12    A.   Partly, yes.
13    Q.   What do you mean partly?
14    A.   The frustration, the thoughts of wanting to
15 harm others.
16    Q.   Which was noted before that period?
17    A.   But I know I said every visit that I had at
18 the VA.
19    Q.   And when you say "harm others," who were you
20 referring to?
21    A.   Those that lied on me.
22    Q.   Who do you believe lied on you?
23    A.   Christy Pavel, Chris de Jhong, Sharon Miller,
24 Dan Cunico.
25    Q.   Did you ever act on those feelings?



1  those triggers happen, these go from a zero to a 21.
2       Q.   What do you mean PTSD?
3       A.   Trauma.
4       Q.   Are you saying you have PTSD?
5       A.   Yes.
6       Q.   From what?
7       A.   From being fired from Signature Aviation
8  wrongfully.
9       Q.   Were you given a PTSD diagnosis?
10      A.   I'm unsure if I was or not.  I think I saw it
11 stated here somewhere PTSD.  I literally saw it here in
12 one of these pages.
13      Q.   Okay.  So are you contending that these scores
14 are not accurate?
15      A.   They're accurate, but again, triggers will
16 cause these ranges to spike.
17      Q.   Okay.
18      A.   So we should not downplay the reduction.
19      Q.   Do you have any medical training?
20      A.   No.
21      Q.   Okay. Let's flip to the next page.  At the
22 top, under review prior action plan, second paragraph,
23 do you see that it says, "Veteran was seen for a
24 followup today and he reported feeling much better since
25 last visit"?



```
 1      Q.   Does GAF use compa-ratio?
 2      A.   I have no idea.
 3      Q.   Any other facts to support your claim that you
 4   were underpaid at Signature?
 5      A.   Not at this time.
 6      Q.   Okay.  So going back to the PTSD.  I
 7   understand that you served.  During your time of
 8   serving, did you ever witness someone getting killed?
 9      A.   No.
10      Q.   Have you ever had a near death experience?
11      A.   No.
12      Q.   Ever witness any sexual abuse?
13      A.   No.
14      Q.   Ever been sexually abused yourself?
15      A.   When you -- I was -- I'm unsure if this
16   counts.
17           MR. MANN:  You want to take a break?
18           MS. SIMPSON:  The question is pending.
19           MR. MANN:  I don't know if it's relevant.
20           MS. SIMPSON:  It's relevant.
21           MR. MANN:  Okay.
22           MS. SIMPSON:  He's seeking emotional distress
23      damages.
24           MR. MANN: Go ahead.
25           THE WITNESS:  One night at -- some friends and
```



1      I were -- I want to say we were in Atlanta and we
2      were barhopping and we ended up at a gay bar.  And
3      I'm unsure if any of my friends were gay at the
4      time, not that it matters by any means.  And
5      walking through that club, someone grabbed my butt.
6      So again, I'm unsure if that constitutes sexual
7      abuse, but I recall that.
8  BY MS. SIMPSON:
9      Q.   How did that make you feel?
10     A.   Violated.
11     Q.   When did this occur?
12     A.   I was in the military, so between, I'll say,
13 January of '91 to March '97.
14     Q.   Is that the only instance that you were
15 thinking of?
16     A.   That's the only thing I can recall.
17     Q.   Let's go back to the exhibit.  We're on
18 030379, fourth paragraph down.  Do you see that it ends
19 by saying, "due to improvement of symptoms, veteran
20 declined additional PCMHI services at this time."
21     A.   I do see that sentence.
22     Q.   Were you ever treated for any additional
23 mental health counseling at the VA?
24     A.   I don't believe so.
25     Q.   Were you ever treated for any additional



800.211.DEPO (3376)
EsquireSolutions.com

1                    CERTIFICATE OF REPORTER

2

3   STATE OF FLORIDA

    COUNTY OF ORANGE
4

5        I, DAYNA JONES, FPR, Shorthand Reporter and Notary

6   Public, State of Florida, HEREBY CERTIFY that I was

7   authorized to and did stenographically report the

8   deposition of FREDERICK SAUNDERS; that a review of the

9   transcript was requested; and the foregoing transcript,

10  pages 1 through 273, is a true and accurate record of my

11  stenographic notes.

12       I FURTHER CERTIFY that I am not a relative,

13  employee, attorney or counsel of any of the parties, nor

14  am I a relative or employee of any of the parties'

15  attorneys or counsel connected with the action, nor am I

16  financially interested in the action.

17       Dated this 22nd day of December, 2023.

18

19

20

21

22

23        
          _____
24        DAYNA JONES, FPR, Notary Public
          State of Florida at Large
25