Exhibit to Defendant's Supplemental Brief Supporting Notice of Plaintiff's Non-Compliance
Frederick Saunders v. Signature Flight Support LLC
Case No. 6:23-cv-0230-RBD-LHP

# EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
 2                         ORLANDO DIVISION

 3

 4   FREDERICK SAUNDERS,

 5          Plaintiff,

 6   vs.                          Case No. 6:23-cv-0230-RBD-LHP

 7

     SIGNATURE FLIGHT
 8   SUPPORT, LLC, a Delaware
     limited company,
 9
            Defendant.
10   _____/

11

12

13   DEPOSITION OF:      FREDERICK SAUNDERS - VOLUME 2

14   DATE:               WEDNESDAY, FEBRUARY 21, 2024

15   TIME:               9:40 A.M. - 12:00 P.M.

16   PLACE:              390 NORTH ORANGE AVE, SUITE 1285
                         ORLANDO, FLORIDA 32801
17
     STENOGRAPHICALLY
18   REPORTED BY:        ANEESHA WILLIAMS, CSR, NOTARY PUBLIC

19

20

21

22

23

24

25
```



1  that was on the recording produced between you and Jan.
2          Do you see on the first page that it's
3  July 21st, 2022?
4      A.   Yes.
5      Q.   Okay.  And you understand that the blue text
6  messages are yours and the gray on the left are Jan's?
7      A.   Yes.
8      Q.   And at the bottom of that first set of text
9  messages, do you say that you say, "Absolutely.  Starting
10 the recording now"?
11     A.   Yes.
12     Q.   What were you recording?
13     A.   The EEOC mediation.
14     Q.   Okay.  Do you still have a copy of that
15 recording?
16     A.   On my phone, yes.
17     Q.   Have you provided it to your attorney?
18     A.   No.  I tried to.
19     Q.   What do you mean you "tried to"?
20     A.   I tried to send him the file.
21     Q.   Is that the video file that you recently tried
22 to send last week, and it was too large and didn't go
23 through?
24     A.   Correct.
25     Q.   Got it.



1  attempt to to anyone besides Ms. Chalk?
2       A.   No.
3       Q.   Did you play the EEOC video for anyone?
4       A.   Yes.
5       Q.   Who did you play it for?
6       A.   Jan Chalk.
7       Q.   How did you play it for her?
8       A.   Through my phone.
9       Q.   And you played it for her because it wasn't
10 able to be sent?
11      A.   Yes.
12      Q.   Got it.
13      MS. SIMPSON:  Tab 33.
14           (Deposition Exhibit No. 3 was
15            marked for identification.)
16 BY MS. SIMPSON:
17      Q.   I'm showing you what's been marked as
18 Exhibit No. 3.
19           Do you recognize this, Mr. Saunders?
20      A.   Yes.
21      Q.   So is this an e-mail from you dated July 25th,
22 2022 with the subject line, "Takeaways from the
23 Mediation"?
24      A.   Yes.
25      Q.   Is that also referring to the EEOC mediation?



1   A.   Correct.
2   Q.   I appreciate that.  Thank you.
3        Did you look for text messages regarding the
4   EEOC mediation?
5   A.   No, I don't think so.
6   Q.   Okay.  Besides Jan Chalk, do you recall if you
7   texted with anyone about the EEOC mediation?
8   A.   I do not recall.
9   Q.   Did you have any oral conversations with Tracy
10  about the EEOC mediation?
11  A.   I do not recall.
12  Q.   Do you recall having any oral conversations
13  with Dustin about the EEOC mediation?
14  A.   I do not recall.
15  Q.   Okay.  And so you send this e-mail.
16       Do you get any response?
17  A.   I don't recall.
18  Q.   You don't recall if you got a response from any
19  one of the 11 people that you sent that e-mail to?
20  A.   I do not recall.
21  Q.   Did you look in your e-mail to see if anyone
22  responded?
23  A.   I do not recall.
24  Q.   Would you look in your e-mail to see if anyone
25  responded?



1       A.   I do not recall.
2       Q.   That's not responsive, sir.  I know you're
3    getting in the habit of saying "I don't recall," but --
4       A.   I don't recall.  The truth.
5       Q.   My question is would you look?
6       A.   Why would I look?  I have no reason to look.
7       Q.   Because I'm asking you to, and you have an
8    obligation to produce all relevant documents in
9    discovery.
10      A.   Okay.  I don't recall.
11      Q.   Let's take a pause for a second.  I understand
12   that you do not recall if you looked for responses to
13   your e-mail sending the key takeaways from the EEOC
14   mediation.
15           I'm asking you if you would look to see if you
16   got any responses from any of the 11 people to that
17   e-mail.
18      A.   No.
19      Q.   No, you won't?
20      A.   There's no need to look for -- it's more
21   therapeutic for me -- as my therapist said, write my
22   thoughts down on paper and to share it so I don't keep it
23   bottled up.
