Exhibit to Defendant's Reply to Plaintiff's Response
In Opposition to Defendant's Motions for Sanctions
Frederick Saunders v. Signature Flight Support LLC
Case No. 6:23-cv-0230-RBD-LHP

# *Exhibit B*

```
1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
2                            ORLANDO DIVISION

3

4    FREDERICK SAUNDERS,

5             Plaintiff,

6    vs.                           Case No. 6:23-cv-0230-RBD-LHP

7

     SIGNATURE FLIGHT
8    SUPPORT, LLC, a Delaware
     limited company,
9
              Defendant.
10   _____/

11

12

13   DEPOSITION OF:       FREDERICK SAUNDERS - VOLUME 2

14   DATE:                WEDNESDAY, FEBRUARY 21, 2024

15   TIME:                9:40 A.M. - 12:00 P.M.

16   PLACE:               390 NORTH ORANGE AVE, SUITE 1285
                          ORLANDO, FLORIDA 32801
17
     STENOGRAPHICALLY
18   REPORTED BY:         ANEESHA WILLIAMS, CSR, NOTARY PUBLIC

19

20

21

22

23

24

25
```



1  that was on the recording produced between you and Jan.
2          Do you see on the first page that it's
3  July 21st, 2022?
4      A.   Yes.
5      Q.   Okay.  And you understand that the blue text
6  messages are yours and the gray on the left are Jan's?
7      A.   Yes.
8      Q.   And at the bottom of that first set of text
9  messages, do you say that you say, "Absolutely.  Starting
10 the recording now"?
11     A.   Yes.
12     Q.   What were you recording?
13     A.   The EEOC mediation.
14     Q.   Okay.  Do you still have a copy of that
15 recording?
16     A.   On my phone, yes.
17     Q.   Have you provided it to your attorney?
18     A.   No.  I tried to.
19     Q.   What do you mean you "tried to"?
20     A.   I tried to send him the file.
21     Q.   Is that the video file that you recently tried
22 to send last week, and it was too large and didn't go
23 through?
24     A.   Correct.
25     Q.   Got it.



1      MS. SIMPSON:  Sure.  We can do that for purposes of
2   the record to make it clear.  And then we'll send you
3   copies after the deposition.
4          So Mike, Exhibit No. 1 is FS020087.
5      MR. MANN:  Through 90?
6      MS. SIMPSON:  Yes, 020090.  And then Exhibit No. 2
7   is 91.
8      MR. MANN:  Okay.
9          (Deposition Exhibit No. 2 was
10            marked for identification.)
11  BY MS. SIMPSON:
12     Q.   So Mr. Saunders, I'm showing you what's been
13  marked as Exhibit No. 2.
14          Do you see that this is a text from you to
15  Jan on July 22nd, 2022?
16     A.   Yes.
17     Q.   And do you see that it indicates at the top
18  right, "Good morning.  I sent the video to your personal
19  e-mail"?
20     A.   Yes.
21     Q.   Is this referring to the EEOC mediation video?
22     A.   Yes, but the e-mail did not go through.
23     Q.   How do you know the e-mail didn't go through?
24     A.   Because she told me it did not go through.
25     Q.   Okay.  Did you send the EEOC mediation video or



1  attempt to to anyone besides Ms. Chalk?
2       A.   No.
3       Q.   Did you play the EEOC video for anyone?
4       A.   Yes.
5       Q.   Who did you play it for?
6       A.   Jan Chalk.
7       Q.   How did you play it for her?
8       A.   Through my phone.
9       Q.   And you played it for her because it wasn't
10 able to be sent?
11      A.   Yes.
12      Q.   Got it.
13      MS. SIMPSON:  Tab 33.
14           (Deposition Exhibit No. 3 was
15            marked for identification.)
16 BY MS. SIMPSON:
17      Q.   I'm showing you what's been marked as
18 Exhibit No. 3.
19           Do you recognize this, Mr. Saunders?
20      A.   Yes.
21      Q.   So is this an e-mail from you dated July 25th,
22 2022 with the subject line, "Takeaways from the
23 Mediation"?
24      A.   Yes.
25      Q.   Is that also referring to the EEOC mediation?



1    A.   Yes.
2    Q.   And then what are the second and third pages
3  titled "Key Takeaways from Mediation"?
4    A.   The first page are three lies from Signature,
5  and the fourth one is the misunderstanding.
6    Q.   And it looks like it was notes from my opening
7  statement at mediation?
8    A.   I believe so.
9    Q.   And your rebuttal to that?
10   A.   Correct.
11   Q.   And the second page is with respect to the
12 termination letter that we discussed as part of
13 mediation?
14   A.   Additional lies from Signature, yes.
15   Q.   Flipping to the first page, I just want to go
16 through and understand who these individuals are.  Sorry.
17 I think you said Alice earlier today.
18        Is that your sister?
19   A.   Sister, yes.
20   Q.   Okay.  Who is Abdul?
21   A.   One of my best -- I'd say closest friends.
22   Q.   I know who Jan Chalk is.
23        Who is Deidra Adams?
24   A.   My HR consultant for this case.
25   Q.   What do you mean "HR consultant"?



1     Q.   Did you prepare the key takeaways in
2  preparation for the mediation?
3     A.   I don't think so.
4     Q.   Did you prepare those takeaways in preparation
5  for trial?
6     A.   I'm not even sure there's a trial to be had
7  yet.  I don't know.  I mean --
8     Q.   Let me rephrase.
9          So did you prepare those key takeaways in
10 preparation for your ongoing litigation?
11    A.   I prepared the key takeaways document to
12 document the lies that Signature continues to tell, and
13 that was the first page.  The second page was just
14 reiterations of the lies from the termination letter.
15    Q.   And those were your mental impressions and
16 notes of your personal --
17         MS. SIMPSON:  Objection.
18 BY MR. MANN:
19    Q.   Your personal and mental impressions notes?
20    A.   Yes.  And to be clear, I never went back and
21 listened to the recording.  Those key takeaways were from
22 my memory of the mediation.
23         MR. MANN:  Nothing further.  Thank you, Fredrick.
24         MS. SIMPSON:  I have a couple follow-ups.
25



1                    REDIRECT EXAMINATION
2    BY MS. SIMPSON:
3         Q.   You just indicated that you never listened to
4    the recording of the EEOC mediation?
5         A.   Correct.
6         Q.   But I thought you testified previously that you
7    played that recording for Ms. Chalk?
8         A.   Yes, but I didn't listen to it.  I wasn't there
9    when it played.
10        Q.   What were the circumstances under which you
11   played the recording for her, but you didn't listen?
12        A.   Because my condo is two stories.  I played it
13   for her, and I went upstairs.
14        Q.   Oh, you did this in person?
15        A.   No, no.  I'm in Orlando.  She's in Mobile.
16        Q.   So you played the recording on your phone for
17   her, but you walked upstairs?
18        A.   Yeah, because she was on the phone.  She called
19   me; phone to phone.
20        Q.   Oh, because it was a long recording?
21        A.   Exactly.
22        Q.   You prepared the key takeaways following the
23   mediation because they included my opening statements,
24   right?
25        A.   Yes.

