**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **FREDERICK SAUNDERS,**<br><br>Plaintiff,<br><br>v.<br><br>**SIGNATURE FLIGHT SUPPORT, LLC,**<br><br>Defendant. | Case No.:<br>6:23-cv-230-RBD-LHP<br><br>Orlando, Florida<br>March 13, 2024<br>10:00 a.m. |

**REDACTED TRANSCRIPT OF MOTION HEARING**
**SEALED PORTIONS REDACTED**
**BEFORE THE HONORABLE LESLIE HOFFMAN PRICE**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

For the Plaintiff: Michael G. Mann
The Mann Firm, LLC
707 E. Cervantes Street
Suite B
Pensacola, FL 32501

For the Defendant: Amanda A. Simpson
Lin J. Wagner
Jackson Lewis, PC
390 N. Orange Avenue
Suite 1285
Orlando, FL 32801

Proceedings recorded by electronic recording.
Transcript produced by computer-aided transcription.

Transcribed by:
Suzanne L. Trimble, RPR, WACCR, CRR
U.S. Official Court Reporter
(407) 900-8775 | trimblecourtreporter@outlook.com
401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

T A B L E  O F  C O N T E N T S


| PROCEEDINGS | PAGE |
|---|---|
| March 13, 2024 | |
| OTHER | |
| COLLOQUY RE: DATES OF PLAINTIFF ATTORNEY REPRESENTATION | 4 |
| COLLOQUY RE: PLAINTIFF-FILED DOCUMENTS | 7 |
| COLLOQUY RE: MOTION FOR SANCTIONS RE: FAILURE TO ATTEND MEDIATION (DOC. 61) | 8 |
| JUDGE'S REPORT AND RECOMMENDATION RE: FAILURE TO ATTEND MEDIATION | 11 |
| COLLOQUY RE: RULE 37(b) MOTION FOR SANCTIONS RE: VIDEO TEXT MESSAGES | 12 |
| COLLOQUY RE: MOTION FOR SANCTIONS RE: RECORDING EEOC MEDIATION (DOC. 55) | 23 |
| JUDGE'S RULING RE: PLAINTIFF PRODUCING MEDIATION RECORDING | 29 |
| JUDGE'S REPORT AND RECOMMENDATION | 31 |
| JUDGE'S REFERRAL TO GRIEVANCE COMMITTEE | 32 |
| COLLOQUY RE: DEFENSE REQUEST RE: 1927 SANCTIONS | 33 |
| COLLOQUY RE: MOTION TO WITHDRAW | 35 |
| JUDGE'S RULING RE: MOTION TO WITHDRAW | 46 |

P R O C E E D I N G S

**THE COURTROOM DEPUTY:** Case No. 6:23-cv-230, Frederick Saunders v. Signature Flight Support, LLC.

Counsel, please state your appearances for the record.

**MR. MANN:** Michael Mann for the plaintiff. With me is my plaintiff, Frederick Saunders.

**THE COURT:** Good morning.

Good morning, Mr. Saunders.

**MS. SIMPSON:** Good morning, Your Honor. Amanda Simpson from Jackson Lewis on behalf of defendant. Along with me is my colleague, Ms. Lin Wagner, and in-house counsel for our client, Matthew Klein. Also, just so Your Honor knows who is in the back is a paralegal who is working on my team for my office.

**THE COURT:** Good morning.

Good morning to you.

Good morning, Ms. Wagner.

And good morning, Mr. Klein. Good to see you again. I'm sorry I had to drag you away from work for this. Hopefully, by the time we finish today, this will be the last time I have to bring you in for one of these types of hearings, but I appreciate you being here.

So what we're for here for today, counsel, is there are three pending sanctions motions, all three of which have now been responded to, and I'm going to give both sides an

opportunity to say a few things, but I had a couple of prefatory issues I wanted to resolve.

And, Mr. Mann, the first is I want to start with you. On your filings, I'm a little bit confused. In Document 72, which is a response to the motion for sanctions for not attending for mediation, you state that The Mann Firm was officially contracted with plaintiff on February 26, 2024.

In your affidavit signed under penalty of perjury, Document No. 74, you say that Mr. Saunders elected to remain with you -- to remain with you on February 21st and executed a new attorney-client retainer agreement on February 24th, so two other dates.

And then later in that same affidavit, in paragraph 68, you say, "To date, plaintiff has not executed a contract with the Mann firm, LLC, nor with Mann himself." That date of the affidavit is February 29th.

And then in your motion to withdraw, Document No. 78, you say that plaintiff reengaged you on February 28th.

What date is the actual date that whatever sort of arrangement occurred where Mr. Saunders officially became your client again?

**MR. MANN:** Your Honor, it was the 24th.

**THE COURT:** Okay. So all these other dates that are under penalty of perjury, those are incorrect?

**MR. MANN:** Yes. I'll need to go back and make a -- I

guess fix that.

**THE COURT:** You're not going to be fixing anything anymore. All of the filings on this are closed.

So February 24th is the official date. So, then, my next question to you is, what is the significance of this? Were you not representing Mr. Saunders up until February 24?

