# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FREDERICK SAUNDERS,

      Plaintiff,

v.                                  Case No:   6:23-cv-230-RBD-LHP

SIGNATURE FLIGHT SUPPORT,
LLC,

      Defendant

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following

motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO THE FLORIDA MEDIATION CONFIDENTIALITY AND PRIVILEGE ACT, OR IN THE ALTERNATIVE, THE COURT'S INHERENT POWER, AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 55)** |
| **FILED:** | **February 7, 2024** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

> **MOTION:**   **NOTICE OF PLAINTIFF'S NON-COMPLIANCE WITH THE COURT'S ORDER ON DEFENDANT'S MOTION TO COMPEL [D.E. 48] AND MOTION FOR SANCTIONS, WITH INCORPORATED MEMORANDUM OF LAW (Doc. No. 57)**
>
> **FILED:**   **February 12, 2024**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

> **MOTION:**   **MOTION FOR SANCTIONS FOR PLAINTIFF'S FAILURE TO ATTEND COURT-ORDERED MEDIATION AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 61)**
>
> **FILED:**   **February 15, 2024**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

This matter is before the undersigned on referral of three separate motions for sanctions, all filed by Defendant Signature Flight Support, LLC d/b/a Signature Aviation ("Signature"), against its former employee, Plaintiff Frederick Saunders ("Saunders" or "Plaintiff"), each alleging various bad faith conduct on the part of Saunders and his attorney, Michael Grady Mann ("Attorney Mann"). Doc. Nos. 55, 57, 61. In order to properly address these motions, an extensive recitation of the relevant procedural history and events is necessary. Based on the below discussion and an analysis of the governing legal standards, the undersigned will

respectfully recommend that sanctions be levied against Saunders in the form of dismissal of his case in its entirety, and that monetary sanctions be levied against Saunders and Attorney Mann, jointly and severally.

## I.   BACKGROUND

On January 10, 2023, Saunders, through his counsel Attorney Mann,[1] filed an eight-count Complaint against his former employer, Signature, alleging race discrimination and retaliation in violation of the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII") (counts 1-4), state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress (counts 5-6), violations of the anti-retaliation provisions of the Fair Labor Standards Act (count 7), and violations of Florida's Private Whistleblowers Act (count 8).   Doc. No. 1-1.[2]   The case was originally filed in state court, and on February 9, 2023, Signature removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.   Doc. No. 1.   Signature answered the complaint (Doc. Nos. 10, 16, 37), and on March 20, 2023, United States District Judge Roy B. Dalton,

---

[1] Attorney Mann has represented Saunders throughout this litigation.   As discussed in more detail below, Attorney Mann initially was affiliated with The Cochran Firm.   However, in early 2024, Attorney Mann left that firm, and started his own firm as a sole practitioner.   Attorney Mann moved to withdraw as counsel on March 5, 2024, which motion the undersigned denied without prejudice for reasons also discussed below. *See* Doc. Nos. 78, 91.

[2] On June 22, 2023, United States District Judge Roy B. Dalton dismissed without prejudice the intentional and negligent infliction of emotional distress claims.   Doc. No. 33.   All other claims remain in the case as of the date of this Report.

Jr. issued a Case Management and Scheduling Order ("CMSO") establishing, among other things, a February 2, 2024 discovery deadline, a March 5, 2024 dispositive motions deadline, and trial for the term commencing August 5, 2024. Doc. No. 17, at 3-4.   As relevant to this Report, the CMSO also established a mediation deadline of February 16, 2024.   *Id.*, at 3.   The CMSO also contained the following warning:

> The parties are cautioned that the Court will diligently enforce this CMSO, and—when necessary—will exercise its inherent and explicit authority to sanction parties and attorneys who violate the letter or spirit of the Court's Rules and Orders.

*Id.*, at 2 & n.4 (referencing, *inter alia*, 28 U.S.C. § 1927, Fed. R. Civ. P. 11(c), 16(f), 26(g)(3), 37, 41(b), 83).

Judge Dalton also issued a separate order directing the parties to confer and advise the Court on the selection of a mediator no later than March 31, 2023.   Doc. No. 18.   On the March 31, 2023 deadline, Signature filed a Notice of Mediation, stating that mediation was scheduled to take place on January 31, 2024 at 10:00 a.m. at the offices of Jackson Lewis, P.C. in Orlando Florida, before mediator Julie O'Kane, Esq.   Doc. No. 25.   On January 24, 2024, counsel for Signature filed an amended notice of mediation, changing the date to February 14, 2024 at 1:45 p.m., at the same location and before the same mediator.   Doc. No. 42.   The Certificates of Service for both notices state that Attorney Mann was served with copies of the notices, and there is no indication in the record that Attorney Mann did not receive

copies of same at or around the time of filing of each.   Doc. Nos. 25, 42.   As noted in the CMSO, and as becomes important as the history of this case unfolds, Judge Dalton further advised that **"The Court will impose sanctions upon lead counsel and parties who do not attend and participate in good faith in the mediation conference."**   Doc. No. 17, at 16 (emphasis in original).

## II.   DISCOVERY DISPUTES AND THE FIRST SANCTIONS MOTION

As noted above, the discovery deadline in this case was February 2, 2024, and the dispositive motions deadline March 5, 2024.   Doc. No. 17.   On January 29, 2024, Signature moved to compel Saunders to supplement his document production with certain information responsive to previously served Requests for Production and that was identified in Saunders' November 30, 2023 deposition, specifically copies of all relevant text messages from April 2021 to present, along with copies of all documents identified in those text messages not previously produced, to include emails, recordings, and notes related to this case.   Doc. No. 46.   Apparently, the text messages had previously been produced in a video format – meaning that a video recording was taken of an unknown person scrolling through the messages – and Signature was requesting written format versions.   *Id.* Signature also filed a related motion to extend the discovery and dispositive motions deadlines.   Doc. No. 47.[3]

---

[3] The undersigned denied without prejudice prior versions of both of these motions

Given the impending discovery deadline, the undersigned instructed Saunders to respond to the motion to compel by 12:00 p.m. on January 31, 2024. Doc. No. 48.   *See also* Local Rule 1.01(b).   Saunders did not file a response, and on February 1, 2024, the undersigned entered an Order granting the motion to compel as unopposed.   Doc. No. 49.   Specifically, the undersigned ordered Saunders to produce by February 9, 2024 all documents in his current possession, custody, or control that were identified during Plaintiff's November 30, 2023 deposition and in the video produced by Plaintiff on January 22, 2024, and that were responsive to certain Requests for Production for the time period April 1, 2021 to present.   *Id.*, at 5.   The undersigned further ordered that the documents "must be produced in a text-based and/or written format — videos of same will not suffice."   *Id.*   The undersigned also found all objections waived and issued sanctions in the form of Signature's reasonable fees and expenses for filing the motion to compel.   *Id.*, at 5-6.   The undersigned warned Saunders and Attorney Mann "**that failure to comply with this Order may result in the imposition of sanctions, including but not limited to a recommendation of dismissal of the case in its entirety.**"   *Id.*, at 6 (emphasis in original) (citing Fed. R. Civ. P. 37(b)).[4]   Saunders never appealed this Order or sought reconsideration.

---

for failure to comply with various Court Orders.   *See* Doc. No. 45.

[4] The undersigned also extended the discovery period until February 24, 2024 for the limited purpose of completing Saunders' document production and completing

Next, on February 6, 2024, Signature moved to compel Saunders to submit to an independent mental examination and to extend Signature's expert witness disclosure and reports deadline.   Doc. Nos. 50-51.   The undersigned directed Saunders to respond to these motions on or before the close of business on February 12, 2024.   Doc. No. 54.   Again Saunders – still represented by Attorney Mann – did not respond to either motion.   As such, on February 14, 2024, the undersigned granted both motions as unopposed, extended Signature's expert witness disclosures and reports deadline to February 26, 2024, and directed Saunders to appear on February 20, 2024 for an independent mental examination.   Doc. No. 60.[5]

On February 12, 2024, Signature filed another motion:   a notice of Saunders' non-compliance with the undersigned's February 1, 2024 Order granting Signature's motion to compel, and a request for sanctions.   Doc. No. 57.   In the motion, Signature represented that Saunders wholly failed to comply with the February 1, 2024 Order (Doc. No. 49) and specifically failed to produce any documents by the February 9, 2024 deadline.   *Id.*   Signature argued that Saunders' non-compliance was significantly prejudicing Signature's ability to defend this

---

Saunders' continued deposition, and denied all other requested CMSO deadline extensions.   Doc. No. 49, at 9-10.   In addition, on February 23, 2024 the parties filed a joint notice stating that Saunders agreed to pay Signature $650.00 in reasonable fees and expenses for the filing of the motion to compel.   Doc. Nos. 68-69.

[5] It appears that Saunders complied with the examination, as no further motions were filed with respect to this issue.

litigation, that the discovery due to be produced related to numerous key issues and defenses, and that Saunders has been acting in bad faith by deliberately delaying and disrupting the case. *Id.* As such, Signature requested sanctions in the form of attorneys' fees and costs, the striking of Saunders' claims and claims for damages, the dismissal of this case, and any other just relief. *Id.*, at 6.

The undersigned scheduled an in-person hearing for February 22, 2024 on Signature's motion for sanctions (Doc. No. 57), and directed Saunders to file a response to the motion by February 20, 2024. Doc. No. 58. In the meantime, Signature filed a renewed unopposed motion to extend the discovery and dispositive motions deadlines, based entirely on Saunders' failure to produce the compelled discovery. Doc. No. 62.[6] The undersigned ordered that this motion would also be addressed at the February 22, 2024 hearing, and directed the parties to be prepared to address all other outstanding discovery issues. Doc. No. 63.