24      Q.   I want to be clear.  You're refusing to go and
25   look for responses to this e-mail.



1      A.   Why would I even need to go and look, I guess?
2  I don't understand the question.  There's no need --
3  e-mails come to when people respond.
4      MR. MANN:  Frederick?
5      THE WITNESS:  Yes.
6      MR. MANN:  Frederick, we'll take a double check and
7  look for it.
8      THE WITNESS:  What am I looking for, Mike?  What am
9  I looking for?  Responses?  Replies?  If that's the case,
10 why would I look for it?  Because they would be in my
11 e-mail box.  I wouldn't have to look for it.  That's why
12 I'm confused about the question.  There's no need to look
13 for it.  If there's a reply to the e-mail that I sent
14 almost two years ago, I would see the reply.
15     MS. SIMPSON:  Mike, for purposes of the record, will
16 you agree to work with your client on how to search his
17 inbox and deleted items for possible responses from the
18 11 individuals this e-mail was sent to?
19     MR. MANN:  Yeah, sure.
20         And I think what he's trying to say is that he
21 looked, and he doesn't think he needs to look again, but
22 we'll definitely -- I'll work with him.
23 BY MS. SIMPSON:
24     Q.   Is that what you're saying, Mr. Saunders?
25     A.   No, I'm not.  No, I'm not.  I didn't look.  I



1  don't have -- there's no need to look.  E-mails come in.
2  When someone replies to an e-mail, and I don't have to
3  look.  There's no looking.
4       MR. MANN:  I think we can move on.  You've got
5  our -- you've got my answer to your question and, you
6  know, you've got his.  So we can move on.
7       MS. SIMPSON:  And I'm sorry.  Just because there was
8  a lot of back and forth, is your answer, Mike, yes that
9  you will work with your client to look for responses?
10      MR. MANN:  Yes.
11      MS. SIMPSON:  Thank you.
12      MR. MANN:  Yes.
13      MS. SIMPSON:  Tab No. 4.
14           Mike, the internal Bates label is FS 020022.
15           (Deposition Exhibit No. 4 was
16            marked for identification.)
17  BY MS. SIMPSON:
18      Q.   So Mr. Saunders, I'm showing you what's been
19  marked as Exhibit No. 4, which is a text message exchange
20  between you and David Jordan.
21           Do you recognize this?
22      A.   Yes.
23      Q.   And the first page, do you see that the e-mail
24  chain on the bottom is dated July 26th, 2022?
25      A.   Text chain, yes.



1    Q.   Did you prepare the key takeaways in
2    preparation for the mediation?
3         A.   I don't think so.
4         Q.   Did you prepare those takeaways in preparation
5    for trial?
6         A.   I'm not even sure there's a trial to be had
7    yet.  I don't know.  I mean --
8         Q.   Let me rephrase.
9              So did you prepare those key takeaways in
10   preparation for your ongoing litigation?
11        A.   I prepared the key takeaways document to
12   document the lies that Signature continues to tell, and
13   that was the first page.  The second page was just
14   reiterations of the lies from the termination letter.
15        Q.   And those were your mental impressions and
16   notes of your personal --
17        MS. SIMPSON:  Objection.
18   BY MR. MANN:
19        Q.   Your personal and mental impressions notes?
20        A.   Yes.  And to be clear, I never went back and
21   listened to the recording.  Those key takeaways were from
22   my memory of the mediation.
23        MR. MANN:  Nothing further.  Thank you, Fredrick.
24        MS. SIMPSON:  I have a couple follow-ups.
25



```
 1                    REDIRECT EXAMINATION
 2   BY MS. SIMPSON:
 3        Q.   You just indicated that you never listened to
 4   the recording of the EEOC mediation?
 5        A.   Correct.
 6        Q.   But I thought you testified previously that you
 7   played that recording for Ms. Chalk?
 8        A.   Yes, but I didn't listen to it.  I wasn't there
 9   when it played.
10        Q.   What were the circumstances under which you
11   played the recording for her, but you didn't listen?
12        A.   Because my condo is two stories.  I played it
13   for her, and I went upstairs.
14        Q.   Oh, you did this in person?
15        A.   No, no.  I'm in Orlando.  She's in Mobile.
16        Q.   So you played the recording on your phone for
17   her, but you walked upstairs?
18        A.   Yeah, because she was on the phone.  She called
19   me; phone to phone.
20        Q.   Oh, because it was a long recording?
21        A.   Exactly.
22        Q.   You prepared the key takeaways following the
23   mediation because they included my opening statements,
24   right?
25        A.   Yes.
```