**MR. MANN:** According to the bar rules, it stays with the firm until he signs a new contract, and he didn't make an election until the 21st, which was the night before our last hearing. So we contracted him at that time.

**THE COURT:** So what were you doing between February 1st and February 21st?

**MR. MANN:** Well, I wasn't his attorney, but I was stepping in until we had it figured out. He was in -- he was notified of me leaving on the 1st --

**THE COURT:** Mm-hm.

**MR. MANN:** -- by email and by letter, and he didn't make an election until the 24th -- I mean, the 21st.

**THE COURT:** Okay. Well, I know -- now, again, we're confusing. So he made an election on the 21st. He signed the engagement letter on the 24th, correct?

**MR. MANN:** Correct.

**THE COURT:** Okay. So then my question then is on -- you've engaged in 3.01(g) conferrals with defense counsel; you appeared, at least over the telephone, at a mediation on

February 14th purporting to represent Mr. Saunders; you conferred and agreed on a renewed motion to extend discovery and summary judgment deadlines on February 15th; and you filed a response in opposition to the Rule 37(b) motion for sanctions on February 20th. Why shouldn't I consider that to be the unauthorized practice of law, if you're standing here now telling me you were not representing Mr. Saunders?

**MR. MANN:** Well, I was attorney of record and my previous firm didn't make an appearance on the record. So I waited until they made a substitution, and that was essentially -- I stayed on so that he had counsel and then once we had --

**THE COURT:** Okay. What's the point of telling me all these dates, then, if you're now telling me that you stayed on and you've been representing him? What was the point of telling me all of this and just confusing the Court and, I'm sure, confusing defense counsel?

**MR. MANN:** Just to make sure that the facts were in line there.

**THE COURT:** The facts with 15 different dates that you've given me in four different filings.

**MR. MANN:** Well, yes.

**THE COURT:** Okay. Mr. Saunders, I'm going to ask you a question, sir. You're not under oath, and I want you to only answer the question that I'm asking because I do not want to

invade attorney-client privilege.

Have you always considered Mr. Mann to be your attorney throughout the entirety of this litigation?

**MR. SAUNDERS:** Your Honor, yes, ma'am.

**THE COURT:** All right. Thank you very much, sir. I appreciate that.

Okay. That clarifies that issue.

The next issue, Mr. Mann, is I'm not sure if you saw this, but at about 3:45 p.m. yesterday your client filed on his own behalf an affidavit. Are you aware of that, sir?

**MR. MANN:** Yes, Your Honor.

**THE COURT:** Okay. So you also understand in our local rules, because Mr. Saunders has been represented by you, he can't file things on his own. Do you understand, sir?

**MR. MANN:** Yes, Your Honor.

**THE COURT:** All right. So I'm going to be striking that affidavit. I cannot consider it.

Mr. Saunders, everything has to go through your attorney. That's how our rules work. So you can't file things on your own behalf. It has to go through your attorney.

And so now, Mr. Saunders, I don't want you to say anything else, and I'll tell you why. With all due respect, you've said a lot in depositions and other things, and that affidavit, I want to be very clear, does you no favors. I'm doing you a favor by striking it. Trust me on that.

But going forward, unless and until Mr. Mann is no longer your attorney, you have to do everything through him.

And Mr. Mann, I'm trusting you're going to explain that to your client a little bit more when this hearing is over.

**MR. MANN:** Yes, Your Honor.

**THE COURT:** All right. So I'm going to be striking that affidavit.

Ms. Simpson, those were the two -- and, again, you're in that first chair, so I'm going to assume you're doing most of the talking. On those two prefatory issues, is there anything you would like to add on behalf of the defendant?

**MS. SIMPSON:** No. I think Your Honor covered everything as to those two issues.

**THE COURT:** Okay. Thank you very much.

So now let's turn to the actual motions. So I'm going to start off small and I'll end big, and what I am going to do at the very end is I'll talk about the motion to withdraw because at that point I have a feeling I'm going to have to make this into an in camera proceeding, and that way you're not coming in and out, defense counsel and Mr. Klein. I will ask, at that point, you just wait outside for a few minutes. I don't think it will be a very long section.

So the next motion I wanted to address is the motion for sanctions for not appearing at the mediation in this case

on February 14th.

Ms. Simpson, your motion is pretty cut and dry, pretty clear to me. Is there anything else you would like to add before I turn to Mr. Mann?

**MS. SIMPSON:** No, Your Honor. I think that papers cover everything.

**THE COURT:** I think you're absolutely right. So, Mr. Mann, I've seen your response. I interpret your response -- I mean, you have various explanations for what happened. But you concede there was a mediation on the 14th. You concede you did not appear.

So there's a couple of things. First of all, this whole trying to put the blame on defendants is not well taken. In the future when you make a mistake, trying to blame the other side for your own mistake is not a good tactic to take with any judge, definitely not with me. That's number one.

Number two, I'm sure that you read the case management and scheduling order in this case. You can't unilaterally decide to appear remotely for anything. You were to appear in person. So saying that defense counsel knew you had relocated to Pensacola is utterly meritless and has no weight here. You were required to appear in person.