Saunders, through Attorney Mann, timely-filed his response to the motion for sanctions on February 20, 2024. Doc. No. 65. In the response, Attorney Mann explained that he separated from The Cochran Firm and opened his own firm, The Mann Firm, LLC, on February 2, 2024. *Id.*, at 1. Attorney Mann further explained that he was relocating from Orlando, Florida to Pensacola, Florida on January 26,

---

[6] In that motion, Signature also informed the undersigned that Saunders' continued deposition was set for February 21, 2024. Doc. No. 62.

2024, and was preparing for same during the days leading up to the move, and that he informed counsel for Signature of this move and "the upcoming changes and expected delays" that would result.  *Id.*   However, Attorney Mann contends that Signature took advantage of his "transparency" and "pelted" him "with almost 20 different filings over the course of January 26, 2024, through present."   *Id.* [7] Attorney Mann further stated that he was frustrated by numerous "technical issues," to include issues with receiving emails from his former Cochran Firm email address between January 24-29, 2024 and again between February 2-5, 2024.   *Id.*, at 2, 3.   In addition, the Cochran Firm on February 2, 2024 "blasted emails" to all of Attorney Mann's clients without advance notice, resulting in hundreds of clients making "waves of telephone calls" to Attorney Mann and creating a backlog.   *Id.* Finally, Attorney Mann cast blame on Signature's counsel, stating that Signature "rapidly filed" numerous notices and motions without conferring with Attorney Mann.   *Id.*

On the question of compliance with the undersigned's February 1, 2024 Order, Saunders (through Attorney Mann) represented that he

---

[7] As became clear to the undersigned, Attorney Mann has a penchant for exaggeration and misstatements and omissions of facts.   The undersigned has reviewed the docket and during this time period, Signature filed 13 separate documents, two of which were immediately denied without prejudice, *see* Doc. Nos. 43-45, another was an updated Local Rule 3.01(g) conferral certification, *see* Doc. No. 56, and several others were simply supplements to pending motions.   Doc. Nos. 53, 64.   Attorney Mann never requested an extension of any deadlines to respond to any pending motions.

has not withheld any non-privileged, discoverable materials from Defendant. Rather, all documents ***in Plaintiff's current possession, custody, or control*** that were identified in his November 30, 2023, deposition have been produced. The same goes for all responsive materials regarding Defendant's Requests for Production Numbers 1-3, 6-7, 24-26, and 28. Anything not already produced to Defendant is either not in Plaintiff's possession, or requires physical inspection by Defendant (*e.g.*, text messages, and videos). Plaintiff maintains, and always has maintained, that he would produce the materials sought by Defendant. Being that Mann has moved to Pensacola, FL, and the items of interest by Defendant require physical inspection and processing, it was not possible for Plaintiff to produce the requested text messages in "text-based and/or written format" on or before February 9, 2024.

*Id.*, at 2-3 (emphasis in original).[8] Saunders further represented that "in advance of producing the text messages, [Attorney Mann] asked Defendant's counsel how they would prefer the format of the text messages, and counsel agreed to the video format. It was not until [Attorney Mann] began transition to his new firm that Defendant suddenly needed text-format versions." *Id.*, at 4. Saunders concluded by arguing that he was acting in good faith, responding to an "exhausting and demanding list of supplemental production," and that Signature had taken advantage of Saunders' and Attorney Mann's good will by "flooding" the docket with "needless entries." *Id.*, at 5. However, Saunders did not argue that he was unaware of the undersigned's orders, did not contend that he ever sought any

---

[8] As discussed below, this representation that Saunders had produced all documents in his possession, custody, and control proved false.

extensions of the deadlines set forth in those orders, and provided no indication as to a timeframe for compliance with the undersigned's February 1, 2024 Order, or any details on how he intended to comply with that Order.

> A.    *The February 22, 2024 Hearing*

The undersigned conducted a hearing with the parties on Signature's motions as scheduled on February 22, 2024.   Doc. No. 66.   During the hearing, the undersigned attempted to elicit information from Saunders via Attorney Mann, but the answers for the most part were either non-responsive, confusing, or contradictory.   Eventually, the undersigned was able to confirm that Saunders and Attorney Mann were on notice since at least November 30, 2023 (the date of Saunders' initial deposition) that Signature was requesting his text messages, and despite Attorney Mann's technical issues during his relocation, he was on notice of Signature's motion to compel and the undersigned's February 1, 2024 Order. However, neither Saunders nor Attorney Mann took *any* steps to comply with the February 1, 2024 Order other than a lone conversation with Signature's counsel on February 21, 2024, the day before the hearing.   The explanation provided was that it was difficult to produce text messages in written format because Saunders lived in Orlando, Attorney Mann now resided in Pensacola, neither of them had access to an extraction program, and Attorney Mann did not have the time to comply as he was dealing with his move and email issues.

On the question of whether counsel for Signature had ever agreed to accept Saunders' text messages in video format, Attorney Mann was unable to identify the date, time, or format of any communications with Signature's counsel on this point and was unable to provide any evidence in support. In contrast, Signature's counsel vehemently denied that any such conversations had ever taken place, stating that Signature was not even aware that the text messages would be produced in video format until they were produced. In addition, Signature listed several other documents (beyond text messages) that Saunders was obligated to produce by February 9, 2024, but failed to do so – contrary to the assertions in Saunders' response. *See* Doc. No. 65, at 2-3.

The undersigned then turned to a discussion with Signature's counsel. First, it was noted that the motion for sanctions (Doc. No. 57) did not appear to contain a sufficient Local Rule 3.01(g) conferral certification. However, counsel represented that such a conferral did take place in advance of the filing of the motion, referencing an email exchange between the parties. Attorney Mann did not dispute counsel's assertions.[9] Signature also noted for the record that it was requesting sanctions in the form of fees and costs for filing the motion for sanctions

---

[9] Based on these unchallenged representations, the undersigned has proceeded with Signature's motion for sanctions. However, even if the undersigned were to find that Local Rule 3.01(g) had not been fully complied with and denied the motion on that basis, the undersigned would alternatively recommend sanctions under the Court's inherent authority and Federal Rule of Civil Procedure 16(f). *See also* Doc. No. 17, at 2.

and attending the hearing, striking Saunders' claims and claims for damages, and dismissal of the case.   In response, Saunders – through his attorney – admitted to not providing the discovery at issue, admitted to not complying with the February 1, 2024 Order, admitted to causing delays and wasting attorney resources, and suggested that an appropriate sanction would be an award of fees and costs but not dismissal of the case or striking of any pleadings.   Attorney Mann also attempted to take responsibility for these failures.

Based on these discussions with counsel – along with a discussion about case management deadlines – the undersigned took the motions under advisement and adjourned the hearing.   Later that same day, the undersigned issued an Order on Pending Motions.[10]   Doc. No. 67.   With respect to Signature's motion for sanctions for Saunders' failure to comply with the February 1, 2024 Order (Doc. No. 57), the undersigned directed Attorney Mann to:

> file an affidavit, signed under penalty of perjury, identifying with specificity the discovery that has been produced prior to the February 9, 2024 deadline that was identified at the November 30, 2023 deposition and/or is responsive to Defendant's Requests for Production 1-3, 6-7, 24-26, and 28.  *See* Doc. No. 65, at 2 (Plaintiff's representation that all responsive materials have been produced); *see also* Doc. No. 49, at 5.   The affidavit shall not only identify the discovery that has been produced, but also identify the date, time, and

---

[10] Signature had previously filed two additional motions for sanctions (Doc. Nos. 55, 61) neither of which had been referred to the undersigned at the time of the February 22, 2024 hearing.   Doc. Nos. 55, 61.   Following the conclusion of the hearing, Judge Dalton referred both motions to the undersigned, and the Order on Pending Motions addresses further proceedings in all three motions.

> manner of production, as well as the format of the production (i.e., hard copy, email, video, etc.).   This affidavit shall also detail with specificity the date, time, and manner of communication with Defendant's counsel where "Plaintiff's counsel asked Defendant's counsel how they would prefer the form of the text messages, and counsel agreed to the video format."  *See* Doc. No. 65, at 4.  *See also* Fed. R. Civ. P. 11(b). Plaintiff's counsel may also submit any evidence that counsel wishes the undersigned to consider in support of the affidavit.

*Id.*, at 2-3.  The undersigned also provided Signature an opportunity to submit a responsive affidavit along with any evidence in support, as well as a supplemental brief explaining the prejudice Signature has suffered from Saunders' discovery noncompliance, and why said prejudice could not be cured by lesser sanctions other than dismissal.  *Id.*, at 3.

The Order on Pending Motions also addressed Signatures' two other sanctions motions (Doc. Nos. 55, 61) and scheduled an in-person hearing on the motions for March 13, 2024.  *Id.*, at 4-5.  The undersigned further noted that any issues raised in the supplemental briefing with respect to the motion for sanctions regarding Plaintiff's discovery violations (Doc. No. 57) would also be addressed at the hearing.  *Id.*  The undersigned then stayed all remaining pretrial proceedings and deadlines pending resolution of all sanctions motions.  *Id.*, at 5.