Putting that aside, I do have one question for you and then you can add anything else you want. What do you mean by "silently assume," when you say that your client -- or excuse

me, "quietly assumed that he didn't have to appear at the mediation"? What do you mean by that, sir?

And, Mr. Mann, when you need to speak, stand up.

**MR. MANN:** Can you inform me of the page where we're at?

**THE COURT:** Page 3, at the bottom of page 3, Document No. 72.

**MR. MANN:** He didn't tell me anything about it, and he just didn't show up.

**THE COURT:** Okay. So now I'm going to ask you another question. Without invading attorney-client privilege, how many attempts between January 23rd and February 14th did you make to contact your client to remind him of the mediation?

**MR. MANN:** I made an attempt a week prior.

**THE COURT:** And what about the day prior?

**MR. MANN:** It was on his calendar. So we had a notification go to him the day before.

**THE COURT:** This is during the same time that you had a complete breakdown of all communications with your electronic system?

**MR. MANN:** This was through my own at that time, I believe, and it pushed a notification to him the day before and I think it -- like, a couple of hours before the mediation.

**THE COURT:** Okay. Is there anything else you want to add with respect to this motion?

**MR. MANN:** No, Your Honor.

**THE COURT:** Okay. What I'm going to be doing is on some of these I have the authority to do orders, on some of them to do R and Rs, but what I'm going to do, because I'm trying to wrap all of this up in one fell swoop, is we're going to see at the end of the case I'm going to consider all three together, and based on the sanctions I'm going to be recommending to Judge Dalton, it's going to be a report and recommendation.

So I will be recommending to Judge Dalton that this motion for sanctions be granted in its entirety and that the relief provided be monetary sanctions, and I'll lay those out in the report and recommendation.

And I want to make sure we understand. Those sanctions are going to be joint and several. Which means, Mr. Mann, that if Mr. Saunders doesn't pay them, you are responsible for paying them.

And they're going to be pretty hefty. It's going to be every penny of the mediator's fee and every penny of defense counsel -- of their fees and costs for preparing for the mediation and showing up for the mediation and for filing the motion and for coming for the last hearing and coming for this hearing.

And whatever that will be is whatever that will be because, frankly, I understand you gave -- attempted to give

explanations, there's no excuse that's been given here as to why you all didn't show up. I have no choice but to assume it was done not in good faith.

On the next motion, then, which is the Rule 37(b) motion for sanctions, that's the one we addressed in detail last hearing. So I've reviewed your affidavit in detail, Mr. Mann. I do have some questions for you in a minute.

But, Ms. Simpson, I want to turn back to you because there's a couple of things in the reply that I wanted to make sure.

And, actually, the first thing I want to do is ask Ms. Wagner. In your affidavit you say very clearly there was no phone call, but I want to also put a finer point on it, because your opposing counsel likes to parse through things in a way that I don't find to be appropriate. So I just want to make sure. And I'm not saying you're doing it, but just to make sure for the record, was there any attempt to contact anyone in your firm prior to January 23rd to notify -- whether it was text, email, phone, Facebook, TikTok, Instagram, carrier pigeon, whatever, to say these text messages are going to be presented in video format?

**MS. WAGNER:** Not that I know of, Your Honor.

**THE COURT:** Thank you very much.

And, Ms. Simpson, is that your answer as well?

**MS. SIMPSON:** Yes, Your Honor.

**THE COURT:** All right. Thank you.

So then the next thing, Ms. Simpson, let me come back to you, is you make some statements in the reply I just wanted to get a little more information on. You say you're just now learning of new witnesses from documents not previously disclosed, and then in footnote 7 of your reply -- and this is Document No. 80, on footnote 7 you say you're still receiving additional relevant documents as recently as March 4th that should have been previously produced.

Could you shed some more light on that for me, please?

**MS. SIMPSON:** Absolutely, Your Honor. Up until late last night, we were reviewing about, rough estimate, 1,600 new text messages that, thankfully, were produced in a screenshot format, so we were able to go through those quickly, and rough estimate of about 100 emails, and that is where I am noting that we discovered new witnesses and new information through the supplemental production.

**THE COURT:** And that's on top of and not including the video text messages?

**MS. SIMPSON:** Correct, Your Honor.

**THE COURT:** All right. Thank you very much. Anything else that you would like to add with respect to this motion? I know we hashed it out in detail at the last hearing, but in light of the affidavit filed by Mr. Mann, is there anything else that you would like to say?

**MS. SIMPSON:** I'm sure your Court -- Your Honor is going to note this, but I just want to say that defendant is pretty surprised after the last hearing that since then both Mr. Mann and Mr. Saunders have ignored this Court's order by not timely filing affidavit and affidavit attachments, and so when we talk about what are appropriate sanctions, and it's fully briefed in our papers, but we think that sort of conduct is exactly the sort of conduct that shows lesser sanctions besides dismissal and fees are not appropriate in this case because of the need for a deterrent effect, the intentional bad faith as well.

**THE COURT:** Which one, which microphone is causing the feedback, we think? That one. Okay. Thank you very much.

Thank you, Ms. Simpson.

So, Mr. Mann, is that true? Has there been additional discovery produced as recently as March 4th?