B.    *Attorney Mann's Affidavit*[11]

Attorney Mann timely-filed his sworn affidavit.   Doc. No. 74.   Consistent with his arguments during the February 22, 2024 hearing, Attorney Mann's affidavit is confusing and contradictory.   He first avers that because he has no access to his prior law firm's email or computer systems, his record of relevant information to support his assertions is "incomplete."   *Id.*, ¶¶ 3, 5.   As such, Attorney Mann "cannot confirm or deny what was said during phone calls or in emails that are not in Mann's current system," but instead bases his averments on his own memory and inferences from other communications.   *Id.*, ¶¶ 6, 7.   Attorney Mann also avers that Saunders was informed on February 1, 2024 that Attorney Mann was leaving The Cochran Firm, but that Saunders did not notify of his election to remain a client of Attorney Mann until February 21, 2024.   *Id.*, ¶¶ 9-10.   Saunders and Attorney Mann "finally executed a new attorney-client engagement agreement on February 23, 2024."   *Id.*, ¶ 10.[12]

---

[11]  Attorney Mann references throughout his affidavit numerous exhibits, however none were attached to the affidavit.   Doc. No. 74.   Four days later, on March 4, 2024, Attorney Mann filed 46 attachments.   Doc. No. 76.   Attorney Mann did not explain the late filing, nor did he request leave to late-file these materials.   *Id.*, *see also* Doc. No. 67, at 2-3 (providing February 29, 2024 deadline to file an affidavit and any supporting evidence). Accordingly, the undersigned struck the exhibits, and as of the date of this Report, Attorney Mann has never sought reconsideration of this Order or any other relief.   *See* Doc. No. 77.

[12]  Attorney Mann later contradicts himself, averring that "[T]o-date, Plaintiff has not executed a contract with The Mann Firm, LLC, nor with Mann himself.   Doc. No. 74, ¶ 68.   The affidavit is dated February 29, 2024.   Doc. No. 74-1.

With respect to document production, Attorney Mann first spends an extended portion of his affidavit explaining his whereabouts between November 30, 2023 and February 9, 2024, to include a busy litigation calendar, his time off for various holidays and business travel, a family emergency, his move to Pensacola, his email difficulties, and construction at his new home. Doc. No. 74, ¶¶ 11-23. Attorney Mann eventually includes a timeline of Saunders' discovery production, listing document productions starting in July 2023, the production of the video recordings of Saunders' text messages on January 17, 2023 and January 22, 2023, and additional supplemental discovery (relevant to another sanctions motion discussed below), on February 16, 2024. *Id.*, ¶¶ 76, 79.[13]  Attorney Mann further avers that he "is in the process of coordinating extraction of text messages from Plaintiff's cellphone," and was waiting on a response from Signature's counsel to coordinate the extraction or to collaborate in the capturing of screenshots of the text messages. *Id.*, ¶ 80. However, Attorney Mann further avers that he did not begin this process until after the February 22, 2024 hearing concluded. *Id.*, ¶ 77.[14]

---

[13] Attorney Mann also provides a list of documents produced that are responsive to the specific requests for production that were at issue in the original motion to compel. Doc. No. 74, ¶ 81.

[14] At a subsequent March 13, 2024 hearing, Signature's counsel stated that they finally received screenshots of these text messages, along with several hundred other texts and emails, in early March. Doc. No. 93, at 13.

Attorney Mann also provides a lengthy recitation of his discussions with Signature's counsel between November 30, 2023 and February 22, 2024.[15]  *Id.*, ¶¶ 24-78.  Attorney Mann acknowledges that Signature's counsel requested supplemental document productions from Saunders at his November 30, 2023 deposition, including his text messages, and that Attorney Mann agreed again on December 19, 2023 to produce same.  *Id.*, ¶¶ 11, 25-26, 32-33.   However, Attorney Mann avers that he was unable to begin producing those text messages until he received a transcript of Saunders' deposition, which he did not receive until December 27, 2023.  *Id.*, ¶¶ 26, 31, 36.   Attorney Mann further acknowledges that on January 3, 2024, Signature's counsel renewed its request for the outstanding discovery, including the text messages.  *Id.*, ¶ 37.[16]   Attorney Mann (through his paralegal) finally made the video recording of Saunders' text messages at his office on January 11, 2024, and Attorney Mann recalls reviewing those video recordings

---

[15] Because the undersigned only directed Attorney Mann to address discussions relevant to the dispute over whether Signature's counsel agreed to accept Saunders' text messages in video-format, the undersigned only focuses on that portion of the affidavit, along with a few other salient averments.  *See* Doc. No. 67, at 2.   However, a large portion of this section again details Attorney Mann's busy schedule and technical issues related to his changing law firms and relocation to Pensacola, Florida.   Doc. No. 74, ¶¶ 27, 34-35, 41, 59-66, 69-75.

[16] Attorney Mann averred that on January 10, 2024, he contacted Signature's counsel about possible extensions of case deadlines, *see* Doc. No. 74, ¶ 40, *see also* ¶ 47, however it is undisputed that Attorney Mann never filed any motions for extensions of any deadlines.   And Attorney Mann does not contend that he was unaware of the undersigned's prior rulings denying Signature's extension requests.   *See* Doc. Nos. 45, 49.

between January 15-17, 2024 and ultimately producing the video recordings to Signature's counsel on January 16-17, 2024 and again on January 22, 2024.  *Id.*, ¶¶ 42, 45, 48-49, 51-53, 55. "[U]pon information and belief," Attorney Mann "recalls" speaking with Signature's counsel "at some point" while he was reviewing the video recordings, and "recalls" explaining that he was reviewing the text messages in video format, which was the fastest way to produce them.  *Id.*, ¶ 46.  However, Attorney Mann nowhere avers that anyone on behalf of Signature ever agreed to accept the text messages in video format as opposed to written format.

Instead, Attorney Mann avers that on or about January 22, 2024, he spoke with Signatures' counsel about the video recordings, but provides no details about that conversation.  *Id.*, ¶ 57.  Attorney Mann then details a series of emails between himself and Signature's counsel about rescheduling mediation and Saunders' continued deposition, during which Signature's counsel referenced not being able to review the videos of the text messages "in time," and that if Plaintiff's continued deposition goes forward, counsel "will need screenshots of the texts."  *Id.*, ¶ 58.  Attorney Mann admittedly did not interpret these emails as requiring written format versions of the text messages "at that time," he simply assumed that Signature could make screenshots.  *Id.*, at 14, n.6.  And he again nowhere avers that Signatures' counsel agreed to accept the text messages in video format.   To the contrary, he admitted that – during the time period when Attorney Mann was

experiencing email difficulties – Signature's counsel emailed him that the video formats of the text messages made them "essentially impossible to utilize in litigation," and offered to obtain a vendor to obtain the texts if Attorney Mann was unable to provide a written format version.   *Id.*, ¶¶ 60-61.   There is nothing in the affidavit indicating any response from Attorney Mann to these emails.

C.    *Signature's Affidavit and Supplemental Response*

As directed by the Order on Pending Motions, Doc. No. 67, at 3, Signature filed a supplemental brief, along with an affidavit from one of its counsel, Attorney Lin J. Wagner.   Doc. Nos. 80, 83.   Attorney Wagner avers in her affidavit that (1) she did not have a call with Attorney Mann about producing Saunders' text messages in video format or agreeing to such a format; (2) Attorney Mann provided a Dropbox link for the video recordings on January 22, 2024, Attorney Lin was able to download the files around 10:27 p.m. that evening, but was unable to open them due to their format; and (3) Attorney Wagner learned for the first time on January 23, 2024 that the text messages had been produced in video format.   Doc. No. 83.

In Signature's supplemental brief, Signature argues that the severe sanction of dismissal is warranted in this case because Saunders and Attorney Mann acted in bad faith and with flagrant disregard for the Court.   Doc. No. 80, at 1-6.   In particular, Signature argues that Saunders deliberately and significantly delayed production of the text messages, ultimately produced them in a form that obscured

some of the texts, including texts showing that there was no basis in law or fact for this litigation, and ignored motions and Court orders related to discovery. *Id.*, at 2. Signature attaches portions of Plaintiff's continued February 21, 2024 deposition, in which he admits taking no action to search for and/or produce relevant and responsive discovery up through the date of deposition. *Id.*, at 3-4; Doc. No. 80-1. Finally, Signature argues that dismissal is appropriate given the numerous alleged misrepresentations by Attorney Mann, both related to the video recordings of the text messages, and other issues. Doc. No. 80, at 5-6.[17]

Turning to the issue of prejudice, Signature argues that it was forced to engage in litigation for months, while Saunders and Attorney Mann withheld and/or produced in an obscured format evidence that showed Saunders' claims had no basis in law or fact. *Id.*, at 6-7. Signature further contends that no lesser sanction would suffice given Saunders' bad faith, his failure to comply with discovery orders, his willful obstruction of the discovery process, and the undersigned's prior warnings that more severe sanctions were possible. *Id.*, at 7.

---

[17] Signature also references evidence related to its other sanctions motions, which the undersigned addresses below. Doc. No. 80, at 5-6.

### III.    THE SECOND MOTION FOR SANCTIONS RELATED TO THE JULY 21, 2022 EEOC MEDIATION[18]

On February 7, 2024 Signature filed a motion for sanctions related to Saunders' conduct during and following a mediation that occurred at the pre-suit administrative charge phase before the U.S. Equal Employment Opportunity Commission ("EEOC").    Doc. No. 55.[19]    As part of the administrative proceedings, the parties agreed to mediate Saunders' claims with the EEOC.    To participate in the mediation, each party was required to sign the EEOC's Agreement to Mediate and Confidentiality Agreement.    *Id.*, at 2; Doc. Nos. 55-1, at 2, 4.    In the Agreement to Mediate, the parties acknowledged that the mediation was a confidential process and agreed to abide by the Confidentiality Agreement.    Doc. No. 55, at 2; Doc. No. 55-1, at 2.    And in the Confidentiality Agreement, the parties agreed, among other things, that:

> 2.    [A]ll matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding. . . .
>
> 3.    Any communications between the ADR Coordinator and the mediator(s) and/or the parties are considered dispute resolution with a neutral and will be kept confidential.
> . . . .

---

[18] While this motion was filed first chronologically, the undersigned addresses it second given the overlapping facts and references to the discovery disputes.

[19] Because Saunders brought claims under Title VII and the FCRA, he dual filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations ("FCHR") on April 21, 2022.    Doc. No. 55, at 2; *see also* Doc. No. 1-1, ¶¶ 12-14.