**MR. MANN:** Yes, Your Honor. We went through the phone text messages. We addressed everything, I think, that they needed and produced a video -- or 20 minutes of the video.

**THE COURT:** What video?

**MR. MANN:** The mediation video.

**THE COURT:** Okay.

**MR. MANN:** And then the emails.

**THE COURT:** Okay. So when you said in your response to the motion for sanctions here, when you said in that

response, which was, I believe, Document No. 65, that you produced everything in your client's possession, custody, and control, that was inaccurate?

**MR. MANN:** Yes. That was inaccurate.

**THE COURT:** Okay. And do you have an explanation of that?

**MR. MANN:** I didn't learn of any of these things until I was able to go through his physical phone and had possession of his phone.

**THE COURT:** Okay. And as we talked about at the last hearing, you were aware of the issue with the text message and the phone. You should have been aware of it months before, but at the very least November 30th, and as we discussed before, you did absolutely nothing until after the hearing to try to do anything with this cell phone.

**MR. MANN:** Well, we went through the phone to -- we didn't know what witnesses. There were new witnesses that were discovered by me at the same time as them. So I discovered new witnesses as I was going through the phone.

**THE COURT:** Right. And when did you -- when did you go through the phone?

**MR. MANN:** I went through the phone for specific witnesses --

**THE COURT:** When?

**MR. MANN:** Um --

**THE COURT:** I want a date.

**MR. MANN:** In -- I think it -- it's in my affidavit, but it is somewhere early January. So I went through the phone.

**THE COURT:** So let me stop you there, Mr. Mann, because, again, I want you to take a breath and make sure you get these dates right, because here's the concern, sir: There's so many misstatements. And we haven't gotten to the EEOC mediation filing. There are so many misstatements here that you have passed the point of no return, in my opinion, and I'm going to have to refer you to the Grievance Committee. You have utterly violated your duty of candor to the Court.

So let me make that clear. So I don't want -- this hearing is going to be recorded, and you're going to get a transcript. So I want to remind you, again, what you're saying here is part of that.

So when we had our last hearing you said repeatedly you had done nothing -- and that hearing was on February 21st. You had done nothing at all to search that cell phone beyond send that video on January -- I know in your affidavit there was some, like, January 16th, between January 16th and January 23rd, and there were some technical issues. And now we're hearing from Ms. Simpson an additional 1,600 texts and 100 emails that were submitted in the last several weeks, since the February 21st hearing.

And so what I'm asking you is, when did you conduct that search that resulted in the production of the 1,600 texts and the 100 emails?

**MR. MANN:** So to get it straight, the 1,600 texts are from the same videos with an additional -- there's a few different witnesses that were discovered just by different searches that we did, based on his last testimony.

So we did that just before we filed the affidavit -- or just after we filed the affidavit.

**THE COURT:** Okay. So either February 28th or March 1st. You still can't give me a date?

**MR. MANN:** No. It's the same text messages. We learned new witnesses in his testimony the 21st.

**THE COURT:** Okay.

**MR. MANN:** On the 21st of February, we learned new witnesses. He testified that he wouldn't look through his email and all that kind of -- so we looked through his email with different keywords that we didn't do before having more information.

**THE COURT:** Okay.

**MR. MANN:** So I had done -- I had produced 1,600 text messages, but they were just in a different format than the --

**THE COURT:** So I just want to make sure I understand. You didn't know about any new witnesses from your own client until your client testified on February 21?

**MR. MANN:** Correct.

**THE COURT:** Okay. Then the next thing I want to know from you, sir, is -- I've gone through your affidavit. We've already clarified, I hope, I think, the issue of when this contract was signed and Mr. Saunders officially became your client, although you both have represented to the Court, and correct me if I'm wrong, that you've been acting all along in an attorney-client relationship, correct?

**MR. MANN:** That's correct.

**THE COURT:** Okay. So, then, in your affidavit and in your filings you, again, give me 15 different time ranges for when you were having email issues. So I don't know -- I mean, I took a whole -- I have 11 pages of notes highlighted trying to figure out what's going on. So we either have January 24th through January 29th -- this is all 2024 -- February 2nd to February 5th; January 23rd all the way through February 14th; we have January 24th to January 26th; we have January 30th, January 31st; we have February 16.

And these are all in your affidavits, sir, signed under penalty of perjury. And I know you know what "perjury" means. It's pretty serious. And I'm still not getting a straight story from you. So I'm going to give you an opportunity right now, if you want to once and for all try to clarify what was going on and what the date ranges are. Because I honestly --

And then there's dates about when you had Wi-Fi. I don't know where the Wi-Fi was. You don't tell me if that was your house, your office, what's going on.

There's statements about going on a two-week vacation during discovery.

I don't -- I, frankly, don't understand. And so I'm asking you -- giving you one last opportunity, to quote a movie, help you help me. So what's going on?

**MR. MANN:** So with the dates in the affidavit, it is -- each of those dates are tied to a specific email, phone log, whatever I have.