5.    Mediation sessions will not be recorded or transcribed by the
EEOC, the mediator or any of the participants.    Information including
records, or documents generated during mediation will be kept
confidential. . . . Parties or their representatives are not prohibited from
retaining their own notes.

6.    In the event a mediation session(s) is conducted via telephone or
video conferencing, the parties agree that all participants to such
mediation session(s) or those that are otherwise present for the remote
mediation, must identify themselves at the beginning of the mediation
session and sign this Confidentiality Agreement. . . .

Doc. No. 55-1, at 4.[20]

On July 21, 2022, the parties conducted the EEOC mediation virtually, at

which Saunders was represented by Attorney Mann.    Doc. No. 55, at 3.    The

mediation reached impasse and this lawsuit ensued six (6) months later.    *Id.*

When Signature finally obtained the video recordings of Saunders' text messages in

January 2024, however, Signature discovered text messages indicating that

Saunders recorded the EEOC mediation and sent that recording to a key witness,

---

[20]    Signature has submitted copies of the Agreement to Mediation and
Confidentiality Agreement that were signed by Signature.    Doc. No. 55-1, at 2, 4.
Signature made a Freedom of Information Act request to the EEOC for the copies of the
Agreements signed by Saunders, but the EEOC refused to produce them.    Doc. No. 55, at
3, n.1.    However, Signature has attached what purports to be the EEOC's activity log,
which includes entries indicating that the Charging Party (Saunders) signed both
Agreements and uploaded them to the EEOC's portal.    Doc. No. 55-1, at 6.    As discussed
below, Saunders – through Attorney Mann – disputes all of the facts asserted by Signature
and claims there is no proof that Saunders ever signed either Agreement.    Doc. No. 73.
However, in subsequent filings and at the March 13, 2024 hearing, it became clear that
Attorney Mann's statements were deliberately false.    *See, e.g.,* Doc. Nos. 81, 86, 93.

Jan Chalk, a third party who was an employee of Signature at that time, and who

Saunders listed as a witness in support of his claims and alleged damages.    *Id.*, at

3-4; Doc. No. 55-1, at 8-14 (screenshots of text messages showing Saunders recorded

the mediation and sent it via email to Jan Chalk in July 2022).    At this time,

Signature also discovered that Saunders prepared a document of "key takeaways"

from the EEOC mediation and sent it to at least one other current employee of

Signature, David Jordan, whom Saunders also identified as a potential key witness.

Doc. No. 55, at 4; Doc. No. 55-1, at 15-17 (screenshots of Saunders' text messages to

David Jordan).

Signature contends that Saunders' actions expressly violate the EEOC's

Agreement to Mediate and Confidentiality Agreement, and also violate the Florida

Mediation Confidentiality and Privilege Act, Fla. Stat. §§ 44.401-06 ("Florida

Mediation Act").    Doc. No. 55, at 4-5.    Signature argues that Saunders' actions

have undermined the judicial proceedings in this case by sharing confidential

information with key witnesses, including settlement demands and counteroffers,

and have disrupted Signature's business operations by attempting to turn current

employees against the company.    *Id.*, at 6-7.    As such, Signature seeks sanctions in

the form of equitable relief, compensatory damages, and attorneys' fees for

attending the mediation and filing the present motion.    *Id.*, at 5.    In the alternative,

Signature also asks that the Court use its inherent authority to sanction Saunders,

up to and including dismissal of the case, as his conduct clearly demonstrates bad faith.   *Id.*, at 7-8.

On February 20, 2024, Signature filed a copy of Saunders' February 16, 2024 supplemental production (a production that was made out of time and in contravention of the undersigned's February 1, 2024 Order, *see* Doc. No. 49).   Doc. No. 64.   The supplemental production consists of an email dated July 25, 2022, from Saunders to 12 different individuals, including Jan Chalk, with the subject line "Takeaways from the Mediation," and lists an attachment entitled "Key Takeaways from Mediation – 7.21.22.docx."   *Id.*, at 3.   Signature contends that four of the individuals listed on the email are Signature current and former employees.   *Id.* at 1-2.

Saunders did not file a timely response to the motion.   *See* Local Rule 3.01(c). However, given the severity of the allegations in that motion and its arguably dispositive nature, the undersigned afforded Saunders one additional opportunity to respond.   Doc. No. 67, at 3-4.   Saunders – again through his counsel Attorney Mann – filed a timely response on February 29, 2024.   Doc. No. 73.   As becomes relevant, Attorney Mann filed this response eight (8) days after he attended his client's continued deposition on February 21, 2024.   *See* Doc. No. 86.   And unfortunately, the response is shockingly replete with numerous and what can only be described as deliberate falsehoods.

Attorney Mann first argues that the Florida Mediation Act does not apply to
a voluntary pre-suit EEOC mediation, and that in any event, he reads the
Confidentiality Agreement "to be more focused on protecting against use of
settlement offers or apologies as evidence of liability," rather than recordings and
dissemination of the EEOC mediation as a whole.   Doc. No. 73, at 2, 3, 4-5.   He
also attempts to cast the text messages from Saunders to Jan Chalk – which reference
the date of the mediation, state that Saunders is "Starting the recording now,"
discuss details from the mediation, and discuss difficulties in sending the video
recording to Jan Chalk, and then state that Saunders sent the video recording to her
personal email – as not establishing that Saunders actually recorded the EEOC
mediation, or that Jan Chalk ever actually received any recording at her personal
email.   *Id.*, at 2-4.   Attorney Mann also references Saunders' continued February
21, 2024 deposition, in which he testified "that the video was never sent to Ms.
Chalk's email."   *Id.*, at 2, n.1.

Attorney Mann further argues that the text messages do not demonstrate any
violations of the EEOC Confidentiality Agreement, and do not demonstrate that
any "confidential communications" were ever disclosed to anyone.   *Id.*, at 2-4.   To
put a finer point on it, Attorney Mann states, "Defendant forgets to establish a
record showing that Plaintiff actually recorded the mediation.   Defendant even
fails to even a speck any evidence of 'dissemination' of this recording other than a

single out-of-court, out-of-context, unverified text message from Plaintiff to 'Jan (Personal),' where Plaintiffs refers to a video being sent to her personal email."   *Id.,* at 2.   Attorney Mann also contends that there is no evidence Saunders signed either the Agreement to Mediate or the Confidentiality Agreement, and that the submitted activity log is unauthenticated hearsay.   *Id.* at 4.   In sum, Attorney Mann states that Signature "fails to show **what** Plaintiff recorded, **how** he recorded it, **when** he recorded it for, whether the recording includes 'mediation communications,' and whether the 'mediation communications' were actually **disclosed** to anyone not allowed to know."   *Id.,* at 4 (emphasis in original).[21]

With respect to the supplemental production and Saunders' July 25, 2022 email, Attorney Mann says this is a "mysterious" document, contains no mediation communications, but is rather Saunders' "memorandum and living notes that he created himself – not from the EEOC mediation," and points out that the Confidentiality Agreement permits parties to retain their own notes.   *Id.*   In any event, Attorney Mann argues that there is no evidence that Saunders acted in bad faith or that his actions had any negative impact on Signature's business.   *Id.,* at 5. Last, Attorney Mann makes the incredulous argument that the Confidentiality

---

[21]  In his response in opposition to Signature's third motion for sanctions, also filed on February 29, 2024, Attorney Mann doubles down on his position, stating that "Plaintiff never 'sent' any recordings to key witnesses," and shockingly contends that Signature was misleading the Court.   *See* Doc. No. 72, at 4.

Agreement – which has the word "Agreement" in its title – did not constitute an

agreement among the parties not to record or transcribe the EEOC mediation.  *Id.*,

at 5-6.   Instead, he contends that "other reasonable persons could interpret [the

Confidentiality Agreement] to mean that they should record it themselves."  *Id.*, at

6.   He concludes by arguing that Signature has not shown Saunders acted in bad

faith.  *Id.*, at 5.

　　　While Attorney Mann's arguments are on their face unpersuasive, the

undersigned did not imagine that they were also deliberately misleading and based

on falsehoods.   However, the undersigned had no choice but to reach that

conclusion upon review of Signature's authorized reply, filed on March 6, 2024.

Doc. No. 81; *see also* Doc. No. 67, at 4**.**

　　　Signature begins its reply by noting Attorney Mann nowhere directly states

that Saunders did not sign the Agreement to Mediate or the Confidentiality

Agreement, and that Attorney Mann himself was present at the mediation and well

aware that he and Saunders both agreed to participate in the EEOC mediation, such

that Attorney Mann would know if his client signed those Agreements.   Doc. No.

81, at 2-3; *see also* Doc. No. 81-1 (email from EEOC mediator confirming Saunders'

acceptance of an invitation to mediate, along with email from EEOC mediator to

Signature's counsel explaining that if mediation is accepted, the parties must sign

the Agreement to Mediate and Confidentiality Agreement through the EEOC's Charging Portal).

Signature then points to Saunders' testimony from his continued February 21, 2024 deposition – a deposition which again took place eight (8) days before Attorney Mann filed his response to this motion, which Attorney Mann attended as Saunders' counsel, and which Attorney Mann himself references in the response to the present motion.   Doc. No. 81, at 3-6.   *See also* Doc. No. 73, at 2, n. 1; Doc. No. 86.   During his deposition, Saunders testified under oath that he recorded the entire July 21, 2022 EEOC mediation, continues to have a copy of the recording on his cell phone, attempted to send a copy of the recording to Jan Chalk via email but the email did not go through, and that he instead played the video recording for Jan Chalk through his cell phone.   Doc. No. 81, at 4; Doc. No. 81-2, at 3-5; Doc. No. 86, at 18-21; Doc. Nos. 86-1, 86-2.   This undisputed under oath testimony clearly refutes the numerous representations in the response and clearly demonstrates that Saunders did exactly what Signature claims he did – recorded the EEOC mediation and disseminated that recording to a third-party witness.   Doc. No. 81, at 5.[22]

---

[22] Signature also represented that Saunders very recently produced the first 20 minutes of the video recording, but refused to produce the remainder on the basis of privilege, therefore Signature also requested the undersigned order production of the entire video recording.   Doc. No. 81, at 5.