**THE COURT:** Okay.

**MR. MANN:** The issue with it being confusing is that the Cochran firm isn't giving me records. So I'm going back and trying to piece it together as to what happened. I can only piece together exactly what happened within my office. So I'm trying to piece it together, and this is essentially what the affidavit is. Each of those paragraphs is tied to a specific document. It ties in together.

**THE COURT:** Okay.

**MR. MANN:** So --

**THE COURT:** Okay. Other than, Ms. Simpson, the text messages and the emails that were produced over the last week or so, is there any other discovery that defendant is still contending has not been produced that you're aware of, and then

I'll talk about the videos in a minute.

**MS. SIMPSON:** It's difficult for me to say, Your Honor, because we were still reviewing emails up until last night.

**THE COURT:** Okay.

**MS. SIMPSON:** So we would need to review the new witnesses and the information to ensure there's not other missing responses or additional texts out there.

**THE COURT:** Understood. Okay. And then with respect to the videos, there's some mention in Mr. Mann's affidavit, I think it's in paragraph 77, that as of February 29th -- I mean, this is paragraph 77 and paragraph 80 -- that Mr. Mann obtained his client's cell phone on February 22nd and has turned it over to defense counsel and is still trying to coordinate with defendant's vendor for the extraction of the screenshots. I'm going to use "screenshots." Is that accurate to the best of your knowledge?

**MS. SIMPSON:** I don't know when Mr. Mann received his cell phone. It was never provided to defendant. And we were conferring as to the means by which we were getting the text messages.

**THE COURT:** Okay. So that has not yet happened. You don't have the text messages yet?

**MS. SIMPSON:** We have screenshots of 1,600 text messages, which I think is what he's indicating here.

**THE COURT:** Okay. So when I asked you earlier if those were new text messages, in addition to and separate from the video, that was not -- and you said they were in addition to and separate from, that's not correct?

**MS. SIMPSON:** That is correct.

**THE COURT:** So you have a video that has -- how many text messages are on that video, roughly?

**MS. SIMPSON:** Over a thousand, and that's what we had at the prior hearing.

**THE COURT:** Right.

**MS. SIMPSON:** And since then, we have screenshots. And just -- just for clarity, there is Jan Chalk, who is a key witness, that text messages were produced that were also in the video. Besides that, they are all new text messages screenshots.

**THE COURT:** When you say "new text messages screenshots," different date ranges?

**MS. SIMPSON:** Yes, and different witnesses.

**THE COURT:** Okay. So there's some overlap but not much.

**MS. SIMPSON:** Yes, Your Honor.

**THE COURT:** And you say there was about a thousand in the video and we have 1,600 now, so at least, at a bare minimum, there's 600 new, if not more?

**MS. SIMPSON:** Correct, Your Honor.

**THE COURT:** Okay. Thank you for clarifying that. So that's --

Anything else, Mr. Mann, you want to add with respect to the motion for sanctions under Rule 37(b)?

**MR. MANN:** I could just specify as to what the videos -- whose conversations they were with, just for the record, if you would like.

**THE COURT:** I don't think --

**MR. MANN:** Okay.

**THE COURT:** -- it's relevant to this.

**MR. MANN:** Okay.

**THE COURT:** The issue is, whether -- you know, you didn't comply with the order. We talked about it last time, and you admitted you did nothing before February 9th to comply.

So I'm just asking, with respect to the relief they're requesting, if there's anything else you want to add. I've read your 23-page affidavit clearly, in detail, since I can quote paragraphs of it. I struck all of your exhibits because you did not submit them timely as required and you did not ask for leave to do so or explain anything. So I have your affidavit and that's it. Is there anything else you want to say with respect to that motion?

**MR. MANN:** No, Your Honor.

**THE COURT:** All right. Thank you. So then let's turn to the next motion, which is the motion for sanctions on the

EEOC mediation.

So, Ms. Simpson, let's start with the initial motion. I've read your reply. Obviously, in response to that I asked to have the entirety of Mr. Saunders' depositions filed. I won't pretend to have read every single page, but I have skimmed what I hope are the salient parts.

Is there anything else -- and I'm going to let you have the last word on this before I turn to Mr. Mann. Is there anything else you want to add with respect to this motion, that's Document No. 55?

**MS. SIMPSON:** Your Honor, I would just say that while I understand the Court is striking plaintiff's untimely affidavit that was filed by himself instead of through counsel and per Your Honor's previous order if something is not appropriately filed, there's going to be a negative inference --

**THE COURT:** Correct.

**MS. SIMPSON:** -- I will say that that affidavit actually proved that he did sign the agreement, that he recorded, and they did produce a limited recording, and at the beginning I'm actually reminding the parties of the confidential nature, and that he played it for Jan Chalk, which he also testified to in his deposition. And while he contends that Jan Chalk asked him to record it, he understands that would still potentially be a breach of the confidentiality

agreement. So I would just like to highlight that for the Court.

**THE COURT:** And I appreciate that. And that's why when I said to Mr. Saunders earlier I was kind of doing him a favor by striking it because I have no doubt you would have loved if I had kept it in, but, in any event, the negative inference will stand, and that's what I'll be relying on and not on the affidavit. Also I had some concerns that there might have been some additional mediation disclosures in that affidavit.