Signature again points to Saunders' own deposition testimony to refute Attorney Mann's contentions as to the "key takeaways" email.   Doc. No. 81, at 5-6. Saunders testified at the February 21, 2024 deposition that the email referred to the EEOC mediation, and the attachment contains Saunders' notes and memories from the mediation as to Signature's opening statement, including "three lies from Signature and the fourth one is the misunderstanding," as well as Saunders' rebuttal.   *Id.*; Doc. No. 81-2, at 5-8; Doc. No. 86, at 21-22, 83-84.   Saunders further testified that he sent the email to at least 11 individuals, some of whom were current employees of Signature, and some of whom were listed as potential witnesses in this case.   *See* Doc. No. 86, at 22-24, 28-31.   Again, this deposition testimony both belies the representations in the response, and show that Saunders did exactly what Signature complains of.[23]

Based on a review of Signature's reply, the undersigned ordered that Signature submit on the record full transcripts of both of Saunders' depositions, and Signature timely complied.   Doc. Nos. 84-86.[24]   Those transcripts not only

---

[23] Signature concludes its reply by reasserting its position that the Florida Mediation Confidentiality and Privilege Act applies, and if it does not, that the Court should exercise its inherent authority to sanction Saunders.   Doc. No. 81, at 7.

[24] Based on Saunders' response, and prior to Signature filing its reply, the undersigned directed Saunders to submit an affidavit, signed under penalty of perjury, on or before March 11, 2024 addressing several factual issues:   (1) whether Saunders signed the Agreement to Mediate and Confidentiality Agreement prior to the July 21, 2022 mediation; (2) whether Saunders recorded the mediation, and if so, identify the means and manner of recording, the current location of the recording, and how much of the mediation

establish Saunders' intentional recording of the EEOC mediation and dissemination
of same, but also show Saunders' willful refusal to provide responsive discovery
since at least November 30, 2023.   Doc. No. 86, at 12-14, 15-16, 18-25, 26-28.

## IV.    THE THIRD MOTION FOR SANCTIONS RELATED TO THE COURT-ORDERED MEDIATION

As noted above, the CMSO required that mediation take place on or before
February 16, 2024, (Doc. No. 17, at 3), and the parties scheduled the mediation to
take place in person on February 14, 2024 at 1:45 p.m., at the offices of Signature's
counsel in Orlando, Florida, before mediator Julie O'Kane.   Doc. No. 42.
However, on February 14, 2024, the mediator filed a mediation report noting that
Saunders did not appear at the mediation, and therefore the mediation did not

---

was recorded; (3) if Saunders recorded the mediation, whether he transmitted, or
attempted to transmit, the recording to anyone outside of counsel, and identify the date,
time and manner of transmission; and (4) whether Saunders disclosed any other
information from the mediation, including summaries of the mediation, to anyone outside
of counsel.  Doc. No. 75.  The undersigned expressly stated that if Saunders failed to
answer in his affidavit any of these questions, or if Saunders asserted his Fifth Amendment
rights, the undersigned would treat any non-responses as a negative inference for that
specific fact issue, and would consider such negative responses in resolving all three
sanctions motions.  *Id.*, at 3.

Saunders did not meet this deadline.   Instead, on March 12, 2024, Saunders himself
attempted to submit an affidavit through the Court's e-portal.  Doc. No. 88.   As discussed
during the March 13, 2024 hearing, the undersigned ordered the affidavit stricken and
placed under seal.  Doc. No. 91; *see also* Local Rule 2.02(b)(3).   Saunders never moved for
reconsideration, nor requested leave to file an affidavit out of time.   As such, the
undersigned has treated the failure to file an affidavit as negative inferences against
Saunders on these fact issues.

commence.   Doc. No. 59.   The following day, Signature filed its third motion for

sanctions based on Saunders' and Attorney Mann's failure to appear.   Doc. No. 61.

In the motion, Signature represents that the parties initially mutually agreed

to conduct mediation on January 31, 2024.   Doc. No. 61, at 4-5; *see also* Doc. No. 25.

However, due to Plaintiff's discovery delays, the parties agreed to reschedule the

mediation to February 14, 2024.   Doc. No. 61, at 5; *see also* Doc. No. 42; Doc No. 61-

1, at 2 (email from Attorney Mann to Signature's counsel confirming February 14,

2024 mediation).   The mediator confirmed the change in date via email to all

counsel dated January 25, 2024.   Doc. No. 61, at 5; Doc. No. 61-2, at 2.   The

mediator sent a follow up email on February 11, 2024 to all counsel inquiring

whether the mediation could start earlier, but Attorney Mann did not respond,

therefore the mediation start time remained 1:45 p.m.   Doc. No. 61, at 5; Doc. No.

61-3, at 2.

At the appointed date and time, Signature and its counsel appeared in

person, as did the mediator.   Doc. No. 61, at 6.   Saunders and Attorney Mann did

not.   *Id.*   After approximately 30 minutes had elapsed and multiple attempts by

the mediator to reach Saunders' counsel, Attorney Mann finally returned the

mediator's phone calls, stated that he was trying to reach Saunders, and asked if

they could appear remotely.   *Id.*   Signature and the mediator agreed, however at

2:30 p.m., Attorney Mann informed that he could not locate his client and was

unable to provide a timeframe for when Saunders would be available.  *Id.* As a result, the mediator ended the mediation and filed her mediation report.  *Id.*, at 6-7.  Signature's motion followed, in which it requests sanctions in the form of its fees and costs for appearing at the mediation, for filing this motion, and for Signature's portion of the mediator's cancellation fee.  *Id.*, at 9.

Saunders timely responded.  Doc. No. 72.  In the response – filed by Attorney Mann – counsel concedes that the mediation was "mutually reset" to February 14, 2024, and that he appeared late via telephone.  *Id.*, at 3.  However, blame is then again placed on Attorney Mann's technical issues during his move to Pensacola, but for the first time now claiming that these issues and "a breakdown of all communications" occurred between January 23, 2024 through February 14, 2024, the date of the scheduled mediation.  *Id.*, at 1.  In addition, Attorney Mann states in the response that as of the February 14, 2024 mediation, Saunders "still had not responded [to] The Cochran Firm electing who he wanted to represent him, which meant that he remained a Cochran client until otherwise advised by Plaintiff."  *Id.*, at 2.  Saunders did not declare his intent to be represented by Attorney Mann until February 21, 2024, and did not officially contract with Attorney Mann until February 26, 2024.  *Id.*, n.1.[25]

---

[25] It bears noting that this is yet another different date for this occurrence.  *See* Doc. No. 74.

Saunders then appears to place blame on Signature's counsel, first stating that by the time of the mediation, Signature was well aware that Attorney Mann had relocated to Pensacola, Florida. *Id.*, at 2. He then alludes to an email from Attorney Mann discussing an "in-person" deposition, but does not provide a copy of the email and does not explain how scheduling a deposition would impact or excuse Saunders' or Attorney Mann's failure to attend a Court-ordered mediation. *Id.* Attorney Mann then contends that any failure to appear was unintentional – the February 14, 2024 mediation was scheduled using The Cochran Firm's computers systems, and when Attorney Mann relocated to Pensacola, the systems did not change to the Central Time Zone. *Id.*, at 3. Attorney Mann also disputes that he was 45 minutes late to the mediation – rather he contends that he was only 20 minutes late – based on his personal cell phone records showing three calls from the mediator to Attorney Mann. *Id.*, at 3, 4, 7-9.

Importantly, Attorney Mann nowhere states that he received permission *from the Court* to appear at the mediation remotely, nowhere states that he was unaware that the mediation was to occur *in person*, and nowhere explains why he did not travel to Orlando for the mediation (a one-hour time zone difference is insufficient). And as for Saunders' failure to appear, Attorney Mann simply states that "Plaintiff was going off the same calendar event as Mann, but quietly assumed that the mediation was not moving forward until the several motions for sanctions were

addressed by the Court.    Therefore, when Plaintiff's counsel was attempting to hail

his client into the mediation during the middle of a workday, he was not on the

lookout and did not connect with Mann until later that evening."    *Id.*, at 3-4.

Attorney Mann then concludes by contradicting himself, first stating that he

did not tell anyone that he would not attend the mediation in person, then stating

that when he eventually talked to the mediator, he informed her that he was in the

Central Time Zone, and that his client had not been in touch.    *Id.*, at 4.    He claims

that Signature's counsel is exaggerating facts (noting that Signature claimed

"several" calls were made by the mediator, but Attorney Mann only has a record of

three calls), has not demonstrated any bad faith on the part of Saunders or his

counsel, and therefore sanctions are not warranted.    *Id.*, at 3, 4-5.

## V.    THE MARCH 13, 2024 HEARING

As noted in the Order on Pending Motions, the undersigned set all three

sanctions motions for an additional in-person hearing on March 13, 2024.    Doc. No.

67, at 4-5.    The hearing went forward as scheduled, with Saunders, Attorney Mann,

counsel for Signature, and Signature's corporate representative in attendance.

Doc. No. 89.    As before, Attorney Mann made numerous conflicting and

contradictory statements.