**MS. SIMPSON:** Agreed, Your Honor, and we agree with that.

**THE COURT:** Yeah. So I just wanted to get that out. I'm going to have it removed. Well, I'm going to just strike it. I'm not going to have it removed from the docket.

Do you want me to have it sealed?

**MS. SIMPSON:** I think that's best because the key takeaways document that was sent to 12 different people does summarize some of the mediation communications.

**THE COURT:** And there were also attachments that looked like they were Mr. Saunders' performance evaluations. Is that what they were?

**MS. SIMPSON:** The first document was his performance evaluation. The second was a Gallup poll survey.

**THE COURT:** Okay. I'm going to have the document

sealed, but I'm not going to strike it, just so we have a complete record in case anybody wants to file an appeal. I don't like to remove things, unless I absolutely have to.

But I will be just going based on the negative inferences in ruling on the motion.

**MS. SIMPSON:** Thank you, Your Honor.

**THE COURT:** All right. You're welcome.

So, Mr. Mann, let me turn to you, sir. I have a question for you. Were you at your client's deposition on February 21st?

**MR. MANN:** I was there virtually.

**THE COURT:** Mr. Mann, I'm going to remind you, again, you need to stand up when you talk to me, sir.

**MR. MANN:** Yes. I was there virtually.

**THE COURT:** Were you there -- I'm sorry. What?

**MR. MANN:** I was there virtually.

**THE COURT:** Okay. Were you there the entire time?

**MR. MANN:** Yes.

**THE COURT:** You didn't go do another hearing or turn off the screen or turn off the volume?

**MR. MANN:** No, Your Honor.

**THE COURT:** So you heard everything your client said?

**MR. MANN:** Yes.

**THE COURT:** Okay. So are you disputing any of the excerpts or the deposition that's been filed?

**MR. MANN:** No.

**THE COURT:** Okay. So then what on what universe could you possibly file a document in this court saying that defendant cannot prove what plaintiff recorded, how it was recorded, when it was recorded, and whether it was a mediation communication? And how can you say that the key takeaways email is not a mediation communication? How can you say that signing your signature to it as an officer of the court --

**MR. MANN:** I was just --

**THE COURT:** -- when you know what your client said at the deposition?

**MR. MANN:** I was going off of what my client said and what he had told me in confidence.

**THE COURT:** Okay. Are you familiar with Federal Rule of Civil Procedure 11 --

**MR. MANN:** Yes, Your Honor.

**THE COURT:** -- strictly 11(b), which is "Representations to the Court"?

And specifically it says: "By presenting to the Court a pleading, written motion, or other paper, whether by signing, filing, submitting, or later advocating for it, an attorney or unrepresented party certifies that to be best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" -- and there are several requirements, but the last two are the most important to me --

number three, "that the factual contentions have evidentiary support, or if specifically so identified will likely have evidentiary support after reasonable opportunity for further investigation or discovery, and" -- this is subpart four -- "the denials of factual contentions are warranted on the evidence or if specifically so identified are reasonably based on belief or a lack of information."

You just told me you were at the deposition. You told me you didn't leave it. You heard the whole thing. In the deposition your client stated under oath that he recorded the mediation, that he attempted to provide it to Jan Chalk, that the video didn't go through because it was so big, that he had Jan Chalk come over to his house, he played the entirety for Jan Chalk while he went upstairs because it was such a lengthy video, and then he says that the key takeaways email is a summary of his opinion, lies told by defense counsel during opening argument, several mistruths and several lies.

Those are clearly recitations of the communications during the mediation. Yet you still, eight days later, filed a document with this Court saying that the defendants can't prove any of that.

This is your opportunity to say something, sir, if you want to.

**MR. MANN:** Your Honor, the key takeaways, if you start there, the key takeaways, from my observation of it and review

of it in comparison with court filings and EEOC filings, they are the same things that were in the EEOC filings and in the motion to dismiss and in all the filings so far. And my understanding of mediation communication is something that is in confidence in the mediation, not outside of the mediation.

**THE COURT:** Then why did you redact it, sir, when you submitted it to discovery to defense counsel?

**MR. MANN:** I had spoken to defense counsel. I talked to them of what they wanted to do. And they asked that I redact it.

**THE COURT:** Okay. And then how do you say all this other stuff that the defendant cannot prove what plaintiff recorded, how it was recorded, when it was recorded, whether the recording is in mediation communication, and, if so, whether it was disclosed to anyone? That is a quote, I believe, from your response in Document 73. How can you say that when you were at the deposition and heard your client's testimony where he admitted to doing all of that?

**MR. MANN:** He admitted to playing it for Jan Chalk, but also said that he walked off and didn't listen to any of it. So it is unclear what she listened to, and it's an issue that I tried to look into because there's privileged communications. I don't know what the -- what the witness heard or saw during the time that he wasn't there.

**THE COURT:** Okay. Anything else you want to add?

**MR. MANN:** No, Your Honor.

**THE COURT:** Okay. The next thing is, Ms. Simpson, you said that the plaintiff was refusing to produce the rest of the recording, claiming attorney-client privilege. Is that still what's going on?