At the outset, the undersigned attempted to clarify with Attorney Mann his

numerous and conflicting statements about when his representation of Saunders

commenced.   Doc. No. 93, at 4-7.   Following questioning of both Attorney Mann
and Saunders, it was determined that at all times Saunders believed he was
represented by Attorney Mann, and that Attorney Mann at all times acted as
Saunders' counsel.   *Id.*   With that matter settled, the undersigned next discussed
with counsel Saunders' *pro se* affidavit filed on March 12, 2024, (Doc. No. 88),
explaining that the affidavit would be stricken pursuant to Local Rule 2.02(b)(3).
*Id.*, at 7-8.   Next, the undersigned addressed the motion for sanctions related to the
February 14, 2024 mediation (Doc. No. 61).   *Id.*, at 8-12.   The undersigned
provided Saunders, through counsel, an opportunity to say anything else in
response to that motion, but Saunders stood on his response (Doc. No. 72).   *Id.*, at
10-11.

The undersigned then turned to the motion for sanctions related to Saunders'
discovery violations (Doc. No. 57).   Doc. No. 93, at 12-22.   Counsel for Signature
reiterated that they never had any communications with Attorney Mann in which
they agreed to accept Saunders' text messages via video recording.   *Id.*, at 12-13.
Signature's counsel then explained that as recently as March 4, 2024, Saunders had
produced several hundred additional text messages and emails, which counsel was
still attempting to review, and through this additional, late-served production,
counsel had identified several new witnesses and new information.   *Id.*, at 13, 21.
Signature's counsel was unable to say whether there continued to be outstanding

discovery, given their continuing review of these late supplemental productions.
*Id.*, at 19-20.   Attorney Mann did not dispute these assertions, instead admitting
that his statement in his February 20, 2024 response (Doc. No. 65), that Saunders
had produced everything in his custody, possession, and control was incorrect.   *Id.*,
at 14-15.   Attorney Mann at first stated that he was also unaware of these new
witnesses and information until Saunders' February 21, 2024 deposition, but
ultimately admitted that he took no action to search Saunders' cellphone or to
produce any other text messages or emails until on or around February 29, 2024.
*Id.*, at 15-17.   Attorney Mann further acknowledged that Saunders testified at his
February 21, 2024 deposition that he did not make any effort to search his email, cell
phone, or texts for any requested or compelled discovery since November 30, 2023.
*Id.*; *see also* Doc. No. 86, at 13-15, 25-28

Last, the undersigned addressed Signature's motion for sanctions related to
the July 21, 2022 EEOC mediation.   Doc. No. 93, at 23-31.   Following discussion
with Signature's counsel, in which counsel reiterated that Saunders knowingly
recorded the EEOC mediation, in violation of the Confidentiality Agreement, the
undersigned turned to Attorney Mann.   *Id.*, at 23-25.   Attorney Mann admitted
that he was present during the entirety of Saunders' February 21, 2024 deposition,
during which Saunders admitted to recording the mediation and disseminating it
to Jan Chalk as well as preparing and emailing the "key takeaways" document.   *Id.*,

at 25; *see also* Doc. No. 86, at 18-24, 82-84.    Attorney Mann also did not dispute any of his client's deposition testimony.    Doc. No. 93, at 25-26.    Yet, in response to the undersigned's questioning as to why he filed a response to Signature's motion in which he challenged all of Signature's assertions, (Doc. No. 73), Attorney Mann simply stated that he "was going off of what my client said and what he had told me in confidence."    *Id.*, at 26.    Attorney Mann further argued that the "key takeaways" email was not a confidential communication because "they are the same things that were in the EEOC filings and in the motion to dismiss and in all the filings so far."    *Id.*, at 27-28.    Finally, while admitting that he "believed" he signed the Confidentiality Agreement prior to attending the EEOC mediation, Attorney Mann continued to stand on his assertion that Signature could not prove this fact, as Attorney Mann could not find a copy of the signed agreement himself. *Id.*, at 30.

At the conclusion of the hearing, the undersigned noted her intention to issue a report and recommendation that Saunders and Attorney Mann be sanctioned in the form of monetary relief and dismissal of the case given their pattern of bad faith conduct, so long as such sanctions were legally permissible.    *Id.*, at 31-33. Signature's counsel requested additional monetary sanctions for the time spent downloading and reviewing the text messages in video format, and the undersigned agreed to take that request under advisement.    *Id.*, at 33.    Finally, the

undersigned entered into an *in camera* discussion with Attorney Mann and Saunders concerning the recently filed motion to withdraw pursuant to Florida Rule of Professional Conduct 4-1.16(a) (Doc. No. 78).   Doc. No. 92, at 36-47 (sealed). Based on that discussion, the undersigned found that the requirements of Rule 4-1.16(a) were not met and stated that the motion to withdraw would therefore be denied.   *Id.*, at 46 (sealed).

The undersigned entered an Order later that same day striking Saunders' *pro se* affidavit (Doc. No. 88), and directing Saunders to produce to Signature by 5:00 p.m. on March 14, 2024 a full and complete copy of Saunders' recording of the July 21, 2022 EEOC mediation.   Doc. No. 91, at 1.   The undersigned also denied without prejudice Attorney Mann's motion to withdraw, holding that he could renew his request when Saunders terminates Attorney Mann's representation and either proceeds *pro se* or new counsel files a notice of appearance, or after the undersigned issues this Report and Recommendation.   *Id.*, at 1-2.   As of the date of this Report, Saunders has neither elected to proceed *pro se* nor retained new counsel, therefore Attorney Mann remains Saunders' attorney of record.

## VI.     APPLICABLE LEGAL STANDARDS

### A.     *Federal Rule of Civil Procedure 37(b)*

Signature first seeks sanctions under Federal Rule of Civil Procedure 37(b) based on Saunders' continued failure to fully comply with the undersigned's February 1, 2024 Order.   Doc. No. 57; *see also* Doc. No. 49.

"Rule 37 authorizes a district court to impose such sanctions 'as are just' against a party that violates an order compelling discovery. . . .   District courts enjoy substantial discretion in deciding whether and how to impose sanctions under Rule 37."   *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) (first citing Fed. R. Civ. P. 37(b)(2), then citing *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir.), *cert. denied*, 510 U.S. 863 (1993)).   "Rule 37(b) authorizes a panoply of sanctions for a party's failure to comply with a discovery order."   *Wyndham Vacation Ownership, Inc., v. Clapp Bus. Law, LLC*, No. 6:19-cv-756-Orl-41GJK, 2020 WL 3266059, at *2 (M.D. Fla. Apr. 2, 2020) (quotation marks and citation omitted).   Those include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except
an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Strict adherence to Rule 37 is necessary to prevent "parties from flouting

discovery orders." *Reed v. Fulton Cty. Gov't*, 170 F. App'x 674, 675 (11th Cir. 2006)

(per curiam) (internal quotation marks and citation omitted).[26]  "[S]anctions are

imposed [under Rule 37] not only to prevent unfair prejudice to the litigants but

also to ensure the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel

Corp.*, 691 F.2d 480, 482 (11th Cir. 1982) (per curiam).   However, the extent of the

sanctions must be "'reasonable' in light of the circumstances." *Carlucci v. Piper

Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985).

B.    *The Court's Inherent Authority*

Signature also seeks sanctions under the Court's inherent authority, *see* Doc.

Nos. 55, 57, which "is both broader and narrower than other means of imposing

sanctions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).   The Court may

---

[26] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

exercise this authority "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)).    While other sanction mechanisms only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Chambers*, 501 U.S. at 46.    Sanctions under the Court's inherent authority may include monetary penalties, adverse inferences, and the striking of claims or defenses. *See, e.g.*, *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009); *Barash v. Kates*, 585 F. Supp. 2d 1368, 1371 (S.D. Fla. 2008); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007).

The Court must exercise its inherent authority with "restraint and discretion." *Chambers*, 501 U.S. at 44.    To justify its use, "the party moving for sanctions must show *subjective* bad faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (citations omitted).    "This standard can be met either (1) with direct evidence of . . . subjective bad faith or (2) with evidence of conduct so egregious that it could only be committed in bad faith." *Id.* (quotation marks and citation omitted).    "Bad faith exists when the court finds that a fraud has been practiced upon it, . . . or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court

order." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fa. 2005) (citation omitted)).    However, "[e]vidence of recklessness alone won't suffice."    *Hyde*, 962 F.3d at 1310.

      C.    *The Florida Mediation Confidentiality and Privilege Act*

Signature next seeks sanctions under the Florida Mediation Confidentiality and Privilege Act, Fla. Stat. §§ 44.401-44.406 ("Florida Mediation Act" or "Act"). Doc. Nos. 55; 81.   The Act applies to all mediations:

> (a) Required by statute, court rule, agency rule or order, oral or written case-specific court order, or court administrative order;

> (b) Conducted under ss. 44.401-44.406 by express agreement of the mediation parties; or

> (c) Facilitated by a mediator certified by the Supreme Court, unless the mediation parties expressly agree not to be bound by ss. 44.401-44.406.

Fla. Stat. § 44.402(1).

The Florida Mediation Act further provides that "all mediation communications shall be confidential.   A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel."   Fla. Stat. § 44.405(1).   Any mediation participant who knowingly and willfully discloses a mediation communication in violation of this Act shall be subject to sanctions – upon motion by a party – with such sanctions to include equitable relief; compensatory damages; attorney's fees, mediator's fees,

and costs incurred at the mediation; and reasonable attorney's fee for filing the

motion.   Fla. Stat. § 44.406(1).[27]

>    D.    *Other Bases for Sanctions*

While not specifically mentioned by Signature, the undersigned also finds

that the Court is authorized to exercise its discretion and levy sanctions under two

other legal avenues.   Federal Rule of Civil Procedure 16 authorizes a court to "issue

any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or

its attorney . . . (C) fails to obey a scheduling or other pretrial order."   Fed. R. Civ.