**MS. SIMPSON:** Yes, Your Honor.

**THE COURT:** Okay. Mr. Mann, your client testified at his deposition he played the entirety of the recording for Ms. Chalk; therefore, attorney-client privilege has been waived, and I'm ordering you to produce the entirety of the recording to Ms. Simpson in the next 24 hours.

I think, at that point, is there anything else -- Ms. Simpson, I'll come back to you and let you have the last word with respect to the response that was filed by Mr. Mann. You've heard my thoughts so far. Is there anything else you would like to add before I say what I'm going to be doing with respect to this motion?

**MS. SIMPSON:** Your Honor, I would just like to say that this particular motion is indicative of the fact that this isn't just plaintiff's counsel who is acting in bad faith and with willful intentional conduct but that from the very inception Mr. Saunders has, as well, through text messages, by recording the EEOC mediation, by not attending the mediation, and that's why, when we're seeking sanctions, we believe that they're both culpable.

**THE COURT:** Thank you. And that actually brings up another point, Mr. Mann. You state in response to this motion that defendants can't prove that your client signed the confidentiality agreement for the mediation. Were you Mr. Saunders's attorney at the EEOC mediation, sir?

**MR. MANN:** Yes, Your Honor. And it wasn't provided to me. I looked for it. And there was an email for me to sign separately.

**THE COURT:** That's not the question, sir. Did you -- did you participate in that mediation with Mr. Saunders?

**MR. MANN:** Yes, Your Honor.

**THE COURT:** Did you sign a confidentiality agreement prior to participating in that?

**MR. MANN:** I believe so, but I don't have any record of it.

**THE COURT:** But yet you're still going to say in a response that they can't prove that your client agreed to confidentiality?

**MR. MANN:** I do not have any record of us signing a confidentiality --

**THE COURT:** But you just said in court that you signed the confidentiality agreement --

**MR. MANN:** I said --

**THE COURT:** -- and you were representing Mr. Saunders at that time.

**MR. MANN:** I believe I did.

**THE COURT:** All right. Thank you very much.

Here's what I'm going to do. We've talked about all three motions now. I am going to be issuing a recommendation to Judge Dalton that this case be dismissed. The conduct, Mr. Mann, of yourself and of your client -- and I can't honestly parse out who did -- was worse here, but it's clear that you and your client have not been litigating this case in good faith since its inception. I am -- I've never seen something like this before. Your client admits to violating every single rule under the sun and then you file documents that have no basis in fact with the Court, and when I ask you for explanations, you can't even give me a straight answer.

I'm going to be recommending dismissal of this case in its entirety with prejudice, and I'm going to be issuing monetary sanctions -- recommending that -- and the sanctions will be for this hearing, preparing for and attending this hearing; preparing for and attending the prior sanctions hearing; filing all of the motions for sanctions; filing all of the replies and any affidavits to the motions for sanctions; it will also encompass the mediation that you and your client did not appear at on February 14th and the preparation for that; and it's also going to include all of the attorneys' fees and costs for attending the EEOC mediation.

You will have -- when I get that report out, you'll

have 14 days to file any objections you so wish, and Judge Dalton will handle it at that point.

I'm also and I -- this gives me no pleasure at all. This is the first time I've ever had to do this. I've been practicing law since 1997. I'm only aware of one other attorney who's ever been referred to the Grievance Committee in a case I've been involved with, and you're now the second.

Your behavior here and your statements here -- initially I thought you just were in a bad spot, you were relocating, and you were trying to figure out how to handle everything. But your response, in particular to the motion on the EEOC mediation, is beyond egregious. You flat-out lied to the Court. It was disingenuous in the extreme to say that defendants can't prove anything.

You violated Rule 11(b). That's clear. I have no choice. And it pains me because it takes a lot of work to become an attorney, and I hold myself to this high standard, and I hold every single person in this courtroom to that standard. You've violated that standard. You've violated your duty of candor. You have not complied with the rules of professional responsibility.

I will be referring you to the Grievance Committee for appropriate discipline. And I'll leave it to them to conduct an investigation to decide what to do. And if they do an investigation, they'll have an opportunity -- you'll have an

opportunity to respond to them on that.

I think the last thing to take up then -- well, let me ask you this, Ms. Simpson: With respect to what I'm going to recommend -- and, again, I'm just rattling it off; it will be, obviously, a very lengthy report and recommendation -- is there anything else of defendant that I missed with defendant's asks in these motions for sanctions?

**MS. SIMPSON:** The only thing that we referenced during the last hearing, Your Honor, was the time to download the videos and review those text messages that weren't produced in appropriate fashion.

I would also be remiss, Your Honor, if I didn't on behalf of my client leave open the possibility for 1927 sanctions because they have spent a lot of time and fees on this case.

**THE COURT:** I completely understand that. And I also want to say this: I'm saying for the record "dismissal with prejudice." I haven't looked at the law yet. It may wind up being without prejudice, but I think I can recommend with, but whatever the law allows me to do is what I'm going to do.

As far as the time for downloading the videos, I'm going to have to do a little thinking on that. Your request is noted. I'm not sure if I'm going to consider that as part of the sanctionable conduct.