P. 16(f)(1)(C).   Rule 16(f) incorporates some of the sanctions available under Rule

37(b), and as noted above, one of those sanctions is dismissal of an action or

proceeding in whole or in part.   Fed. R. Civ. P. 37(b)(2)(A)(v).   Moreover, unless

the failure to comply was substantially justified or other circumstances would make

it unjust, "the court must order a party, its attorney, or both to pay reasonable

expenses—including attorney's fees—incurred because of any noncompliance with

---

[27] The Act does not define "agency," but does define "mediation communication" as "an oral or written statement, or nonverbal conduct intended to make an assertion, by or to a mediation participant made during the course of a mediation, or prior to mediation if made in furtherance of a mediation."   Fla. Stat. § 44.403(1).   "Mediation participant" is defined as "a mediation party or a person who attends a mediation in person or by telephone, video conference, or other electronic means."   *Id.* § 44.403(2).   And "mediation party" defined as "a person participating directly, or through a designated representative, in a mediation," including a named party, real party in interest, or someone who would be named party or real party in interest if a case were brought in a court of law.   *Id.* § 44.043(3).

[Rule 16]." Fed. R. Civ. P. 16(f)(2). These fees may be in addition to the sanctions ordered under Rule 16(f)(1). *Id.*

"A trial court is justified in dismissing an action under Rule 16(f) as a sanction for the conduct of a plaintiff or plaintiff's counsel." *Vaughn v. Apfel*, 209 F.R.D. 496, 498 (M.D. Fla. Jan. 19, 2001) (citing *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th. Cir. 1985)). "[S]anctions contained in Rule 16(f) are designed to punish parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Id.* (citing *Goforth*, 766 F.2d. at 1535). "Dismissal with prejudice is the most severe Rule 37 sanction and is not favored. But, dismissal may be appropriate when a plaintiff's recalcitrance is due to wilfulness, bad faith or fault." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993) (citations omitted); *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) ("[W]hile the district court has broad powers under the Federal Rules of Civil Procedure to impose sanctions for a party's failure to abide by court orders, dismissal of an action with prejudice is a sanction of last resort, applicable only in extreme circumstances" (quotation marks and citations omitted)); *see also Winn-Dixie Stores, Inc. v. Se. Milk, Inc.*, No. 3:15-cv-1143-J-39PDB, 2019 WL 13038734, at *2 (M.D. Fla. Nov. 1, 2019) ("Although Rule 16(f) affords broad discretion to a district court, sanctions are generally warranted only where there is a 'clear record of delay or willful contempt' or other improper conduct." (citation omitted)).

Finally, the Court may dismiss an action as a sanction under Federal Rule of Civil Procedure 41(b). "[A] district court may dismiss a complaint for failure to comply with a court order or the federal rules." *Porton v. SP One, Ltd*, No. 6:15-cv-566-Orl-40KRS, 2015 WL 1648893, at *3 (M.D. Fla. Apr. 13, 2015) (citing Fed. R. Civ. P. 41(b)). "Dismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." *Gratton v. Great Am. Commc'ns,* 178 F.3d 1373, 1374 (11th Cir. 1999) (citation omitted). However, dismissal of a complaint with prejudice "is considered a sanction of last resort, applicable only in extreme circumstances." *Goforth*, 766 F.2d at 1535.

## VII. ANALYSIS

With these legal standards in mind, and applying them to the facts of this case, the undersigned will recommend that the Court decline to impose sanctions under the Florida Mediation Act, but dismiss this action and impose monetary sanctions pursuant to Rules 16(f), 37(b), and 41(b) for Saunders' and Attorney Mann's clear and willful violations of pretrial and discovery orders, and pattern of bad faith conduct.

With respect to the Florida Mediation Act, Signature has failed to establish that the Act would apply here, as it does not fall within any of the categories listed in Fla. Stat. § 44.402(1). The EEOC mediation was purely voluntary, it was not

required by any statute, rule, or order; there is no evidence that the parties agreed to mediate in accordance with the Florida Mediation Act; and the mediation was not facilitated by a mediator certified by the Florida Supreme Court.[28]  *See* Doc. No. 55.   Signature's motion and reply are noticeably silent on these points, even though the certification issue was expressly raised by Saunders.  *See* Doc. No. 73, at 5; Doc. No. 81, at 7.   For these reasons, the undersigned declines to recommend sanctions under the Florida Mediation Act.  *See Bahrakis v. Zimmerman*, No. 8:19-cv-2948-T-24SPF, 2020 WL 8872587, at *1 (M.D. Fla. Apr. 20, 2020) ("The mediation Act applies to all mediations conducted by a mediator certified by the Florida Supreme Court, unless the parties specifically agree not to be bound by it." (citing Fla. Stat. § 44.402(c)); *Drummond v. Zimmerman*, 454 F. Supp. 3d 1207, 1209 (S.D. Fla. 2020) (same).

The undersigned also declines to recommend sanctions under the Court's inherent authority based *solely* on Saunders' recording of the EEOC mediation. Doc. No. 55.   Signature has not provided – nor has the undersigned located – any legal authority where a Court is authorized to exercise its inherent authority to sanction a party for conduct that took place months prior to the inception of the

---

[28] There is no indication in the record that Hatto Parra, the Federal Mediator who conducted the EEOC mediation, is certified by the Florida Supreme Court, and the undersigned has been unable to verify certification upon independent review.

lawsuit.   The wrongful conduct Signature complains of in its motion, Doc. No. 55, took place six (6) months prior to the inception of this litigation, and while Signature provides conclusory assertions that Saunders' conduct "undermined these judicial proceedings" and that Saunders should have disclosed his recording earlier in the case, Signature points to no wrongful conduct that has occurred during the litigation of this case in this Court with respect to Saunders' recording of the mediation.[29]   As such, the undersigned does not recommend sanctions with respect to the narrow grounds Signature raises in this motion.   However, the undersigned has taken into account Saunders' conduct in defending against this motion – in particular his and his attorney's statements in Court filings and up through the March 13, 2024 hearing – in establishing their willful and bad faith conduct during the litigation of this case.

Turning now to the remaining motions, the undersigned will recommend that sanctions be imposed in the form of dismissal of Saunders' complaint and monetary sanctions jointly and severally against Saunders and Attorney Mann.   As

---

[29] The lone case Signature cites, *Calton & Assocs., Inc. v. Simmers*, No. 8:20-cv-851-T-33CPT, 2020 WL 5910104, at *2 (M.D. Fla. Oct. 6, 2020), is distinguishable and therefore unpersuasive.   The mediation in *Calton & Assocs.* took place while federal litigation was ongoing, and the disclosure of the confidential communications constituted a violation of both the Court's Local Rules and the Case Management and Scheduling Order.   *Id.*; *see also Goforth*, 766 F.2d at 1535 ("The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits." (citations omitted)).

described in considerable detail above, since at least November 30, 2023, Saunders

and Attorney Mann have engaged in a pattern of delay and failed to comply with

numerous Court orders.    They failed to comply with the undersigned's discovery

order, and their response to Signature's Rule 37(b) motion for sanctions was filled

with admitted inaccuracies and untruths.    They failed to respond at all to

Signature's motion for sanctions related to the EEOC mediation, and when the

undersigned ordered a response, that response was also filled with deliberate

misstatements that were knowingly directly contradicted by Saunders' own

deposition testimony, resulting in a further waste of attorney and judicial resources.

And with respect to the February 14, 2024 mediation, Saunders and Attorney Mann

provided a litany of frivolous arguments, attempted to place blame on opposing

counsel, and engaged in an exercise in semantics that is utterly unavailing.    And it

bears noting that all of these failures could have been rectified – or avoided entirely

– had Saunders and Attorney Mann simply sought assistance from the Court (either

through a request for more time or for reconsideration or other relief).    But they

never did, choosing instead to stand on their ever-changing arguments.    But that

is not all.    The undersigned provided Saunders and Attorney Mann multiple

opportunities to explain their behavior, warning of potential sanctions, but they

either failed to respond, responded out of time and without permission, or once

again attempted to change their stories, with the only possible purpose to further

delay proceedings and mislead the Court.  This behavior demonstrates a clear

pattern of willfulness and arguable bad faith.  *See Compania Interamericana Export-*

*Import, S.A. v. Compania Dominicana de Avacion*, 88 F.3d 948, 952 (11th Cir. 1996)

("[W]hen a litigant has been given ample opportunity to comply with court orders

but fails to effect any compliance, the result may be deemed willful.").

For these reasons, sanctions are warranted.  The undersigned has

considered the panoply of available sanctions and finds the severe sanction of

dismissal appropriate and that no lesser sanction would suffice.  Given that

discovery has been closed since February 2, 2024 and the case stayed, and that

monetary sanctions were previously levied without apparent effect (*see* Doc. Nos.

49, 68), any lesser sanctions would necessitate reopening the case, restarting the

discovery process – essentially a blank slate – at great prejudice to Signature.  *See,*

*e.g., Everything Divine Inc. v. O'Quinn*, No. 6:12-cv-1722-Orl-37DAB, 2014 WL

3593691, at *2 (M.D. Fla. July 18, 2014) ("Given the imminence of trial, the Court

finds that lesser sanctions would not suffice." (citing *Williams v. Talladega Cmty.*

*Action Agency,* 528 F. App'x 979, 980 (11th Cir.2013)).  *Cf. Nazer v. Five Bucks*

*Drinkery LLC*, No. 8:16-cv-2259-T-36JSS, 2018 WL 936053, at *2 (M.D. Fla. Feb. 16,

2018) (declining to dismiss case and finding lesser sanctions appropriate where case

was still in the discovery phase).  And given Saunders' and Attorney Mann's

behavior to date, the undersigned has no confidence that they would actually

comply with court orders going forward.[30]   Even as the undersigned drafts this Report, it is entirely unclear whether Saunders has fully responded to all outstanding discovery, and the explanation for these continued delays is woefully lacking.[31]

Simply put, Saunders' and Attorney Mann have admittedly failed to comply with several Court Orders and have not established any good cause or excusable

_____

[30] For example, Saunders did not turn over his video recording of the EEOC mediation – which is clearly referenced in the text messages and was the subject of the February 1, 2024 discovery order – until the Court again ordered production on March 13, 2024.