As far as 1927, you and your client are free to do

what you want. I would suggest this, and this is just a suggestion because I am, as we sit here right now, not aware of the timing when such a motion needs to be filed, but it may very well be that everything that I'm recommending in this R and R is going to encompass everything you and your client would get under 1927, because, remember, that's just for proceedings that were unnecessarily prolonged. And I know there's arguments that you say the case was deficient from the beginning. If that's your position, of course, then you have a different 1927. But as far as everything that's happened since your first motion to compel was filed, he's already paid the 650 on that. Everything else from that point forward is going to be covered in this R and R.

**MS. SIMPSON:** Yes, Your Honor. The other thing I would like to note is because of the time period with respect to the sanctions, and, again, I don't know if this is appropriate, but Mr. Mann was with the Cochran firm for a period of time --

**THE COURT:** Mm-hm.

**MS. SIMPSON:** -- so I just wanted to note that for the record, that it's not just Mr. Mann and his new firm but also with Cochran.

**THE COURT:** And that's fine. Like I said, after you discuss with your client, you are free to file whatever motions you feel are appropriate and whenever you feel they're

appropriate. If you want to file them -- because I don't -- I'm going to get a transcript from today. It's going to take a couple of weeks and then it's going to take me a while to get this report and recommendation out.

Judge Dalton is very much aware, because, as you know, when we had the first hearing I didn't have all the motions referred to me; I then spoke to him; we got the stay; we got the motions all referred. So he's aware that I'm going to be working on this. It may be, to be quite frank, it could be six to eight weeks before you see a report and recommendation on what happened here today.

So in the meantime, whatever you in consultation with your client think is appropriate, I make no statement on that. I'm not telling you what you can or can't do.

**MS. SIMPSON:** Thank you, Your Honor.

**THE COURT:** You're very welcome.

So, then, let's turn to the motion to withdraw. What I'm going to do, Mr. Mann, is I'm going to make this into an in-camera proceeding shortly, but I want to get Ms. Simpson's position for defendant, and that way when I make it in camera, then, at that point, Mr. Saunders, when it's in camera, then you can say whatever you want to me because it will be sealed, but I just want to protect the attorney-client relationship right now.

Ms. Simpson, I've read your opposition, and it reads

to me like the number one issue is -- well, there's two issues. One, you don't know what the basis is for seeking withdrawal; and, two, given the pendency of all of these motions, it would be inappropriate to allow Mr. Mann out. Is that a good summary of your position?

**MS. SIMPSON:** Exactly right, Your Honor.

**THE COURT:** Anything else you want to add?

**MS. SIMPSON:** No, Your Honor.

**THE COURT:** All right. Then, do you mind if the three of you -- actually, the four of you would just wait outside? I'm going to try to keep this as short as possible, hopefully no more than 15 minutes, but I do want to have an in-camera discussion with Mr. Mann and Mr. Saunders. Thank you very much. You can leave all your papers here if you want, because I'm going to have you brought back in. Just take with you whatever you need. And I'll just wait until the court security officer comes back in.

All set. All right. So this proceeding from this point forward is officially in camera, which, Mr. Saunders, for your benefit means it's going to be sealed. The other side is not going to hear it.

(Sealed in-camera discussion begins.)

[redacted]























(Sealed in-camera conversation ends.)

Okay. We're back on the public record.

So after conversation with Mr. Mann and with Mr. Saunders, I'm denying without prejudice the request to withdraw at this time. I do not find that the requirements of Florida Rule 4-1.16(a) have been met. I think that's the right rule. Yes.

And what I've explained to Mr. Mann is, he's free to renew his motion if one of three things occurs and the earliest of that: If Mr. Saunders terminates representation, move to withdraw, Mr. Saunders can proceed pro se; if Mr. Saunders finds substitute counsel who files a notice of appearance, then

Mr. Mann may renew his motion to withdraw; or he can renew it after the report and recommendation is issued, but I want to, given the pendency of the motions, I don't want there to be any confusion that Mr. Mann has an ability to respond.

And I'll also note this for the record. Even if you do withdraw, Mr. Mann, I will -- any withdrawal will be retained jurisdiction over you for the sanctions issues.

So with that, is there anything else I need to take up today on behalf of defendant?

**MS. SIMPSON:** Nothing, Your Honor. Thank you.

**THE COURT:** Thank you very much.

Mr. Mann, anything else on behalf of plaintiff?

**MR. MANN:** No, Your Honor.

**THE COURT:** All right. Thank you very much.

Oh, and I'll just say this: The stay remains in effect. So that's the other reason why I don't have too many concerns. There's no ongoing litigation in this case. The next thing that will come out will be the report and recommendation.

So thank you all very much. Have a good day.

(WHEREUPON, this matter was concluded at 10:53 a.m.)

\- - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-titled matter.

I certify that the foregoing is a true and correct copy of the transcript, incorporating sealed portions of the record as

redactions, as ordered by Judge Leslie Hoffman Price. Redacted characters appear as a black box in the transcript.

s/Suzanne L. Trimble 3/26/24

Suzanne L. Trimble, CRR, RPR, WACCR Date

U.S. Official Court Reporter