[31] While many of the statements described in this report were made by Attorney Mann, Saunders is bound by them and thus equally liable for any sanctions.  *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.   Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.   Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)); *see also Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 916 (11th Cir. 1982) (observing that client, as principal, may be bound by actions of attorney, as agent, taken within the scope of attorney's authority; consequently, "the perception that counsel was primarily at fault in filing or maintaining a frivolous, groundless, or unreasonable claim should play no role in the decision whether to assess attorney's fees against the plaintiff in a Title VII case").   If the record demonstrated that fault lied exclusively at the feet of Attorney Mann, the undersigned would have considered alternative sanctions.   But Saunders does not have clean hands in this case, and his willful behavior warrants these sanctions.  *See Royal Palace Hotel Assocs., Inc. v. Int'l Resort Classics, Inc.*, 178 F.R.D. 588, 594-95 (M.D. Fla. 1997).

In addition, as the undersigned discussed at the March 13, 2024 hearing, the undersigned will be referring Attorney Mann to the Middle District of Florida's Grievance Committee for his numerous misleading and false statements both in court filings and in hearings.

neglect for their failures.   Instead, they have admittedly made numerous false statements in Court filings and hearings, and when directed to respond to specific issues, failed to do so.   And while not sanctionable by itself, it appears that Saunders' pattern of ignoring rules and procedures extends to well before the inception of this lawsuit.   *See, e.g.*, *Puck v. Silverman*, No. 1:22-CV-24078-KMM, 2024 WL 1340156, at *5 (S.D. Fla. Mar. 29, 2024) (dismissing one plaintiff's claims with prejudice pursuant to Rule 41(b) and 16(f) for failure to attend mediation and failure to provide good cause for the non-attendance, including refusing to appear at a subsequent evidentiary or show cause hearing, and for not establishing that the failure was due to confusion or "simple negligence"); *Lawshe v. Baber's Inc.*, No. CV 1:19-00035-JB-N, 2020 WL 8085175, at *2 (S.D. Ala. Dec. 8, 2020), *report and recommendation adopted*, 2021 WL 67279 (S.D. Ala. Jan. 7, 2021) (dismissing case with prejudice under both Rule 37(b) and Rule 41(b) for repeated failures to attend depositions and produce complete discovery responses, including failures to comply with orders compelling discovery; finding such conduct an "extreme circumstance" and "willful contempt," and that lesser sanctions would not suffice given the numerous failures to follow discovery procedures, numerous opportunities to comply, numerous warnings of sanctions, and the resulting prejudice to defendant in defending the case, and that plaintiff's failures to take advantage of the multiple opportunities offered by the court "demonstrates that

future opportunities to meaningfully prosecute this case will be just as fruitless."); *Derosier v. BP Corp., N. Am. Inc.*, No. 05-81020-CIV, 2007 WL 9706925, at *2 (S.D. Fla. Feb. 6, 2007), *report and recommendation adopted*, 2007 WL 9706926 (S.D. Fla. Feb. 27, 2007) (dismissing case under both Rule 37(b) and 41(b) where plaintiffs failed to comply with numerous pretrial orders, including failure to file memoranda in opposition to numerous motions, and failure to produce discovery within deadlines; finding plaintiffs' "clear record of delay and willful disregard of their discovery obligations, the rules of procedure and orders of court" caused severe prejudice to defendant, obstructing its attempt to conduct the necessary discovery to defend itself in this case, and that any lesser sanction against plaintiffs would be "wholly ineffective," only resulting in further delay, unfair prejudice, and waste of judicial resources); *Crespo v. Sky Chefs, Inc.*, No. 0223260-CIV-GARBER, 2003 WL 22466213, at *12–13 (S.D. Fla. Oct. 8, 2003) (recommending dismissal of case where plaintiff failed to comply with discovery, provided no valid explanations for these failures, the late production of some discovery prejudiced defendant where trial was imminent and defendant still did not have the documents requested months earlier, and for those documents late produced, defendant was unable to question many witnesses regarding them, and where financial sanctions were previously imposed and plaintiff was previously warned his behavior could result in dismissal); *Walker v. Miner*, No. 8:16-cv-284-T-36SPF, 2018 WL 10705407, at *1 (M.D.

Fla. Dec. 13, 2018) (dismissing action without prejudice due to the plaintiff's failure to comply with the court's order); *see also Aztec Steel Co.*, 691 F.2d at 481 ("When a party demonstrates a flagrant disregard for the court and the discovery process . . . dismissal is not an abuse of discretion."); *Adeniji v. Att'y Gen. Middle Dist. of Fla.*, 786 F. App'x 1002, 1003 (11th Cir. 2019) ("Generally, where a litigant has been forewarned, dismissal for failure to comply with a court order does not constitute an abuse of discretion." (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989))).

The undersigned also respectfully recommends that monetary sanctions should be levied against Saunders and Attorney Mann, jointly and severally, in the form of Signature's reasonable attorneys' fees and costs for (1) filing the February 12, 2024 and February 15, 2024 motions for sanctions, including authorized replies (Doc. Nos. 57, 61, 80, 83); (2) Signature's preparation for and attendance at the February 14, 2024 mediation, to include its share of the mediator's fee; (3) Signature's preparation for and attendance at the February 22, 2204 and March 13, 2024 hearings; and (4) Signature's continued review of Saunders' text messages between February 9, 2024 (the date compliance was originally ordered) and the March 13, 2024 hearing.[32]    In short, Saunders and Attorney Mann admittedly were

---

[32] Signature raised this potential sanction at both the February 22, 2024 and March 13, 2024 hearings, and the undersigned took it under advisement.  Upon review, the undersigned finds that this sanction is appropriate as Signature was required to expend hours reviewing the video recording and late produced screenshots solely due to Saunders' continued failure to engage in discovery and comply with court orders.

aware of the undersigned's discovery orders and the Court's CMSO requiring in-

person mediation, the dates of compliance and attendance, and ignored them.  It

is Saunders' and Attorney Mann's actions alone that have delayed this case and

prevented mediation, and their explanations wholly fail to excuse their actions (or

inactions).  The undersigned thus finds Saunders' and Attorney Mann's failures to

comply were not substantially justified, and therefore recommends that this

additional monetary sanction be awarded.  *See* Fed. R. Civ. P. 16(f)(2) ("[T]he court

must order a party, its attorney, or both to pay reasonable expenses—including

attorney's fees—incurred because of any noncompliance with [Rule 16]."); Fed. R.

Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must

order the disobedient party, the attorney advising that party, or both to pay the

reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified or other circumstances make an award of

expenses unjust."); *Velez v. EKDK Enter. Inc.*, No. 6:19-cv-4-Orl-78GJK, 2019 WL

13274251, at *3 (M.D. Fla. Dec. 5, 2019), *report and recommendation adopted*, 2020 WL

13661700 (M.D. Fla. Jan. 16, 2020) (dismissing case and awarding fees and costs

under Rule 37(b)(2)(C) where plaintiff ignored numerous discovery orders, never

asked to be excused from the orders, and showed no remorse in response,

demonstrating a pattern of willful disregard that was not substantially justified);

*Vaughn v. GEMCO2, LLC*, No. 6:17-cv-1713-Orl-41KRS, 2018 WL 6620600, at *4–7

(M.D. Fla. Oct. 31, 2018), *report and recommendation adopted*, 2019 WL 1765051 (M.D.
Fla. Apr. 22, 2019) (levying sanctions in the form of reasonable expenses and
attorney's fees under both Rule 16(f) and Rule 37(a) against defendant's counsel for
failure to comply with a discovery order and case management and scheduling
order, including failure to attend mediation, and finding counsel's failures were not
substantially justified); *Everything Divine Inc.*, 2014 WL 3593691, at *1–2 (striking
defendant's answer, entering default judgment, and awarding sanctions for
defendant's failure to, among other things, attend court-ordered mediation).

## VIII.  RECOMMENDATION

For these reasons, the undersigned **RESPECTFULLY RECOMMENDS** that:

1.     Defendant's Motion for Sanctions Pursuant to the Florida Mediation
Confidentiality and Privilege Act, or in the Alternative, the Court's Inherent Power
(Doc. No. 55) be **DENIED**;

2.     Defendant's Notice of Plaintiff's Non-Compliance with the Court's
Order on Defendant's Motion to Compel [D.E. 48], and Motion for Sanctions (Doc.
No. 57) be **GRANTED**;

3.     Defendant's Motion for Sanctions for Plaintiff's Failure to Attend
Court-Ordered Mediation (Doc. No. 61) be **GRANTED**;

4.     Plaintiff Frederick Saunders' Complaint (Doc. No. 1-1) be **DISMISSED**
in its entirety; and

5.    **ORDER** that Defendant Signature Flight Support, LLC d/b/a Signature Aviation shall recover from Plaintiff and Attorney Mann, jointly and severally, Defendant's reasonable attorneys' fees and costs for (1) filing the February 12, 2024 and February 15, 2024 motions for sanctions, including authorized replies (Doc. Nos. 57, 61, 80, 83); (2) Defendant's preparation for and attendance at the February 14, 2024 mediation, to include its share of the mediator's fee; (3) Defendant's preparation for and attendance at the February 22, 2204 and March 13, 2024 hearings; and (4) Defendant's continued review of Saunders' text messages between February 9, 2024 (the date compliance was originally ordered) and the March 13, 2024 hearing, and **PERMIT** counsel for Defendant to file a motion for assessment of such fees and costs after conferring with counsel for Plaintiff in a good faith attempt to resolve the issue.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 4, 2024.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy